**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BRYAN HENRY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.<br><br>Defendant. | Case No. 1:24-cv-01446-GHW-GWG<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE
AND DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF
CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.     Henry Brings a Single Putative Class-Action Claim Against MLBAM Under the VPPA Challenging Disclosures Allegedly Made by the Facebook Pixel .......................................................................................................... 3

    II.    Henry Agreed to MLBAM's Terms of Use, Including a Class-Action Waiver ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 9

    I.     The Court Should Strike Henry's Class Allegations Based on the Binding Class-Action Waiver in MLBAM's TOU .................................................... 9

          a.    Henry agreed to the class-action waiver in MLBAM's TOU. ..................... 9

          b.    The class-action waiver to which Henry agreed is valid and enforceable under New York law. .............................................................. 11

          c.    Because Henry indisputably waived his right to bring a class action, the Court should strike his class allegations. ................................. 12

    II.    The Court Should Dismiss Henry's Complaint for Failing to State a VPPA Claim and for Lack of Standing ............................................................. 14

          a.    Henry fails to plausibly allege any disclosures related to him .................. 15

          b.    Henry fails to plausibly allege that his Facebook ID is "personally identifiable information." ........................................................................... 19

          c.    Henry fails to plausibly allege that he viewed or the Facebook pixel shared "prerecorded" video content. .................................................. 22

CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011).................................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. passim

*AT&T Corp. v. Atos Solutions & Servs., Inc.*,
    2023 WL 8878935, -- F. Supp. 3d -- (S.D.N.Y. Dec. 22, 2023)................................ 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 14, 21

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
    *R&R adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) ....................... 1, 10, 12

*Camilo v. Uber Techs., Inc.*,
    2018 WL 2464507 (S.D.N.Y. May 31, 2018)........................................................ 11, 13

*Castellanos v. Raymours Furniture Co.*,
    291 F. Supp. 3d 294 (E.D.N.Y. 2018) ................................................................. 11, 13

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012).................................................................. 13

*Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*,
    205 F.R.D.148 (S.D.N.Y. 2002) ............................................................................ 4

*Collins v. Pearson Educ., Inc.*,
    2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ........................................................ 13

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021)..................................................................................... 18

*Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
    790 F.3d 411 (2d Cir. 2015).............................................................................. 14, 15

*Czarnionka v. Epoch Times Ass'n, Inc.*,
    2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ................................................... 20

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................. 11

*Ghanaat v. Numerade Labs, Inc.*,
    2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ................................................. 20, 21

*Golden v. NBCUniversal Media, LLC*,
    2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023) ...................................................... 20

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
    635 F. Supp. 3d 238 (S.D.N.Y. 2022) ................................................................. 13

*Hernandez v. Container Store, Inc.*,
    2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ............................................................. 1

*Herrera v. Navient Corps.*,
    2020 WL 3960507 (E.D.N.Y. July 13, 2020) ................................................... 24, 25

*In re Hulu Privacy Litig.*,
    2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ..................................................... 19

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ........................................................................... 1, 23

*Johansen v. Vivant, Inc.*,
    2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ...................................................... 25

*Louth v. NFL Enters. LLC*,
    2022 WL 4130866 (D.R.I. Sept. 12, 2022) ......................................................... 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 15, 18

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020) .......................................................................... 16, 17

*Mendoza v. Caesars Ent., Inc.*,
    2024 WL 2316544 (D.N.J. May 22, 2024) ........................................................... 24

*Metzler v. Pure Energy USA LLC*,
    2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ........................................................ 25

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................ 10, 11

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) ................................................................ 11

*Oparaji v. Home Retention Corp.*,
  2022 WL 987560 (E.D.N.Y. Jan. 11, 2022),
  *R&R adopted,* 2023 WL 2155764 (E.D.N.Y. Feb. 22, 2023) .................................................. 24

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) ......................................................................................................... 17

*Ranieri v. Bell Atl. Mobile*,
  759 N.Y.S.2d 448 (App. Div. 2003) .................................................................................. 11

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004).............................................................................................. 10

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................................... 13

*Robinson v. Disney Online*,
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............................................................................... 19

*Saliba v. Five Towns College*,
  991 F. Supp. 2d 449 (E.D.N.Y. 2014) ............................................................................... 16

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016)........................................................................................... 10

*Solomon v. Flipps Media, Inc.*,
  2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023).............................................................. passim

*Staehr v. Hartford Fin. Servs. Grp.*,
  547 F.3d 406 (2d Cir. 2008)................................................................................................. 4

*Stark v. Patreon, Inc.*,
  635 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................................................... 22

*Tsadilas v. Providian Nat. Bank*,
  786 N.Y.S.2d 478 (App. Div. 2004) .................................................................................. 11

*U1it4Less, Inc. v. FedEx Corp.*,
  2015 WL 3916247 (S.D.N.Y. June 25, 2015)..................................................................... 11

*Walker v. Meta Platforms, Inc.*,
  2023 WL 3607282 (N.D. Cal. Mar. 3, 2023)...................................................................... 22

*Wells Fargo Bank, N.A. v. Wright Mills Holdings., LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................................................. 4

*Wilson v. Triller, Inc.*,
  598 F. Supp. 3d 82 (S.D.N.Y. 2022)..................................................................... 14, 21, 22

*Zheng v. Live Auctioneers LLC*,
   2021 WL 2043562 (S.D.N.Y. May 21, 2021).........................................................................12

**Constitutional Provisions**

U.S. Const. art. III, § 2 ...........................................................................................................15

**Statutes**

18 U.S.C. § 2710...........................................................................................................passim

47 U.S.C. § 227(b)(1) .............................................................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................14, 15, 18

Fed. R. Civ. P. 12(b)(6)...........................................................................................................14

Fed. R. Civ. P. 12(f) ...............................................................................................................13

Fed. R. Civ. P. 23 ...................................................................................................................13

Fed. R. Evid. 201 .....................................................................................................................4

**Other Authorities**

S. Rep. No. 100-599 (1988)....................................................................................................22

# INTRODUCTION

This putative class action is one of a spate of recent lawsuits trying to extend a 1988 statute addressing intentional leaks of videotape-viewing information, the Video Privacy Protection Act ("VPPA"), far beyond its intended scope. The VPPA prohibits "video tape service provider[s]" who deliver "prerecorded video cassette tapes or similar audio visual materials" from "knowingly" disclosing "personally identifiable information" that "identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710 (a), (b)(1). The VPPA is a "quite narrow" statute passed before the age of the internet in response to a prominent news story: an exposé published by the *Washington City Paper* after a store clerk leaked a list of 146 films rented by Supreme Court nominee Robert Bork. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278–79, 284 (3d Cir. 2016). Here, Plaintiff Bryan Henry attempts to stretch the VPPA to implicate the use of website software code that works only under specific circumstances, and in a manner that the user, not Defendant MLB Advanced Media, L.P. ("MLBAM"), controls. Courts in the Second Circuit and across the country have dismissed cases like this one for failing to plead key VPPA elements and based on binding clauses in contracts between the parties.[1]

The result here should be no different. A binding agreement between the parties, and several independent pleading deficiencies, foreclose Henry's single putative class-action claim under the VPPA against MLBAM. His class claim should therefore be stricken and his individual claim dismissed.

Henry cannot bring his class claim because he agreed to a contract that bars him from doing

---

[1] *See, e.g., Hernandez v. Container Store, Inc.*, No. 22-CV-05067-HDV-RAO, 2024 WL 72657, at *2–3 (C.D. Cal. Jan. 3, 2024) (collecting cases); *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508-JMA-JMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) (dismissing VPPA claim with prejudice based on failure to plead several VPPA elements); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017), *R&R adopted as modified*, No. 17-cv-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (granting motion to compel arbitration of VPPA claim based on binding clause in parties' agreement).

so. Henry acknowledges that MLBAM's Terms of Use ("TOU") applies to his VPPA claim, and he even relies upon it to establish proper venue. But that same TOU contains a class-action waiver to which Henry agreed when he registered with MLBAM. New York law, which applies based on the TOU, uniformly holds that class-action waivers like this one are lawful. New York courts thus routinely enforce such waivers where they are clear and conspicuous, which this one is: It is a standalone clause announced repeatedly in the TOU and emphasized with capital letters and bold typeface. And the waiver unambiguously covers Henry's VPPA claim. It applies to all claims based on the use of MLBAM's digital properties, which is defined to include MLB.tv, the product on which Henry bases his claim. The binding class-action waiver to which Henry agreed prevents him from bringing his putative class claim. The Court should therefore strike his class allegations under Federal Rules of Civil Procedure 12(f) and 23.

Henry's VPPA claim also fails altogether under Federal Rule of Civil Procedure 12(b)(6) for multiple reasons. First, Henry does not plausibly allege that MLBAM disclosed his data. Although Henry's complaint alleges a broad theory of how MLBAM might violate the VPPA based on its use of routine software tools, he asserts no factual allegations to show that MLBAM ever disclosed **his** data in particular. Henry thus has no basis for an individual VPPA claim. His complaint instead amounts to a request for an advisory opinion on MLBAM's use of routine software tools on its website. And because Henry fails to include any facts showing an actionable disclosure, he has no standing to bring his VPPA claim, meriting dismissal under Rule 12(b)(1).

Second, Henry fails to credibly allege that MLBAM disclosed his "personally identifiable information" under the VPPA. Henry asserts that a routine website tool on MLBAM's website, the Facebook pixel, shared his Facebook ID, a unique numeric identifier tied to his Facebook profile. But Henry provides no facts about what, if any, "personally identifiable information" his

Facebook profile may contain. Courts have found allegations about the "personally identifiable information" contained in a plaintiff's Facebook profile necessary to state a VPPA claim, and for good reason. Without these allegations, a plaintiff like Henry does not plausibly claim that a defendant disclosed information identifying the plaintiff, as the statute requires.

Third, Henry fails to state a claim because he does not plausibly allege that he watched "prerecorded video cassette tapes or similar audio visual materials" on MLB.tv as the VPPA requires. The VPPA protects against disclosures of only "prerecorded"—not live—video content. Courts have therefore required plaintiffs to allege that they watched prerecorded, rather than live, videos on a defendant's website to state a VPPA claim. But Henry does not allege any information at all about the specific videos he allegedly watched on MLB.tv, whose disclosure is said to have violated his privacy. The nature of MLB.tv makes Henry's failure to allege this element particularly problematic: MLB.tv's publicly available subscription webpage shows that its main function is providing live-streamed broadcasts of baseball games. In light of MLB.tv's focus on live-streamed video, Henry must provide more information about the prerecorded videos he allegedly watched on MLB.tv for his claim to be plausible. He does not do so.

In short, the Court should strike Henry's class allegations because Henry agreed to a binding class-action waiver and dismiss Henry's complaint for failure to state a VPPA claim.

## BACKGROUND

I.   **Henry Brings a Single Putative Class-Action Claim Against MLBAM Under the VPPA Challenging Disclosures Allegedly Made by the Facebook Pixel**

Henry brings a single putative class-action claim alleging that MLBAM violated the VPPA by disclosing his and other putative class members' information to Facebook without permission. (Compl. ¶¶ 1, 56–67.) Henry's individual allegations focus on MLB.tv, one of several digital products and services offered by MLBAM. (*Id.* ¶¶ 14, 21.) Henry alleges that he "began his digital

subscription to MLB.tv [through] the 2023 T-Mobile Tuesdays Promotion and continues to maintain the subscription to this day." (*Id.* ¶ 12.)

MLB.tv is "The Home of Streaming Baseball," allowing fans to watch their favorite out-of-market baseball teams live from anywhere in the country. (MLB.tv Homepage, https://www.mlb.com/live-stream-games/subscribe (last visited Aug. 8, 2024).[2]) MLB.tv also offers access to pre- and post-game shows and other baseball-related content, such as MLB's "At Bat" subscription program, which includes live audio coverage of baseball games. (*Id.*)

Henry objects to MLBAM's alleged use of a tool called the Facebook pixel on MLB.tv. (Compl. ¶ 4.) According to Henry, the Facebook pixel "is a code [MLBAM] installed on its MLB.tv website." (*Id.*) Henry claims that for users who watch videos on MLB.tv while logged into Facebook, the pixel "track[s] and disclos[es] to Facebook" two types of information: (1) information about the video the user viewed, including its title; and (2) the user's Facebook ID, a unique numeric identifier of a particular Facebook account. (*Id.* ¶¶ 1, 4–5, 32–33.)

Henry broadly claims his own "Personal Viewing Information" was disclosed to Facebook through the Facebook pixel by MLBAM, which he says is a "video tape service provider" for VPPA purposes. (*E.g.*, *id.* ¶¶ 48, 59.) But he omits key details. For example, the few paragraphs of Henry's complaint describing him and his alleged activity on MLB.tv provide no facts to show that MLBAM made any disclosures about him in particular. (*See id.* ¶¶ 12, 13, 45–49.) Additionally, Henry acknowledges that for disclosures like those he alleges to violate the VPPA,

---

[2] The Court may properly consider publicly available information on MLBAM's website when deciding this motion. In evaluating a motion to strike under Rule 12(f), a court may consider "matters of which judicial notice may be taken under Fed. R. Evid. 201." *Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D.148, 152 (S.D.N.Y. 2002). The same is true of a court evaluating a motion to dismiss under Rule 12(b)(6). *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008). Federal Rule of Evidence 201 allows a court to "take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wright Mills Holdings., LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (citation omitted).

they must "***identif[y] a person*** as having requested or obtained specific video materials." (*Id.* ¶ 60 (quoting 18 U.S.C. § 2710(a)(3) (emphasis added)).) But he does not allege what, if any, personal information his own Facebook profile contains or explain how disclosure of his Facebook ID could actually be used to identify him. (*See id.* ¶¶ 5, 13, 33, 35, 47.) Similarly, while Henry acknowledges that the VPPA covers only "prerecorded" video content, (*e.g.*, *id.* ¶¶ 58–59), he does not identify any alleged prerecorded content that he himself watched on MLB.tv. (*See generally id.*) Indeed, he never names ***any*** videos he supposedly watched on MLB.tv—live or prerecorded. (*See generally id.*)

Unlike his individual allegations, Henry's class allegations extend well beyond MLB.tv. Henry purports to bring a VPPA claim on behalf of a class consisting of "[a]ll persons in the United States with a digital subscription to an online website and/or App owned and/or operated by Defendant that had their Personal Viewing Information disclosed to Facebook by Defendant." (*Id.* ¶ 50). In other words, he seeks to represent a class of individuals across the United States who had any "digital subscription" to any MLBAM website or app and allegedly had their viewing information disclosed to Facebook. (*Id.*)

## II.  Henry Agreed to MLBAM's Terms of Use, Including a Class-Action Waiver

Although Henry purports to bring his claim on behalf of a nationwide class, he agreed to MLBAM's TOU, which contains a class-action waiver. The TOU governs the use of MLBAM's Digital Properties, including MLB.tv. (MLBAM TOU § 1 (listing MLB.tv as an "MLB Digital Property"), https://www.mlb.com/official-information/terms-of-use (last visited Aug. 8, 2024). [3])

---

[3] The Court may properly consider MLBAM's TOU when deciding this motion both because it is publicly available on MLBAM's website, *see* n.1, *supra*, and because it is incorporated by reference in Henry's complaint (*see* Compl. ¶ 11). Courts in this district routinely take judicial notice of documents the complaint incorporates by reference. *See, e.g.*, *AT&T Corp. v. Atos Solutions & Servs., Inc.*, No. 23-CV-01395 (LJL), 2023 WL 8878935, -- F. Supp. 3d --, at *5 (S.D.N.Y. Dec. 22, 2023).

Henry's complaint acknowledges that the TOU applies "to Plaintiff's VPPA claim," alleging that "[v]enue is proper" based on "the MLB.tv Terms of Use." (Compl. ¶ 11.)

Henry says he "began his digital subscription to MLB.tv" in 2023. (*Id.* ¶ 12.) As Henry's complaint implicitly acknowledges, (*see id.* ¶ 11), when he began his digital subscription to MLB.tv, he agreed to MLBAM's TOU. When a new user like Henry subscribes to MLB.tv, the user is taken to a "Log In" page on MLB.com, where they can "Sign up" for a subscription:



(MLB.tv Login Page.[4]) After clicking "Sign up," a user is taken to a registration page:

---

[4] https://www.mlb.com/login?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D1001075999999102224 01000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA 2NjMyODQy&campaignCode= (last visited Aug. 8, 2024).



(MLB.tv Registration Page.[5]) To create an MLB account, the user must click the button labeled "Register," above which the following text appears: "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (*See id.*) Both the TOU and the Privacy Policy appear as clickable hyperlinks—offset by blue font—on the registration page. (*See id.*)

The operative TOU here is MLBAM's current TOU. (MLBAM TOU ("LAST UPDATED: FEBRUARY 6, 2024").) Henry is subject to this TOU because he alleges that he "continues to maintain [his MLB.tv] subscription to this day" and that he has "requested, obtained, and viewed Video Media via MLB.tv's website" "[f]rom 2023 to the present." (Compl. ¶¶ 12, 47.) And Henry

---

[5] https://www.mlb.com/registration?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D10011075999999 10222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC 4xNzA2NjMyODQy&campaignCode= (last visited Aug. 8, 2024).

purports to sue under this TOU precisely because the current version contains an exception to its arbitration agreement allowing VPPA claims like Henry's to be brought in court rather than arbitration. (*See id.* ¶ 11 (quoting from current TOU); MLBAM TOU § 1 (defining "Non-Arbitrable Claims" to include "claims under the Video Privacy Protection Act")).)

MLBAM's operative TOU contains a standalone class-action waiver provision. The TOU's Table of Contents notes the class-action waiver in a bolded heading for the "Dispute Resolution" section. (MLBAM TOU, Table of Contents.) The Introduction to the TOU also discloses the class-action waiver, explaining that "[t]his Agreement contains a . . . class action waiver" that "affect[s] your legal rights." (*Id.*, Introduction.) Section 11 of the TOU further declares a class-action waiver in bold font and all-capital letters: "**11. DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)**." (*Id.* § 11.) Yet another bolded, standalone heading announces a "**Class Action Waiver**," and the provision itself is written in all capital letters. (*Id.* § 11, Class Action Waiver.) The provision reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(*Id.*)

In sum, in order to bring his claim in federal court, Henry relied on a TOU that also includes a class-action waiver. Having acknowledged that he is subject to the TOU, he now also must be held to that waiver.

## ARGUMENT

This Court should strike Henry's class allegations because he waived his right to bring them. Beyond his class allegations, the Court should dismiss Henry's VPPA claim because he has not sufficiently pleaded key VPPA elements.

## I. The Court Should Strike Henry's Class Allegations Based on the Binding Class-Action Waiver in MLBAM's TOU

Henry cannot bring a putative class claim against MLBAM because the TOU he agreed to prohibits it. By subscribing to and allegedly continuing to use MLB.tv, Henry agreed to MLBAM's TOU, which contains clear and conspicuous language barring him from bringing a class-action lawsuit. New York courts routinely enforce class-action waivers like this one, finding that they are not unconscionable and do not violate public policy. Because a binding agreement between the parties precludes Henry's class claim, the Court should strike that claim under Rule 12(f).

### a. Henry agreed to the class-action waiver in MLBAM's TOU.

The face of Henry's complaint and publicly available materials make clear that he agreed to MLBAM's TOU, which includes a class-action waiver. Henry alleges he "began his digital subscription to MLB.tv" in 2023. (Compl. ¶ 12) When he registered for his digital subscription, Henry agreed electronically to MLBAM's TOU, and by allegedly maintaining his subscription to this day, he has continued to be subject to the TOU. (*Supra* at 5–9 Compl. ¶ 12; MLBAM TOU § 11, Class Action Waiver.) The Court can consider MLBAM's signup process and the TOU here because they are publicly available on MLBAM's website and Henry incorporates the TOU by reference in his complaint. *Supra* n.2 & 3. Indeed, Henry's complaint acknowledges that the TOU applies "to Plaintiff's VPPA claim," stating that "[v]enue is proper" based on "the MLB.tv Terms of Use." (Compl. ¶ 11.)

Henry's electronic click sufficed to agree to the TOU under New York law. New York law

applies here under the TOU, which states in a choice-of-law provision that "the laws of the State of New York" govern all claims "arising out of or related to" the "use of any MLB Digital Property." (MLBAM TOU § 12.) Under New York law, courts examine online agreements using "standard contract doctrine," looking at whether there was an offer, acceptance, and manifestation of mutual agreement. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). And "[c]ourts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)). To determine whether a reasonable user has notice that clicking a button would signify assent to the online agreement, courts applying New York law look to the formatting of the webpage, including whether:

- the screen was uncluttered;

- the text alerting the user to the existence of other Terms of Use appeared directly below the registration button;

- the hyperlink to the Terms of Use also was easily located under the registration button without scrolling;

- the text alerting the user to the other Terms of Use was clear and obvious by virtue of its font and color;

- the text itself was a "clear prompt" or suggestion to read the terms insofar as it stated "by creating an [] account, you agree to the Terms of Service"; and

- the notice to the Terms of Use was temporally connected to an action by the user, meaning that the terms were provided simultaneous to the customer action.

*Bernardino*, 2017 WL 7309893, at *9 (citation omitted).

MLBAM's signup process meets this standard. When registering for his subscription to MLB.tv, Henry was presented with a clear, uncluttered signup form. (MLB.tv Registration Page.)

Directly above the "Register" button, in blue font denoting hyperlinks, the signup prompt stated, "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (*Id.*) Through this signup process, "a reasonably prudent smartphone [or computer] user would understand that the terms were connected to the creation of a user account." *Meyer*, 868 F.3d at 78. Indeed, courts in this district have found that it "was enough" for contract formation for plaintiff to be "informed of the consequences of his assenting click and . . . shown, immediately below, where to click to understand those consequences." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839–40 (S.D.N.Y. 2012). That is precisely what MLBAM's signup process did. Henry thus agreed to MLBAM's TOU.

### b. The class-action waiver to which Henry agreed is valid and enforceable under New York law.

New York courts routinely uphold class-action waivers like the one in MLBAM's TOU.[6] Indeed, "courts applying New York law [] have ***uniformly held*** that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (emphasis added). Nor is "a contractual proscription against class actions . . . violative of public policy" under New York law. *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003). And nothing in the VPPA itself prohibits enforcing class-action waivers like MLBAM's. *See generally* 18 U.S.C. § 2710 *et seq.*; *see also U1it4Less, Inc. v. FedEx Corp.*, No. 11-CV-1713 (KBF), 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015) (examining whether class-action waiver is prohibited by the relevant statutory scheme).

This means MLBAM's class-action waiver is valid and enforceable under New York law

---

[6] *See, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable" and granting motion to strike class allegations); *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (enforcing class-action waiver and striking class allegations); *see also Tsadilas v. Providian Nat. Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) (enforcing contractual provision including class-action waiver).

so long as the provision itself is formatted to be clear and conspicuous to a reasonable user. For example, in *Zheng v. Live Auctioneers LLC*, the court enforced an arbitration provision in an online agreement that "was given its own section with a bolded and numbered heading," with font that "was not smaller than any of the other text" of the relevant agreement. No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021). And in *Bernardino*, a bolded header for the "Dispute Resolution" section made it conspicuous enough even though a user had to scroll down the agreement webpage to read it. 2017 WL 7309893, at *10.

The class-action waiver provision here is clear and conspicuous. The phrase "class-action waiver" first appears in bolded text in the TOU's Table of Contents—the first thing a user sees after clicking to view MLBAM's TOU. The Introduction of the TOU also discloses the class-action waiver upfront and explains that it may "affect your legal rights." (MLBAM TOU, Introduction.) By clicking on the hyperlink in the Table of Contents or scrolling down the TOU webpage, a user looking at the TOU then sees "**CLASS ACTION WAIVER**" in bold font and all capital letters in the Section 11 header. (*Id.* § 11.) Scrolling further down, "**Class Action Waiver**" appears in bolded font again as the header for the waiver provision, which in turn is written in all capital letters. (*Id.*) The bolding, use of capital letters, and formatting here make the provision conspicuous under New York law. *See, e.g.*, *Zheng*, 2021 WL 2043562, at *5 (bolded and numbered heading sufficiently conspicuous); *Bernardino*, 2017 WL 7309893, at *10–11 (bolded heading sufficiently conspicuous).

In sum, MLBAM's class-action waiver binds Henry: It is part of a valid online agreement that is enforceable under New York law.

     **c.**     **Because Henry indisputably waived his right to bring a class action, the Court should strike his class allegations.**

Because Henry is bound by the valid class-action waiver in MLBAM's TOU, the Court

should strike Henry's class allegations. Rule 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . on [a] motion made by a party[.]" In turn, Rule 23 allows courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014).

Together, these two rules allow courts to strike class allegations early in a case. So long as the motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," a court may grant a motion to strike a plaintiff's class allegations. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (citing *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). "[O]ne circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Indeed, courts in the Second Circuit regularly grant motions to strike class allegations after finding class-action waivers valid and enforceable. *See, e.g.*, *Camilo*, 2018 WL 2464507, at *3; *Castellanos*, 291 F. Supp. 3d at 302. Courts are especially willing to do so where the waiver is a standalone clause that clearly applies in litigation, rather than a provision contained in an arbitration clause. *Compare Castellanos*, 291 F. Supp. 3d at 302 (striking class allegations based on class-action waiver that explicitly applied in litigation or arbitration), *with Collins v. Pearson Educ., Inc.*, No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024) (finding motion to strike based on class-action waiver premature in VPPA case where the waiver was part of an arbitration clause, and the court did not have enough facts to determine its effect outside the arbitration context).

The standalone class-action waiver here precludes Henry's proposed class action.

The class-action waiver in MLBAM's TOU, which he acknowledged applies in the Complaint (Compl. ¶ 11), applies to "any proceeding" involving MLBAM's digital property, "whether in arbitration or litigation." (MLBAM TOU § 11, Class Action Waiver.) These proceedings all must "be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action." (*Id.*) Henry himself alleges that his VPPA claim arises from use of MLB.tv, an MLBAM digital property. (*See id.* § 1 (MLB.TV is an "MLB Digital Property").) The plain language of the provision thus makes clear that Henry may not bring his VPPA claim as a putative class action.

Because both the law and the plain language of the class-action waiver prohibit Henry from maintaining a class action against MLBAM, the Court should grant MLBAM's motion to strike Henry's class allegations under Rules 12(f) and 23.

## II.    The Court Should Dismiss Henry's Complaint for Failing to State a VPPA Claim and for Lack of Standing

Even on an individual basis, Henry fails to state a claim under the VPPA. "To survive dismissal" under Rule 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While courts "accept[] as true all well-pled factual allegations" under this standard, they "do[] not credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 88 (S.D.N.Y. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Additionally, Henry's complaint lacks any factual allegations to show that he suffered a cognizable injury at all. "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction" if "the plaintiff lacks constitutional standing to

bring the action." *Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal citations omitted). A plaintiff lacks constitutional standing to sue in federal court if he fails to show that he incurred an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A complaint that "fail[s] to allege a plausible injury in fact" should be dismissed under Rule 12(b)(1). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148–49 (2d Cir. 2011).

Henry fails to meet 12(b)(6) or 12(b)(1) standards in three key ways. First, Henry does not allege facts showing that MLBAM made any improper disclosure relating to ***him*** in particular. He includes only conclusory statements about how MLBAM's website works generally and therefore fails to allege an injury sufficient to give him standing to bring this lawsuit—let alone to state a VPPA claim. Second, Henry does not allege that "personally identifiable information" was shared with any third party. 18 U.S.C. § 2710(a)(3). Third, Henry does not allege viewing any particular "prerecorded" videos or "similar audio visual materials." *Id.* § 2710(a)(4).

### a.    Henry fails to plausibly allege any disclosures related to him.

Henry's VPPA claim fails because he has not alleged an actionable disclosure of his information. Rather, his complaint alleges a theory about how MLBAM's website and the Facebook pixel works and asks this Court to issue what would amount to an advisory opinion that—if true—his theory supports a VPPA class action. These allegations do not meet Rule 12(b)(6) pleading requirements or the constitutional requirement that courts entertain only "[c]ases" or "controversies." U.S. Const. art. III, § 2.

Henry fails to state a VPPA claim on an individual basis because his complaint lacks any factual allegations showing that MLBAM disclosed his data. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). So, to state a VPPA claim against MLBAM,

Henry must allege facts sufficient to show that MLBAM knowingly disclosed PII "concerning" *him*. *Id.* Henry has failed to allege such facts. The Rule 12(b)(6) standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. This means that a plaintiff must do more than provide "naked assertions devoid of further factual enhancement" or "allegations that are 'merely consistent with' liability" to survive a motion to dismiss. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quotation marks and citation omitted). Likewise, "[a] pleading that does nothing more than recite the elements of a claim" should be dismissed. *Saliba v. Five Towns College*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014).

Here, Henry's complaint consists of just the sort of naked assertions and bare recitals of the elements that courts routinely reject as insufficiently pleaded. Out of a 69-paragraph complaint, Henry spends only seven of those paragraphs setting forth information related to him or his activity on MLB.tv. (Compl. ¶¶ 12, 13, 45–49.) And these paragraphs fail to allege the facts necessary to support his claim. Henry alleges that he "has been a digital subscriber of MLBtv.com" since around 2023, and that signing up for his MLB.tv subscription required him to provide "his name, address, email address, IP address . . ., and any cookies associated with his device." (*Id.* ¶ 45.) But nowhere does Henry provide facts to show that MLBAM disclosed any of this information. Indeed, while Henry cursorily alleges that MLBAM "knew that Plaintiff's and Class members' Personal Viewing Information was disclosed," he includes no facts to show that these disclosures occurred or what "Personal Viewing Information" was revealed by those disclosures. (*See id.* ¶¶ 65–66.)

Rather than provide factual support, Henry's complaint recites statutory language. In particular, Henry alleges that his MLB.tv subscription "granted him exclusive access to view video and media content," and that he "requested, obtained, and viewed Video Media via MLB.tv's

website and App." (*Id.* ¶¶ 46, 47.) But this allegation contains no facts—only the language of the statute. (*Compare id.* ¶ 47, with 18 U.S.C. § 2710(a)(3).) And Henry presents no facts to show what "Video Media" he obtained or watched. Henry goes on to allege that he "never consented, agreed, authorized, or otherwise permitted [MLBAM] to disclose his Personal Viewing Information to Facebook," but he never actually alleges that MLBAM *did* disclose his "Personal Viewing Information" to anyone, or what that "Personal Viewing Information" might be. (Compl. ¶ 48.) Indeed, at no point does Henry identify a particular disclosure that MLBAM made at all, let alone any particular disclosure that MLBAM made about him.

Henry instead pleads a general theory about how MLB.tv and the Facebook pixel work. In contrast to the mere seven paragraphs of allegations relevant to Henry's use of MLB.tv, Henry spends over 30 paragraphs on allegations about how he believes MLB.tv and the Facebook pixel function. (Compl. ¶¶ 1–8, 20–44.) Even assuming these allegations to be true, they do no more than describe a theory of how MLBAM *could* allegedly violate the VPPA under his theory. Henry presents no facts to show that MLBAM *did* violate the statute. These are exactly the kinds of allegations rejected by courts as "'merely consistent with' liability," *Mandala*, 975 F.3d at 207 (quoting *Iqbal*, 556 U.S. at 678), without factual support that could show liability if proven.

By alleging only a general theory unsupported by factual allegations, Henry asks this Court for an advisory opinion. But federal courts do not have the power to issue advisory opinions: Their "judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted).

Henry requests just such a decision based "upon a hypothetical state of facts."

Henry alleges that because MLB.tv has a routine software tool on it that, according to Henry, is somehow capable of transmitting information to Facebook, MLBAM has violated the VPPA. (*See* Compl. ¶¶ 21–42.) Henry's allegations are analogous to a plaintiff alleging a VPPA claim against Blockbuster by alleging that the office manager at a Blockbuster store is capable of pulling an individual's rental history from a database, writing that history on a notepad kept in the store, putting it in an envelope pulled from Blockbuster's supplies, and sending it to the New York Times. In both Henry's complaint and the Blockbuster example, the allegations amount to no more than theories of how the defendant *might* violate the VPPA. Neither Henry nor the hypothetical Blockbuster plaintiff have alleged any facts showing that MLBAM or Blockbuster *actually sent* his information. By basing his claim on these general assertions without any factual support, Henry asks the Court to issue an improper advisory opinion about theoretical—not actual—violations of the VPPA.

Similarly, because Henry's complaint lacks any factual allegations showing that a disclosure occurred, Henry has not shown that he suffered any cognizable injury under the VPPA, further precluding this claim. To have standing to sue in federal court, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). If a complaint fails to include facts showing a cognizable injury, that complaint is properly dismissed. *See Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (affirming of dismissal of complaint under 12(b)(1) for failure to show actual injury). As already described, *see supra* at 15–19, Henry's complaint lacks any facts to show that he watched any video or that his information was actually sent to Facebook

by MLBAM. He therefore cannot show that he suffered a "concrete and particularized and actual or imminent" injury as required for standing. *Id.*

Because Henry's complaint fails to meet the requirements of Rule 12(b)(6) or of Article III, his VPPA claim should be dismissed.

### b. Henry fails to plausibly allege that his Facebook ID is "personally identifiable information."

Henry further fails to state a claim under the VPPA because he does not credibly allege that any of his "personally identifiable information" ("PII") was shared with any third party through the Facebook pixel. The VPPA protects against unauthorized disclosures only of information that qualifies as PII, which the statute defines as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Henry claims that MLBAM shares PII in the form of a "Facebook ID," or "FID," which the complaint defines as "a unique and persistent identifier that Facebook assigns to each user." (Compl. ¶ 33.) According to Henry, when a user visits MLB.tv and is logged into Facebook, the Facebook pixel "causes [1] the digital subscriber's identity," in the form of an FID, "and [2] viewed Video Media to be transmitted to Facebook by the user's browser." (*Id.* ¶ 33) With an FID, Henry contends that "any[] ordinary person can look up the user's Facebook profile and name." (*Id.*; *see also id.* ¶¶ 4, 5, 35, 61, 65.)

But Henry does nothing to allege that he, personally, would be identified in any supposed transmissions of his FID. The VPPA's definition of PII requires that the information disclosed, "at the very least, identify a ***particular*** person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (citing *In re Hulu Privacy Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014)). But Henry fails to plead that his Facebook profile

contains his name or any other information identifying him. At most, Henry claims that he "has had a Facebook account throughout the period he has been an MLB.tv digital subscriber[]." (Compl. ¶ 13; *see id* ¶ 47 ("Plaintiff has had a Facebook account since before he signed up for MLB[.]tv.").) But beyond its mere existence, Henry pleads no facts about his Facebook profile or what information identifying him, if any, it may contain. Without alleging anything about the information on his Facebook profile, Henry does not plausibly plead that his FID would identify him.

Courts have held that alleging the mere existence of a Facebook account is not enough to establish that an FID is PII under the VPPA. For instance, in *Solomon*, the Eastern District of New York held that "Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim. As her complaint says nothing about any personal information on her public Facebook profile page, her VPPA claim fails." 2023 WL 6390055, at *3 (footnote notation omitted). Likewise, in *Ghanaat v. Numerade Labs, Inc.*, the court ruled that "plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses." No. 4:23-CV-00833-YGR, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023). The reasoning of these cases applies squarely to the absent allegations about Henry's Facebook profile in his complaint and require that his VPPA claim be dismissed.

To be sure, other cases, including ones decided in this district, have found otherwise. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (holding an "FID itself represents a particular individual"); *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2023 WL 5434378, at *6 (S.D.N.Y. Aug. 23, 2023) (noting courts have "held Facebook IDs to constitute PII under the VPPA, particularly

where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name" and collecting cases). And as the *Ghanaat* case acknowledged, "[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII." 2023 WL 5738391, at *4 (footnote notation omitted).

But the *Ghanaat* court properly declined to follow those other cases when considering a complaint, like Henry's here, in which plaintiffs "d[id] not allege their Facebook pages contain any personal information, such as their names or email addresses." *Id.* Because such a "complaint does not adequately allege that [plaintiffs'] FIDs result in the sharing of any personal information," plaintiffs "fail to allege this element of their claim or state an injury" under the VPPA. *Id.*; *see also Iqbal*, 556 U.S. at 678 (a complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement'" (quoting *Twombly*, 550 U.S. at 557)).

The *Solomon* case in the neighboring Eastern District of New York also recognized that "district courts have reached different conclusions on the question of whether an FID (along with the names of the videos that were accessed), standing alone, constitutes PII or whether a plaintiff must allege more to state a plausible VPPA claim." *Solomon*, 2023 WL 6390055, at *3. But weighing the relevant pleading standards, the *Solomon* court found "the reasoning in *Ghanaat* persuasive and adopt[ed] it" to dismiss a similar FID allegation devoid of any facts. *Id.* *3. In a similar context, a court here in the Southern District dismissed a VPPA claim involving a different technology because, "[w]hile the complaint alleges what sort of information ***could*** be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information ***was actually*** included on [the plaintiff's] profile nor how that information could be used by a third party to identify [the plaintiff]." *Wilson*, 598 F. Supp. 3d at 92 (emphasis added).

This Court should likewise uphold these pleading standards and require Henry to provide

basic information about his own Facebook profile to state a claim under the VPPA based on the supposed disclosure of any identifying information in that profile. On this complaint, even "accept[ing] as true all well-pled factual allegations," *Id.* at 88, Henry does not allege that any information identifying him was shared without his consent. As such, Henry's complaint fails to allege the PII element of a VPPA claim and must be dismissed.

> **c.   Henry fails to plausibly allege that he viewed or the Facebook pixel shared "prerecorded" video content.**

Henry's pleadings fail for another reason: He has not plausibly alleged that he viewed, or that MLBAM disclosed through the Facebook pixel, any prerecorded, rather than live, video content. The VPPA applies only to "video tape service provider[s]" who are "engaged in the business . . . of rental, sale, or delivery of ***prerecorded*** video cassette tapes or ***similar audio visual materials***." 18 U.S.C. § 2710(a)(4) (emphasis added). Courts construing this language "have uniformly declined to interpret 'similar audio visual materials' as covering 'live' video content broadcast over the internet." *Walker v. Meta Platforms, Inc.*, No. 22-CV-02442-JST, 2023 WL 3607282, at *5 (N.D. Cal. Mar. 3, 2023). This interpretation aligns with the plain text of the VPPA because "[t]he adjective 'prerecorded' modifies both 'video cassette tapes' and 'similar audio visual materials.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022) (*quoting Louth v. NFL Enters. LLC*, No. 1:21-CV-00405-MSM-PAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022)). The legislative history confirms this interpretation. "The 1988 Senate Report recommending passage of the VPPA identified examples of materials that fall within the scope of 'similar audio visual materials' (i.e., 'laser discs, open-reel movies, and CDI technologies'), but none of the examples are materials that would permit, or that otherwise are associated with, the live transmission of video content." *Walker*, 2023 WL 3607282, at *6 (quoting S. Rep. No. 100-599, at 5 (1988)). So "VPPA claims only apply to 'prerecorded' video content and do not

cover 'live' video content." *Solomon*, 2023 WL 6390055, at *4 (citations omitted).

Against this backdrop, Henry does not plausibly allege that he viewed any prerecorded videos on MLB.tv or that MLBAM disclosed information about prerecorded videos he viewed to Facebook. He claims only that "[f]rom 2023 to the present, [he] requested, obtained, and viewed Video Media via MLB.tv's website," elsewhere defining "Video Media" generically as a "computer file containing the prerecorded video." (Compl. ¶ 47; *see also id.* at 1.) Although his complaint states several times that MLB.tv provides "***access***" to prerecorded video content (*id.* ¶¶ 12, 26, 27 (emphasis added)), he never states what prerecorded material he viewed himself, if any. In fact, he provides no detail at all about what video media he supposedly watched on MLB.tv that was supposedly disclosed by the Facebook pixel. To state a claim under a statute concerned with preventing disclosure of the identity of specific prerecorded videos—originally, the titles of videos rented by Judge Bork, *see Nickelodeon*, 827 F.3d at 278–78—a plaintiff at the very least needs to provide more than conclusory allegations about the video media at issue.

The complaint's lack of detail about video media Henry supposedly viewed is particularly problematic given the nature of MLB.tv. Indeed, the reference in Henry's complaint to "other digital media content" available on MLB.tv, (Compl. ¶ 14), is an apparent nod to MLB.tv's primary function as a platform for streaming live baseball games. MLB.tv's subscription page bills itself as "The Home of Streaming Baseball" that allows users to "[s]tream MLB games LIVE or on demand" from anywhere in the country. (MLB.tv Homepage.) So in all likelihood, Henry used MLB.tv to stream live baseball games. To plausibly allege that he watched prerecorded content, Henry would need to plead far more than the generic allegations he makes.

Courts have already reached similar conclusions when presented with similarly limited pleadings. For example, when considering a streaming service like MLB.tv that provided both

"live and on-demand video content," including sports-related content, the *Solomon* court rejected pleadings much like Henry's. 2023 WL 6390055, at *1, *5. The plaintiff in *Solomon* "never explicitly allege[d] that she actually accessed . . . 'prerecorded' video on Defendant's site." *Id.* at *5. Nor did she "plausibly allege[] that the content that is advertised as 'live' on Defendant's site actually qualifies as 'pre-recorded' for purposes of the VPPA." *Id.* at *1, *5. Likewise, in *Mendoza v. Caesars Ent., Inc.*, a court in the District of New Jersey dismissed a VPPA claim because the plaintiff failed to allege that the defendant's products—video games on a website—"include[d] any prerecorded content." No. 23-CV-03591, 2024 WL 2316544, at *4 (D.N.J. May 22, 2024). Henry similarly does not allege that he actually accessed a particular prerecorded video on MLB.tv. Nor does he plausibly allege that any of the ample live-streaming content on MLB.tv somehow qualifies as prerecorded. "[P]articularly given the preference of many viewers to watch sporting events 'live,'" Henry's general allegations about viewing video media on MLB.tv do not credibly claim that he "actually accessed any 'prerecorded' video" on MLB.tv. *See Solomon*, 2023 WL 6390055, at *5.

Decisions regarding a "prerecorded" element in another federal statute reinforce the insufficiency of Henry's pleadings. The Telephone Consumer Protection Act ("TCPA") makes it unlawful to place unwanted cellphone calls using "an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1). But it is not enough for a plaintiff to make the conclusory statement that a phone call was "prerecorded." Rather, "if plaintiff alleges that a telephone call was prerecorded, he must provide some indicia to support that conclusion." *Oparaji v. Home Retention Corp.*, No. 21 CV 2758 (ENV)(LB), 2022 WL 987560, at *7 (E.D.N.Y. Jan. 11, 2022), *R&R adopted,* No. 1:21-CV-2758 (ENV) (LB), 2023 WL 2155764 (E.D.N.Y. Feb. 22, 2023); *see also Herrera v. Navient Corps.*, No. 19-CV-06583 (AMD) (VMS), 2020 WL 3960507, at *7 (E.D.N.Y. July 13, 2020)

("The plaintiff has to do more than simply recite the statutory language." ). As such, a court in this district recently dismissed a TCPA complaint where the plaintiff alleged a voice message was "prerecorded" without "any additional facts from which the Court c[ould] infer that the message was prerecorded rather than, say, the product of a live person reading from a script." *Metzler v. Pure Energy USA LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023).

Likewise here, Henry provides no "additional facts from which the Court can infer" that video media he allegedly viewed on MLB.tv was prerecorded as opposed to live. *Id.* Nor is his conclusory definition of the "Video Media" he supposedly accessed to include "prerecorded" video sufficient to state a claim. (*See* Compl. ¶ 47.) "[W]hen a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details." *Johansen v. Vivant, Inc.*, No. 12-cv-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing TCPA claim based on failure to allege prerecorded element). "Without enhancing his complaint with anything more than the language already available in the statute," Henry "provides only a threadbare, 'formulaic recitation of the elements' of [his claim]," "which is not entitled to an assumption of truth." *See id.* (quoting *Iqbal*, 556 U.S. at 678, 680 and collecting cases).

Because Henry does not plausibly allege that (a) he viewed prerecorded video on MLB.tv or (b) that information about any prerecorded video he viewed was actually shared by the Facebook pixel, he fails to state a claim under the VPPA, and the Court should dismiss his complaint.

## CONCLUSION

Because Henry waived his right to bring a class action, the Court should strike the class-allegations in his complaint under Rules 12(f) and 23. Further, because Henry's complaint fails in several ways to state a claim under the VPPA, the Court should dismiss his claim under Rules 12(b)(6) and 12(b)(1).

Dated: August 15, 2024

Respectfully submitted,

By: _S/ Alan E. Littmann_
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 15, 2024, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann