**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN HENRY, *individually and on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.,<br><br>Defendant. | Case No. 1:24-cv-01446-GHW-GWG<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.'S MOTION TO STRIKE AND DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1) AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………..……ii

TABLE OF AUTHORITIES…………………………………………………………….….…iii

I. INTRODUCTION………………………………………………………….….……………..1

II. STATEMENT OF THE FACTS……………………………………………………….….….5

III. ARGUMENT………………………………………………...…….….………………………8

A. THE COURT SHOULD DENY THE MOTION TO STRIKE THE CLASS ALLEGATIONS BECAUSE MLB'S TOU MAY BE REASONABLY INTERPRETED TO ALLOW CLASS TREATMENT OF PLAINTIFF'S VPPA CLAIMS…….……………………………....……..…………………………………8

a. The Class Action Waiver Contains Contradictory Terms That Create Contractual Ambiguity………………………………….……………………..………...10

b. Extrinsic Evidence Will Prove that MLB's Intent is to Resolve the VPPA Claims on Class-Wide Basis………………………………..……….……….…12

c. Even if the Parties' Intent Cannot Be Clearly Ascertained through Extrinsic Evidence, the Court Would Likely Resolve Ambiguity in the TOU Against the Drafter, MLB, and in Favor of Plaintiff's Class Claims……………………………………………………………..………14

B. THE COURT SHOULD REJECT MLB'S FACIAL ATTACK ON PLAINTIFF'S STANDING BECAUSE HE SUFFICIENTLY ALLEGES THAT HE WAS INJURED BY MLB'S IMPROPER DISCLOSURES OF HIS PERSONAL VIEWING INFORMATION TO FACEBOOK………………………..……………………...15

C. THE COURT SHOULD DENY THE MOTION TO DISMISS BECAUSE THE VPPA CLAIMS ARE SUFFICIENTLY PLEADED..…………………….…...…18

a. Plaintiff Sufficiently Alleges MLB Disclosed His Personal Viewing Information to Meta.………………………..…………………………..…18

b. Plaintiff Sufficiently Alleges that MLB Disclosed His Personally Identifiable Information.……………………..…………………………………...……19

c. Plaintiff Sufficiently Alleges that MLB Disclosed Prerecorded Videos He Watched to Facebook.………………………..……………………..…...………21

IV. CONCLUSION……………………...………………...…………………………….24

V. CERTIFICATE OF SERVICE.……………………...………………...……………....25

# TABLE OF AUTHORITIES

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ……………………………………………………..………..15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ………………………..……………………………………………18

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ..……………………………………………………17

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) ……………………………………………..….20

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015)……………………………………….………8,9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)……..……………………………………………….………………18

*Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*,
361 N.E.2d 999 (N.Y. 1977).……………………………….…..…...…………….….12,13

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) ………………………………………..…..…………………15

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) …………………………………………………….16, 17

*Chen–Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)………………...…………………………...…………9

*Collins v. Pearson Educ., Inc.*,
No. 23 CIV. 2219 (PA), 2024 WL 895316, (S.D.N.Y. Mar. 1, 2024)………........….9, 16, 17, 18

*Czarnionka v. Epoch Times Ass'n, Inc.*,
No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ……......………...20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ………………...……………………………...………………..20

*Electra v. 59 Murray Enters.*,
987 F.3d 233(2d Cir. 2021) ……………………..………………………..……………….….14

*Ellis v. Cartoon Network, Inc.*,
No. 14 Civ. 484 (TWT), 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ….……………….……20

*Emilio v. Spring Spectrum L.P.*,
68 F. Supp. 3d 509 (S.D.N.Y. 2014)…………………………………….……….…….….8, 9

*Faulkner v. Nat'l Geographic Soc'y*,
452 F. Supp. 2d 369 (S.D.N.Y. 2006) ……………………………………..…….…….……12

*Fed. Ins. Co. v. Am. Home Assur. Co.,*
639 F.3d 557 (2d Cir. 2011).…………………………..……………...……..……………11

*Feldman v. Star Trib. Media Co. LLC*,
No. 22-CV-1731 (ECT/TNL), 659 F.Supp.3d 1006 (D. Minn. Mar. 7, 2023) ……………….20

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) …………………………...……………...………20, 21

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) …………………………...……………...………….. 20

*Greenfield v. Philles Records, Inc.*,
780 N.E.2d 166 (N.Y. 2002)...……………………………………...……………...……11

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023……………………………………..………………20

*Hayes v. Major League Baseball Advance Media, L.P.*,
No. 1:22-CV05822 (N.D. Ill.)…………………………………….….…...….1-4, 6-7, 19, 21-23

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
635 F. Supp. 3d 238 (S.D.N.Y. 2022)………………………………..……..………………..…..9

*Hirsch v. Fortegra Fin. Corp.,*
No. 3:17-cv-1215-J-39JBT, 2018 U.S. Dist. LEXIS 219724 (M.D. Fla. June 26, 2018)…….24

*In re Celsius Network LLC*,
649 B.R. 87 (Bankr. S.D.N.Y. 2023) …………………………..…..………………………...12

*In re Hulu Priv. Litig.*,
No. 11 Civ. 03764 (LB), 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ……………………...20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ……………………….……………………......20

*Kerin v. U.S. Postal Serv.*,
116 F.3d 998 (2d Cir. 1997) ………………………….……………………..................15

*Kern v. Siemens Corp.*,
393 F.3d 120 (2d Cir. 2004) …………………………..…………………………………… 12

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012)..…………………………..……………………………………18

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010) ……………………………………………………..…………11

*Louth v. NFL Enters. LLC,*
No. 1:21-CV-00405-MSM-PAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022)………………...24

*Lucinda Jackson v. Fandom Inc.*,
No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023)……………………………20

*Lujan v. Def. of Wildlife*,
504 U.S. 555 (1992) ……………………………………………….…..…………………17

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ……………….……………………….................17

*Mayfield v. Asta Funding, Inc.*,
95 F. Supp. 3d 685 (S.D.N.Y. 2015)……………………………………….………..…9,10

*Mazzola v. Roomster Corp.*,
849 F. Supp. 2d 395 (S.D.N.Y. 2012)…………………………..……………………………9

*McCabe v. Caribbean Cruise Line, Inc.,*
No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014)……………………24

*Mendoza v. Caesars Entertainment, Inc.*,
No. 23-CV-03591, 2024 WL 2316544 (D.N.J. May 22, 2024)………………………………22

*Morgan Stanley Grp. v. New England Ins. Co.*,
225 F.3d 270 (2d Cir. 2000) ……………………………………………………….…14

*New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*,
28 A.D.3d 175 (N.Y. App. Div. 2006) …………………………………………...…...11

*Porat v. Lincoln Towers Cmty. Ass'n,*
464 F.3d 274 (2d Cir. 2006)………………………………………………………25

*Quinan v. Jet Lending, LLC,*
No. 4:21-CV-02296, 2022 U.S. Dist. LEXIS 42958 (S.D. Tex. Mar. 10, 2022)……………...24

*Rahn v. Bank of Am.*,
No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 (N.D. Ga. 2016)………...23, 24

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) ……………………………………………….……9

*Rothstein v. Auto Club S.*,
No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316 (S.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017).……………………..…9

*Seiden Assocs. v. ANC Holdings, Inc.*,
959 F.2d 425(2d Cir. 1992) ………………………………….………….................12

*Solomon v. Flipps Media, Inc.*,
No. 22-CV-5508-JMA-JMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023)…...……......21, 22

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
467 F.3d 107 (2d Cir. 2006) ……………………………………..……….................12

*Staley v. Hotel 57 Servs., LLC*,
680 F. Supp. 3d 440 (S.D.N.Y. 2023)………………………………...……...…..…10, 15

*Stark v. Patreon, Inc.,*
635 F. Supp. 3d 841 (N.D. Cal. 2022)……………………….……………………...24

*State v. Home Indem. Co.,*
486 N.E.2d 827 (N.Y. 1985) …………………...………..………………...…….……11, 14

*Sullivan v. Study.com LLC*,

No. 18 Civ. 1939 (JPO), 2019 WL 1299966, (S.D.N.Y. Mar. 21, 2019) ……..……………..9,10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) …………………………………………….....................................17

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
875 F.2d 1044 (2d Cir. 1989) …………………...………..…………………….…………..14

*Walker v. Meta Platforms, Inc.*,
No. 22-cv-024420JST, 2023 WL 3607282 (N.D. Cal. Mar. 3, 2023)…………………………24

*Warth v. Seldin*,
422 U.S. 490(1975) ………………………...………...……………………….……………16

*White v. Continental Cas. Co.*,
878 N.E.2d 1019, 1021 (N.Y. 2007)..…………...………………...………………...……..…11

**Rules**

Fed. R. Civ. P. 12(f) )..…………...………………...………………...……..…………………...1,8
Fed. R. Civ. P. 12(b)(6)...…………...………………...………………...……..……………………1
Fed. R. Civ. P. 12(b)(1) ..…………...………………...………………...……..…….…………….1

**Other Authorities**

S. Rep. No. 100-599………………………………………………………………………….5,6
134 Cong. Rec. S5399 (May 10, 1988)……………………………………..………………….6

Plaintiff Bryan Henry ("Plaintiff") responds in opposition to Defendant Major League Baseball Advanced Media, L.P.'s ("MLB" or "Defendant") motion to dismiss to strike and dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(f), 12(b)(6), and 12(b)(1) [ECF No. 26] ("Motion") and supporting memorandum of law [ECF No. 27] ("Memorandum").

## INTRODUCTION

This is a consumer digital privacy class action complaint against MLB for violating the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by its use and employment of the Facebook Pixel tracking tool on its video streaming service, *MLB.tv*. Specifically, without obtaining proper consent, MLB knowingly disclosed to Facebook data containing its digital subscribers' (i) personally identifiable information ("PII") or Facebook ID ("FID") and (ii) the computer file containing the prerecorded video, its name or title, and its corresponding URL viewed ("Video Media") (collectively, "Personal Viewing Information"). ECF No. 1 ("Compl.") at 1.

The Facebook Pixel is a code MLB installed on its *MLB.tv* website allowing it to collect users' data. More specifically, it tracks when digital subscribers enter the *MLB.tv* website or App and view Video Media. MLB's website tracks and discloses to Facebook the digital subscribers' viewed Video Media, and most notably, the digital subscribers' FID, in violation of VPPA. This occurs even when the digital subscriber has not shared (nor consented to share) such information. Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of intentionally disclosing its digital subscribers' Personal Viewing Information to Facebook in knowing violation of VPPA.

Mass litigation against MLB—particularly for its use of the Meta Pixel to transmit Personal Viewing Information—has proceeded like a five-act play. Although details of MLB's play are

outside the four corners of the Complaint, the Court should consider this evidence because MLB's new Terms of Use Agreement ("TOU") includes a contradictory Class Action Waiver that simultaneously waives the parties' rights to participate in a class action lawsuit for VPPA claims while retaining the parties' right to participate in a class-wide settlement. Where a contract contains contradictory terms that create ambiguity, New York law requires this Court to consider extrinsic evidence to determine its intent. Extrinsic evidence submitted with this opposition demonstrates that the intent of MLB's consumer contract of adhesion is to resolve all VPPA claims in federal court on a class-wide basis and, therefore, the new TOU may be reasonably interpreted to permit class claims to proceed. For this reason, it would be premature for this Court to strike the class allegations.

Act I began with a class action lawsuit brought against MLB in October 2022 for its alleged violations of the VPPA: *Hayes v. Major League Baseball Advance Media, L.P.*, No. 1:22-CV05822 (N.D. Ill.). MLB moved to dismiss in favor of arbitration, arguing that its TOU required mandatory arbitration of the VPPA claims. *See id.* at ECF No. 21 at 6–10. Shortly after MLB sought to compel arbitration, Hayes voluntarily dismissed the lawsuit. *Id.* at ECF Nos. 24–25.

The TOU in effect when *Hayes* was dismissed are the same as those operative when Plaintiff signed up for *MLB.tv* in 2023. Section 11 of the prior TOU stated that "any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties … shall be settled by binding arbitration." *See* MLB.com Terms of Use Agreement, last updated February 4, 2020, *available at* https://web.archive.org/web/20240129184512/https://www.mlb.com/official-information/terms-of-use#section-11. The terms further provided that "[a]ny and all claims shall be arbitrated on an individual basis only" and that "the arbitrator shall have no authority to arbitrator any Claim as a

class action[.]" *Id.* In other words, the prior arbitration agreement subjected all claims to arbitration on an individual basis, as MLB argued in *Hayes*.

Act II began with a wave of mass arbitrations. After the *Hayes* dismissal, thousands of MLB digital subscribers began to initiate arbitration with MLB over VPPA claims. *See* **Exhibit A**, Declaration of Adam A. Schwartzbaum ("Schwartzbaum Decl.") ¶¶ 4–5. For example, in September 2023, Plaintiff's Counsel transmitted correspondence to MLB indicating that they represented hundreds of individuals who sought to arbitrate claims concerning alleged violations of the VPPA. *Id.* In response, MLB agreed to a mediation concerning these proposed arbitrations which took place on January 11, 2024, but which did not result in a settlement. *Id.* ¶ 6.

Act III opened with a dramatic twist. On February 6, 2024, MLB launched a significant update to its TOU. *See* MLB.com Terms of Use Agreement, last updated February 6, 2024, *available at* https://www.mlb.com/official-information/terms-of-use#section-11 (emphasis added). The new TOU only compels arbitration of a "Dispute," which is defined to *exclude*

> any dispute or claim related to trademark or copyright infringement or any dispute or claim related to the alleged violation of your privacy rights or interests whether based in contract, tort, statute, fraud, misrepresentation, common law, rule, regulation, or any other legal theory, including but not limited to: (i) ***claims under the Video Privacy Protection Act*** and corresponding state video privacy laws ….

*Id.* Thus, while the prior TOU mandated arbitration of all disputes, "claims under the [VPPA]" are the first type of dispute that is specifically *not* arbitrable under the new TOU. *Id.*

The new TOU also contains a new section entitled "Class Action Waiver" with contradictory terms. On the one hand, the Class Action Waiver requires all VPPA claim to be conducted "ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS … ACTION," and waives both MLB.com subscribers' *and* MLB's "RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT

PERMITTED BY APPLICABLE LAW." *Id.* On the other hand, "NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT." The new TOU does not explain how MLB and its digital subscribers may participate in a class-wide settlement concerning VPPA claims when *both* parties agreed to only litigate such claims on an individual basis and to waive their rights to participate in a class action.

Because MLB's new TOU carves VPPA claims out from arbitration and allows the parties to "participate in a class-wide settlement," Plaintiff's Counsel interpreted the new TOU to mean that MLB intends to resolve its VPPA claims on a class-wide basis. Schwartzbaum Decl. ¶ 7. Thus, on February 26, 2024—just 20 days after MLB updated its TOU—Act IV opened with Plaintiff instituting this class action lawsuit. *Id.*; *see also* ECF No. 1. On April 22, 2024, MLB submitted a pre-motion letter to the Court expressing its intent to move to strike Plaintiff's class allegations and dismiss the complaint. *See* ECF No. 20 at 1. The Court waived the pre-motion conference requirements and ordered MLB's motion to be filed on May 3, 2024. *Id.* Following that order, the parties conferred and agreed to mediate "Plaintiff's *and the purported Class's claims*." *Id.* at 1 (emphasis added). To aid mediation, the Court granted the parties' joint request to stay all deadlines in this action for a period of sixty days. *See* ECF No. 21. Unfortunately, the parties' mediation on July 23, 2024, did not result in a settlement. Schwartzbaum Decl. ¶ 8.

Finally, Act V begins with MLB filing its motion to strike and dismiss Plaintiff's complaint. ECF No. 26. Despite having represented to this Court that it sought to resolve Plaintiff's *and* "the purported Class's claims" at mediation, ECF No. 20 at 1, MLB's first argument is that the class allegations should be stricken based on the Class Action Waiver. *See* Mem. at 9–14. MLB offers no explanation for the contradictory terms in the new TOU that both disallow class treatment of

VPPA claims while simultaneously preserving the parties' rights to participate in a class-wide settlement of those same claims in federal court.

The foregoing arguments and evidence demonstrate that the new TOU does not clearly preclude the possibility that Plaintiff's claims may be brought on a class-wide basis because extrinsic evidence establishes that the TOU's intent is to resolve MLB's VPPA liability through a class settlement. For this reason, it would be premature for the Court to strike the class allegations. Case law cited by MLB suggests that the Court should determine the applicability of the Class Action Waiver at a later stage in this litigation, such as class certification or summary judgment, after the development of a fuller factual record.

The Court should also deny MLB's arguments for dismissal, just as most federal courts have done when considering nearly identical arguments. First, MLB's facial attack on Plaintiff's standing fails because the Complaint sufficiently alleges MLB transmitted *Plaintiff's* Personal Viewing Information to Meta without his consent, in violation of the VPPA. Second, Plaintiff sufficiently alleges that MLB knowingly shared his personally identifiable information ("PII") with Meta through its use of the Pixel, because his FID allows an ordinary person to connect his name and identity to the *MLB.tv* pre-recorded videos he watched. Third, Plaintiff expressly alleges that MLB transmitted "prerecorded" video content he watched to Meta, so this purported pleading issue is another misdirection. In short, Plaintiff's Complaint sufficiently alleges Plaintiff's standing and the elements of a VPPA claim and, therefore, the Court should deny the Motion.

**STATEMENT OF FACTS THAT MUST BE TAKEN AS TRUE**

VPPA was initially passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase and viewing data. Compl. ¶ 16. Prior to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and

others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7–8 (1988). Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. *Id.* ¶ 17. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* (quoting S. Rep. No. 100-599 at 7–8 (1988) (statements of Sens. Simon and Leahy, respectively). Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." *Id.* ¶ 18 (citing 134 Cong. Rec. S5399 (May 10, 1988)). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

While these statements rang true in 1988 when VPPA was passed, the importance of legislation like VPPA in the modern era of data mining from online activities is even more pronounced. *Id.* ¶ 19. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information." *Id.* ¶ 19. In this case, Defendant chose to deprive Plaintiff and the Class

members of that right by systematically disclosing their Personal Viewing Information to Facebook, without providing notice to (let alone obtaining consent from) anyone. *Id.* ¶ 20.

Defendant is a limited partnership of the club owners of Major League Baseball headquartered in New York, New York. Compl. ¶ 14. Defendant develops, owns, and operates the *MLB.tv* website, which include a broad selection of prerecorded video content posted along with their stories and other digital media content. *Id.* MLB installed the "Facebook Pixel" or "Pixel"—a snippet of programming code—on its website to transmit its subscribers' Personal Viewing Information to Facebook. *Id*. ¶ 4. When a subscriber watches a prerecorded video on its website, MLB sends to Facebook the video content name, its URL, and most notably, the subscriber's Facebook Profile ID ("FID"). *Id*. ¶¶ 5, 38, 65. This occurs even when the subscriber has not shared—nor consented to share—such information. *Id*. ¶¶ 4, 25, 28. This transmission is not the digital subscriber's decision, but results from Defendant's purposeful use of its Facebook tracking Pixel by incorporation of that Pixel and code into *MLB.tv*'s website or App. *Id.* ¶¶ 33, 40–41.

An FID is a unique and persistent identifier that Facebook individually assigns to each user. *Id*. ¶ 33. Because the FID serves as a unique identifier for an individual's Facebook account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile. *Id*. By transmitting the subscriber's unique identifier together with the video they watched, MLB's use of the Pixel allows Facebook to know the video-watching habits of a specific user on MLB's website. *Id*. ¶ 35.

The Pixel is an invisible tool that businesses, such as MLB, employ to collect information and track consumers' actions on their websites to refine the business's targeted advertising. *Id*. ¶¶ 29–31. MLB installed the tracking Pixel because it benefits financially from the advertising and information services that stem from use of the Pixel. *Id*. ¶¶ 38–40. Specifically, Facebook uses the

information to build a more detailed profile of its users, further enabling its ability to sell and display targeted digital ads to them on Facebook. *Id*. ¶ 39. In exchange for using the Pixel, and at the expense of its subscribers' privacy, MLB uses the information received to build better targeted advertising on its website which, in turn, generates greater revenue. *Id*. ¶ 6.

Plaintiff Bryan Henry began his digital subscription to MLB.tv through the 2023 T-Mobile Tuesdays Promotion and continues to maintain the subscription to this day. *Id.* ¶¶ 12, 45–46. Plaintiff became a paid subscriber to *MLB.tv* beginning on or around 2023 which granted him exclusive access to view prerecorded video and media content on Defendant's website and app without advertisements. *Id*. Plaintiff has had a Facebook account throughout the period he has been an *MLB.tv* digital subscriber. *Id.* ¶¶ 13, 47. During the relevant period, Plaintiff has used his *MLB.tv* digital subscription to view Video Media through the *MLB.tv* website and/or App while logged into his Facebook account. *Id.* By doing so, Plaintiff's Personal Viewing Information was disclosed to Facebook pursuant to the systematic process described herein. *Id.* Plaintiff never gave MLB express written consent to disclose his Personal Viewing Information to Facebook. *Id.*¶ ¶¶ 13, 48.

## ARGUMENT

### I. THE COURT SHOULD DENY THE MOTION TO STRIKE THE CLASS ALLEGATIONS BECAUSE MLB'S TOU MAY BE REASONABLY INTERPRETED TO ALLOW CLASS TREATMENT OF PLAINTIFF'S VPPA CLAIMS.

Motions to strike under Rule 12(f) are rarely successful. *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) ("Courts rarely grant motions to strike pursuant to Federal Rule of Civil Procedure 12(f)."); *Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) ("Motions to strike are viewed with disfavor and infrequently granted."). This is particularly true in the class-action context because a Rule 12(f) motion "requires a reviewing

court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore*, 94 F. Supp. 3d at 447; *see also Emilio*, 68 F. Supp. 3d at 514 (same); *Mazzola v. Roomster Corp*., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[D]istrict courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination."). "Put differently, motions to strike class allegations are often denied as premature." *Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (citing *Chen–Oster v. Goldman, Sachs & Co*., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking ... motions [to strike class allegations] are deemed procedurally premature."); *Mazzola*, 849 F. Supp. 2d at 410 (denying motion to strike class allegations as premature).

While "striking the class allegations may be appropriate [] where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis," a motion to strike class allegations is "premature" where the defendant "has not definitively shown that the class waiver … clearly applies so as to preclude … a class action." *Collins v. Pearson Educ., Inc.*, No. 23 CIV. 2219 (PA), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022)). This Court has frequently denied motions to strike class allegations as premature where, as here, Defendant is "basing their argument against class claims on factual and legal disputes to be decided at a later point in the litigation." *Rothstein v. Auto Club S.*, No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316, at *4 (S.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017); *see also, e.g., Mayfield v. Asta Funding, Inc*., 95 F.

Supp. 3d 685, 696 (S.D.N.Y. 2015) (denying motion to strike as premature because defendants had not yet proven that plaintiffs had "waived their class action rights and established a 'meeting of the minds on all essential terms' of any such waiver"); *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *6–7 (S.D.N.Y. Mar. 21, 2019) (denying motion to strike as premature because the issue whether class members "entered into arbitration agreements that included class-action waivers" "mirror[s] the class certification inquiry" which should be decided at the class certification stage).

As discussed in greater detail below, the Class Action Waiver is contradictory and ambiguous, so the Court will be required to consider extrinsic evidence to interpret the parties' intent. When the Court considers this external evidence at a later stage of this litigation, after the development of a full factual record, it will likely find that the parties' intent is to permit VPPA claims to be litigated in federal court on a class basis. Moreover, even if the Court were to find that the extrinsic evidence fails to resolve the ambiguity, it would then apply the doctrine of *contra proferentem* to construe the new TOU against the drafter, MLB, and in favor of Plaintiff's class claims. The Court should deny the motion to strike the class allegations because Plaintiff proffers a reasonable interpretation of the new TOU that permits this case to be resolved on a class-wide basis and, therefore, the motion to strike is premature. *See Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440, 445–46 (S.D.N.Y. 2023) (denying motion to compel arbitration of plaintiffs' claims and to strike the class allegations in complaint because defendant failed to meet its burden to show that a "[class action] waiver – read against the other provisions of the contract – reveals, in a clear and convincing manner, an intent to preclude these claims from class-action litigation").

**A. The Class Action Waiver Contains Contradictory Terms That Create Contractual Ambiguity.**

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc*., 780 N.E.2d 166, 170 (N.Y. 2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id*. (internal quotation marks omitted). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co*., 878 N.E.2d 1019, 1021 (N.Y. 2007). "The matter of whether the contract is ambiguous is a question of law for the court[,]" *Law Debenture Trust Co. v. Maverick Tube Corp*., 595 F.3d 458, 465 (2d Cir. 2010), and "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 780 N.E.2d at 170. "If, however, the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *State v. Home Indem. Co.,* 486 N.E.2d 827, 829 (N.Y. 1985); *see also Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 567 (2d Cir. 2011).

The TOU "is ambiguous" because "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 28 A.D.3d 175, 177 (N.Y. App. Div. 2006). Here, the Class Action Waiver in the new TOU contains terms that are inherently contradictory and cannot be reconciled, creating ambiguity: The TOU *waives* the parties' rights to litigate VPPA claims on a class basis while simultaneously *retaining* the parties' rights to participate in a class-wide settlement. These terms are contradictory because a "class-wide settlement" may only result from a class action complaint brought under Federal Rule of Civil

Procedure 23,[1] yet the TOU purportedly bars any MLB subscriber from ever pleading such a case and waives *both* parties' rights to participate in a class action. The Court should therefore find that the Class Action Waiver is ambiguous. *See, e.g., Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369, 375, 377–79 (S.D.N.Y. 2006) (finding ambiguity because contractual language was reasonably susceptible to more than one meaning).

**B. Extrinsic Evidence Will Prove that MLB's Intent is to Resolve the VPPA Claims on Class-Wide Basis.**

Where, as here, contradictions in a contract make it ambiguous, the Court should look "to extrinsic evidence to determine the proper meaning of the contract." *In re Celsius Network LLC*, 649 B.R. 87, 99 (Bankr. S.D.N.Y. 2023) (examining extrinsic evidence to resolve ambiguity caused by contradictory terms in defendant's terms of use); *see also Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) (explaining that when a court finds a contract to be ambiguous, "extrinsic evidence may properly be considered in the search for the contracting parties' intent"); *Faulkner*, 452 F. Supp. 2d at 369, 375, 377–79 (analyzing extrinsic evidence to ascertain intent of ambiguous contract).

"The cardinal principle for the construction and interpretation ... [of] all contracts—is that the intentions of the parties should control." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (citation omitted). Under New York law, courts determine intent by looking at "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977). "In doing so, disproportionate emphasis is not to be put on any

[1] *See Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004) ("Rule 23 offers the exclusive route to forming a class action.").

single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Id.*

Based on the extrinsic evidence submitted by Plaintiff, there is a reasonable basis to find that the the parties' intent is to resolve their VPPA claims in federal court on a class wide basis and, therefore, to interpret the TOU to allow such claims to proceed. The Court should deny the motion to strike based on the existence of this reasonable interpretation of the new TOU.

Plaintiff's extrinsic evidence demonstrates a few fundamental truths. First, MLB initially desired to have all VPPA claims subjected to individual arbitration. Second, after MLB was threatened with tens of thousands of individual arbitrations from MLB digital subscribers for alleged VPPA violations and failed to settle them, MLB introduced the new TOU in February 2024 to undermine those claimants and attempt to require all MLB subscribers to bring their VPPA claims in federal court. Third, despite its purported desire to only allow VPPA claims to be brought in court on an individual basis, MLB's new TOU reserves both its subscribers' and MLB's right to settle all the VPPA claims on a class-wide basis. Indeed, this is precisely what MLB attempted to do when it agreed to delay this case in favor a second mediation that, *according to MLB*, was intended to negotiate Plaintiff's *and the Class's* claims.

Based on the foregoing evidence, MLB's intent is clear: To pit the VPPA claimants against one another and create a race to the bottom from which MLB hopes to extract a cheap class deal that resolves all its VPPA liability. In other words, extrinsic evidence reveals that MLB wants to resolve its VPPA liability through a class resolution in federal court. The Court should conclude that there is a reasonable basis to find that this intent may be effectuated by construing the TOU to allow Plaintiff's VPPA claims to proceed on a class basis. Thus, the motion to strike should be denied as premature. *See supra* at 9–10 (citing cases supporting denial of motion).

### C. Even if the Parties' Intent Cannot Be Clearly Ascertained through Extrinsic Evidence, the Court Would Likely Resolve Ambiguity in the TOU Against the Drafter, MLB, and in Favor of Plaintiff's Class Claims.

Striking of the class allegations would be premature because Plaintiff should be allowed to develop a complete factual record concerning the intent of the contradictory and ambiguous Class Action Waiver. Plaintiff suggests that this evidence will support an interpretation of the new TOU that allows the claims to proceed on a class-wide basis. But even "if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court." *State v. Home Indem. Co.,* 486 N.E.2d 827, 829 (N.Y. 1985). "Under those circumstances, the ambiguity must be resolved against the [party] which drafted the contract." *Id*. (internal citations omitted). Resolving the ambiguity against the party who drafted the contract is the doctrine of *contra proferentem*. See *Morgan Stanley Grp. v. New England Ins. Co*., 225 F.3d 270, 276 (2d Cir. 2000). The *contra proferentem* principle, that a contract is construed against the drafter, is to be applied only (i) where more than one reasonable interpretation exists, and (ii) as a last resort, after all other guides to interpretation have been exhausted. *See Electra v. 59 Murray Enters*., 987 F.3d 233, 245 (2d Cir. 2021) ("[The] generally accepted purpose [of contra proferentem is] as an interpretive tiebreaker of last resort."), *cert. denied*, 142 S. Ct. 563 (2021); *U.S. Naval Inst. v. Charter Commc'ns, Inc*., 875 F.2d 1044, 1050 (2d Cir. 1989) ("Finally, if, after all of the other guides to interpretation have been exhausted and the court concludes that there remain two reasonable interpretations of the contract, with each party knowing or having reason to know of the other party's understanding of the term, the court should as a policy matter …, choose the interpretation that is adverse to the party that drafted the contract.").

If, after the factual record is fully developed, the Court finds that the Class Action Waiver has more than one reasonable interpretation and that the extrinsic evidence does not establish the parties' intent, it will likely then apply the *contra proferentem* principle to construe the new TOU against the drafter, MLB, and in favor of Plaintiff's class claims. *See Staley*, 680 F. Supp. 3d at 448 ("The choice between [two reasonable] interpretations I made easier" by the law that "ambiguities in a contract must be construed against the drafter") (citing *Kerin v. U.S. Postal Serv.*, 116 F.3d 998, 992 (2d Cir. 1997)). Because there are multiple ways for this Court to find that the new TOU does not prohibit Plaintiff's claims from class treatment, the Court should deny the motion to strike as premature. *Id.* (adopting plaintiff's interpretation of a class action waiver at the motion to strike stage and denying "the defendants' motion without prejudice to its being re-raised at the class certification stage, where the Court may benefit from additional discovery on this issue").

## II. THE COURT SHOULD REJECT MLB'S FACIAL ATTACK ON PLAINTIFF'S STANDING BECAUSE HE SUFFICIENTLY ALLEGES THAT HE WAS INJURED BY MLB'S IMPROPER DISCLOSURES OF HIS PERSONAL VIEWING INFORMATION TO FACEBOOK.

MLB's attack on Plaintiff's standing is based solely on the sufficiency of the Complaint's allegations. *See* Mem. at 15–18. "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In this situation, "[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Id.* (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in

favor of the complaining party." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Applying this standard, the Court should conclude Plaintiff sufficiently alleges factual allegations that MLB disclosed his Personal Viewing Information to Meta and, therefore, he was injured by MLB's invasion of his privacy rights.

On this argument, *Collins* is instructive. 2024 WL 895316, at *3. There, as here, the defendant argued the complaint did not adequately plead injury in-fact for a VPPA claim because "it contains only spare and conclusory allegations as to [plaintiff's] injury," criticizing the plaintiff for failing to "specifically identify the services to which [plaintiff] subscribed, the specific videos he requested or obtained, the dates he requested or obtained these videos, where on [defendant's] website the videos can be found, the disclosed Facebook ID, or the disclosed video title." *Id.* As this Court explained, however, "these details are not needed to allege that [plaintiff] suffered an injury in-fact." *Id.* As in this case, "[t]he Complaint alleges that [defendant], as an across-the-board practice, disclosed to Facebook [plaintiff's] Facebook ID, and the titles and URLs of each of the videos and other services he required or obtained from [defendant's] website." *Id.*; *see* Compl. ¶ 32. "Even without the names of specific videos and the like, this adequately alleges concrete injury, in that [defendant] 'intentionally disclosed [plaintiff's] personally identifiable information' and his 'video-watching activity' to Facebook 'without [his] knowledge or consent' via the Pixel. *Collins*, 2024 WL 895316, at *3 (quoting *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 90 (S.D.N.Y. 2023) (denying defendant's motion to dismiss VPPA claim for lack of standing)).

Not only has the Supreme Court held that "'disclosure of private information' is an intangible harm traditionally recognized as actionable in American courts," *id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), but also "specific to this statute, courts in this Circuit have held that "because the VPPA creates a specific right to relief for disclosures made

in violation of the statute, a plaintiff asserting claims under the VPPA need only assert [his] information was wrongfully disclosed to have asserted an 'injury in fact' supporting Article III standing." *Id.* (citing *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 668 (S.D.N.Y. 2015). As in *Collins*, [t]he Complaint here clears that threshold." *Id.* (citing *Carter*, 670 F. Supp. 3d at 90 (complaint alleged concrete injury under VPPA where plaintiff's video-watching and personal information was allegedly disclosed to Facebook); *Martin v. Meredith Corp*., 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023) (complaint alleged concrete injury under VPPA where plaintiff's personal information was allegedly disclosed to third party).

MLB's argument that the Complaint fails to allege "that MLBAM actually disclosed any of this information" to Facebook, Mem. at 15–18, ignores both its factual allegations and the liberal standard applicable at this stage. As the *Collins* court noted, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." 2024 WL 895316, at *3 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up)). "The Complaint's allegation here of an overarching business practice necessarily picks up the specific facts necessary to establish the claim." *Id.* The Court should therefore "reject[ MLB's] first argument as an improper "attempt[ ] to devise [ ] additional pleading requirement[s]." *Id.* (quoting *Austin-Spearman*, 98 F. Supp. 3d at 667).

Finally, MLB suggests that Plaintiff lacks standing because he "does not allege that 'personally identifiable information' was shared with any third party" and "does not allege viewing any particular 'prerecorded' videos or 'similar audio visual materials.'" Mem. at 15. "These arguments, however, go to the merits of [Plaintiff's] claims, not his standing to bring it." *Collins*,

2024 WL 895316, at *4 (citing cases). Thus, as in *Collins*, the Court reject all MLB's challenges to Plaintiff's standing. *Id.*

## III. THE COURT SHOULD DENY THE MOTION TO DISMISS BECAUSE THE VPPA CLAIMS ARE SUFFICIENTLY PLEADED.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Applying the foregoing standard, the Court should conclude the Complaint contains sufficient factual allegations to state a cause of action for violation of the VPPA and, accordingly, deny the motion to dismiss under Rule 12(b)(6).

### A. Plaintiff Sufficiently Alleges MLB Disclosed His Personal Viewing Information to Meta.

As shown above, Plaintiff alleges an actionable disclosure of ***his*** Personal Viewing Information. *See supra* at 16–18. Plaintiff alleges that ***he*** "has had a Facebook account since before he signed up for MLBtv" and that, during the relevant period, ***he*** "requested, obtained, and viewed Video Media via *MLB.tv*'s website and App." Compl. ¶ 47. The Complaint defines "Video Media" as "the computer file containing the prerecorded video, its name or title, and its corresponding URL viewed." *Id.* at 1. Plaintiff further alleges that, through the Pixel, whenever a digital subscriber such as himself viewed Video Media on MLB's platforms, the Pixel transmitted it, along

with his FID, to Facebook. *Id.* ¶¶ 29–42. Finally, Plaintiff alleges that, because of this factual scenario, "Defendant knowingly caused Personal Viewing Information, including FIDS, concerning ***Plaintiff*** and Class members to be disclosed to Facebook." *Id.* ¶ 61.

The Court should reject Defendant's argument that the Complaint "consists of just the sort of naked assertions and bare recitals of the elements that courts routinely reject as insufficiently pleaded" because it ignores these specific factual allegations, in violation of the pleading standard on a motion to dismiss. Mem. at 16. Instead, accepting the foregoing allegations as true and liberally construing them in a light most favorable to Plaintiff, the Court should conclude that Plaintiff sufficiently alleges that his Personal Viewing Information was disclosed to Facebook without his consent, which is sufficient to state a VPPA claim.

**B. Plaintiff Sufficiently Alleges that MLB Disclosed His Personally Identifiable Information.**

Recycling another failed argument that most courts have rejected, MLB suggests that the Complaint fails to sufficiently allege that any of his PII was shared with any third party through the Pixel because he "does nothing to allege that he, personally, would be identified in any supposed transmissions of his FID." Mem. at 19. MLB is wrong. Courts in this district (and across this country) have "uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023)[2]; *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023)

[2] Citing *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) ("[T]he bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" through the Facebook pixel alleged PII); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (collecting cases) ("A Facebook ID meets the broad definition of PII in this circuit."); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (finding Facebook ID was PII); *Lebakken v. WebMD, LLC*, 640 F.

("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII") (citing *Lucinda Jackson v. Fandom Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) (explaining that the ID can readily be used by the average person to access a consumer's Facebook page, which may contain substantial personal information); *Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 659 F. Supp. 3d 1006, 1021 (D. Minn. Mar. 7, 2023) (stating "most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions") (collecting cases)).

While MLB acknowledges these authorities, it argues that this Court should eschew them in favor of two district court decisions which diverge from the federal consensus: *Ghanaat*, 689 F. Supp. 3d at 714, and *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508-JMA-JMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023). The Court should decline to follow these cases because, in addition to being a minority position, they are factually distinguishable.

---

Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) ("[T]he disclosure of a Facebook ID, which can identify a specific person without any additional steps, does qualify as personally identifiable information."), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015); *In re Hulu Priv. Litig.*, No. 11 Civ. 03764 (LB), 2014 WL 1724344, at *13, *16 (N.D. Cal. Apr. 28, 2014) (denying summary judgment because it "could be a VPPA violation" that Hulu knew it was transmitting Facebook ID through c_user cookie, along with watch page and embedded video name); *cf. Robinson*, 152 F. Supp. 3d at 184 (distinguishing an anonymized Roku device serial number from a Facebook ID, which is "equivalent to a name—it stands in for a specific person, unlike a device identifier"); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (declining to resolve question definitively, but noting that "[a] Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 289 n.174 (3d Cir. 2016) (same, but noting that "even a numeric identifier might qualify as [PII]" in certain circumstances, and citing *In re Hulu*'s holding that a Facebook ID constitutes PII because, unlike "unique, anonymous IDs," it "identif[ies] the Hulu user's actual identity on Facebook").

Specifically, in *Ghanaat*, the court *agreed* "that a FID can constitute PII where it leads to a Facebook page that discloses personal and identifying information about the consumer," and only dismissed the VPPA claim because plaintiffs' allegations did "not allege their Facebook pages contain any personal information, *such as their names* and or email addresses." *Ghanaat*, 2023 WL 5738391, at *4 (emphasis added). *Solomon* followed suit. 2023 WL 6390055, at *2–3. But Plaintiff's Complaint alleges that an FID can be used by any ordinary person to "look up the user's Facebook profile *and name.*" Compl. ¶ 33 (emphasis added). Moreover, Plaintiff alleges that the Pixel grants any ordinary person the ability to access any digital subscribers' "corresponding Facebook profile," *id.* ¶ 5, and that this "undeniably *reveals their identity* and the specific video materials they required from Defendant's website," *id.* ¶ 42. The Court should conclude that these factual allegations are sufficient to plead MLB's disclosure of Plaintiff's PII.

### C. Plaintiff Sufficiently Alleges that MLB Disclosed Prerecorded Videos He Watched to Facebook.

While MLB is correct that the VPPA applies only to disclosures of prerecorded (not live) video content, its argument that Plaintiff "does not plausibly allege that he viewed any prerecorded videos on MLB.tv" is simply false. Mem. at 23. The very first page of the Complaint specifies that this case *only* concerns "Video Media," defined as "the computer filed containing the *prerecorded* video, its name or title, and its corresponding URL viewed." Compl. at 1 (emphasis added). Thus, every time the Complaint uses the term "Video Media," it is specifically alleging "prerecorded video," *not* live content. 22–23.

Although MLB acknowledges this definition, Mem. at 23, it fails to appreciate its significance. Contrary to MLB's argument, the Complaint alleges that Plaintiff "used his *MLB.tv* digital subscription to view Video Media"—i.e., prerecorded video content—"through the *MLB.tv* website and/or App while logged into his Facebook account. By doing so, Plaintiff's Personal

Viewing Information was disclosed to Facebook pursuant to the systematic process described herein." Compl. ¶ 13; *see also id.* ¶ 47 ("Plaintiff has had a Facebook account since before he signed up for MLBtv. From 2023 to the present, Plaintiff requested, obtained, and viewed Video Media via MLB.tv's website and App."). Further, in Count I, Plaintiff alleges that

> Defendant knowingly caused Personal Viewing Information, including FIDs, ***concerning Plaintiff*** and Class members to be disclosed to Facebook. This information constitutes personally identifiable information under 18 U.S.C. §2710(a)(3) because it identified each Plaintiff and Class member to Facebook as an individual who viewed MLB.tv ***Video Media***, including the specific video materials requested from the website.

*Id.* ¶ 61 (emphasis added). Thus, far from merely alleging that MLB provided Plaintiff with "access" to prerecorded video, Mem. at 23, the Complaint alleges that Plaintiff himself viewed MLB's prerecorded video content. This plain truth distinguishes this case from the few cited in MLB's Memorandum which failed to specifically plead this element.

For example, in *Solomon*, the plaintiff "never explicitly alleges that she actually accessed such 'prerecorded' video on Defendant's site." 2023 WL 6390055, at *5. Here, by contrast, Plaintiff explicitly alleges viewing Video Media, defined as prerecorded video content, on MLB's website. MLB's only other case, *Mendoza v. Caesars Entertainment, Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *4 (D.N.J. May 22, 2024), is also easily distinguishable because in that case, "the plaintiff failed to allege that the defendant's products—video games on a website—'include[d] any prerecorded content." Mem. at 24. Here, by contrast, the Complaint is replete with allegations that MLB provides digital subscribers like Plaintiff with "access to a variety of prerecorded Video Media on Defendant's digital platforms." Compl. ¶ 26; *see also id.* ¶ 27 ("Paid subscribers to *MLB.tv*, such as Plaintiff, are granted exclusive access to view prerecorded video and media content on Defendant's website and app without advertisements."); *id.* ¶ 12 (same); *id.* ¶ 14

("Defendant develops, owns, and operates the MLBtv.com website, which include a broad selection of prerecorded video content"); *id.* ¶ 21 (same).

To advance its dubious argument concerning VPPA's "prerecorded" requirement, MLB analogizes to cases interpreting the "prerecorded" element in the Telephone Consumer Protection Act ("TCPA") and case law holding that, in alleging a phone call "was prerecorded, he must provide some indicia to support that conclusion." Mem. at 24–25 (citing cases). As any person who has ever used the Internet knows, however, whether a video is live or prerecorded is readily apparent, as the Complaint suggests, and as MLB essentially admits. *See* Compl. ¶ 21 (noting that MLB's website "provides a wide range of professional baseball coverage through audio and *prerecorded video clips*, interviews, statistics, schedules and exclusive stories"); *see also* Mem. at 23 (stating MLB.tv's "primary function" is a "platform for streaming live baseball games"). Plaintiff's Complaint is expressly *not* about his viewing of live baseball games, but about his viewing of "prerecorded video clips." Compl. ¶ 21.

Moreover, even in the TCPA context, many courts have held the allegations that a message is prerecorded "is a factual allegation for purposes of the pleading standard, and not a bare legal conclusion," because "[w]hen one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message." *Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10–11 (N.D. Ga. June 23, 2016); *see also McCabe v. Caribbean Cruise Line, Inc.,* No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116, at *11–12 (E.D.N.Y. July 3, 2014) ("[A]llegations that the call he received contained a 'prerecorded message'… are sufficient")*;* *Quinan v. Jet Lending, LLC,* No. 4:21-CV-02296, 2022 U.S. Dist. LEXIS 42958, at *8–9 (S.D. Tex. Mar. 10, 2022) ("The Court concludes that Plaintiff's statement that the calls were

'prerecorded' is a factual allegation sufficient to state a claim"); *Hirsch v. Fortegra Fin. Corp.*, No. 3:17-cv-1215-J-39JBT, 2018 U.S. Dist. LEXIS 219724, at *11–12 (M.D. Fla. June 26, 2018) ("factual allegation [of pre-recorded voice] is sufficient to state a claim"). The same is true here. MLB's TCPA analogy is ill-fitting to the alleged facts and provides no basis for dismissal.

Finally, as Defendant's own cited authority holds, even if the Complaint does not specify whether Plaintiff watched live or pre-recorded videos (it does), this is not a basis to dismiss the entire Complaint, but rather a basis to dismiss "any aspects of the VPPA claim (Count I) that is premised upon the consumption of live content." *Louth v. NFL Enters. LLC,* No. 1:21-CV-00405-MSM-PAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022). Should the Court dismiss the Complaint on these grounds, however, Plaintiff respectfully requests leave to amend, as the Court did in cases cited by MLB. *See Walker v. Meta Platforms, Inc.*, No. 22-cv-024420JST, 2023 WL 3607282, at *5 (N.D. Cal. Mar. 3, 2023) (dismissing with leave to amend "to the extent that the claim is premised on prerecorded video that [plaintiff] allegedly accessed); *Stark v. Patreon, Inc.,* 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022) (same).

## CONCLUSION

For the reasons shown above, Plaintiff respectfully requests the Court deny the motion to strike the class allegations because MLB fails to meet its burden to prove in a clear and convincing manner that its contradictory and ambiguous Class Action Waiver absolutely prohibits class treatment of Plaintiff's claims. Further, Plaintiff respectfully requests the Court deny the motion to dismiss under Rules 12(b)(1) and 12(b)(6) because Plaintiff sufficiently alleges every element of a VPPA claim and injury resulting from MLB's violation of his privacy rights. If the Court grants any part of Defendant's Motion, Plaintiff respectfully requests leave to amend. *See Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006).

Dated: September 16, 2024

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
New York Bar No. 5195185
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, FL 33132

**EDELSBERG LAW, P.A.**

*/s/ Adam A. Schwartzbaum*
Adam A. Schwartzbaum, Esq.*
Florida Bar No. 93014
adam@edelsberglaw.com
Scott Edelsberg, Esq.*
Florida Bar No. 100537
scott@edelsberglaw.com
20900 NE 30th Avenue
Aventura, FL 33180

**Pro Hac Vice* to be filed

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on September 16, 2024, I caused a true and correct copy of the foregoing to be served on all counsel of record in this action via CM/ECF.

*/s/ Andrew J. Shamis*
Andrew J. Shamis