**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN HENRY, individually and on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.,<br><br>       Defendant. | Case No. 1:24-cv-01446-GHW-GWG<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     The Court should strike Henry's class allegations because he waived his right to bring class-action claims, except for settlement purposes. ....................... 3

      a.     Because the class-action waiver unambiguously bars Henry's class claim, the Court must enforce it without relying on extrinsic evidence. ......................................................................................... 3

      b.     Even if the Court considers extrinsic evidence, that evidence shows that the parties agreed to waive class procedures, except for settlement purposes. .................................................................... 7

      c.     Because any reading of the class-action waiver shows that Henry agreed not to bring his class claim, the Court should strike his class allegations. .................................................................................. 9

II.     The Court should dismiss Henry's complaint because he fails to state a claim and lacks standing. ................................................................................ 11

      a.     Henry fails to allege disclosures of *his* information. ................................ 11

      b.     Henry fails to allege that his Facebook profile contains "personally identifiable information." ......................................................... 13

      c.     Henry fails to plausibly allege viewing "prerecorded" video. ................... 15

CONCLUSION ..................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amusement Bus. Underwriters, a Div. of Bingham & Bingham, Inc. v. Am. Int'l Grp., Inc.*,
  66 N.Y.2d 878 (1985) .......................................................................................... 7, 9

*Beagle v. Amazon.com, Inc.*,
  2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ................................................... 12

*Beardslee v. Inflection Energy, LLC*,
  25 N.Y.3d 150 (2015) ......................................................................................... 3, 5

*Brad H. v. City of New York*,
  17 N.Y.3d 180 (2011) ......................................................................................... 3, 4

*Camilo v. Uber Techs., Inc.*,
  2018 WL 2464507 (S.D.N.Y. May 31, 2018) ......................................................... 4

*Carter v. Scripps Networks, LLC*,
  670 F. Supp. 3d 90 (S.D.N.Y. 2023) .................................................................... 13

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) ............................................................... 9, 11

*Collins v.Pearson Educ., Inc.*,
  -- F. Supp. 3d --, 2024 WL895316 (S.D.N.Y. Mar. 1, 2024) ...................... 10, 12, 13

*Donelson v. Ameriprise Fin. Servs., Inc.*,
  999 F.3d 1080 (8th Cir. 2021) ............................................................................ 11

*Electra v. 59 Murray Enters., Inc.*,
  987 F.3d 233 (2d Cir. 2021) ................................................................................. 5

*Emilio v. Sprint Spectrum L.P.*,
  68 F. Supp. 3d 509 (S.D.N.Y. 2014) ................................................................. 9, 10

*Faulkner v. Nat'l Geographic Soc'y*,
  452 F. Supp. 2d 369 (S.D.N.Y. 2006),
  *judgment entered,* 2006 WL 2992834 (S.D.N.Y. Oct. 20, 2006) .............................. 6

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) ............................................................. 13, 14

*Greenfield v. Philles Recs., Inc.*,
  98 N.Y.2d 562 (2002) ......................................................................................... 3, 4

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
  635 F. Supp. 3d 238 (S.D.N.Y. 2022) ................................................................. 10

*Heerde v. Learfield Commc'ns, LLC*,
  -- F.Supp. 3d --, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ............................... 14

*Hughes v. Nat'l Football League*,
  2024 WL 4063740 (S.D.N.Y. Sept. 5, 2024)......................................................... 15

*In re Painewebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ............................................................................... 6

*Kern v. Siemens Corp.*,
  393 F.3d 120 (2d Cir. 2004) ............................................................................... 5

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................................. 13

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ................................................................... 10

*Mendoza v. Caesars Ent., Inc.*,
  2024 WL 2316544 (D.N.J. May 22, 2024)............................................................ 15

*Mills v. Cap. One, N.A.*,
  2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015).................................................... 6, 7

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
  67 F.3d 435 (2d Cir. 1995) .......................................................................... 5, 6, 7

*New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*,
  809 N.Y.S.2d 70 (App. Div. 2006)....................................................................... 6

*Preiser v. Newkirk*,
  422 U.S. 395 (1975)........................................................................................... 11

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................ 9, 11

*Rothstein v. Auto Club S.*,
  2017 WL 11455316, at *5 (S.D.N.Y. Mar. 16, 2017),
  *R. & R. adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017)............................ 10

*Saliba v. Five Towns Coll.*,
  991 F. Supp. 2d 449 (E.D.N.Y. 2014) ................................................................. 12

*Solomon v. Flipps Media, Inc.*,
  2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ........................................... 13, 14, 15

*Staley v. Hotel 57 Servs., LLC*,
    680 F. Supp. 3d 440 (S.D.N.Y. 2023) ................................................................ 10

*Sullivan v. Study.com LLC*,
    2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) ...................................................... 10

*T.K. ex rel. Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......................................................... 7

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
    875 F.2d 1044 (2d Cir. 1989) ................................................................................ 9

*United States v. Stegemann*,
    701 F. App'x 35 (2d Cir. 2017) ....................................................................... 5, 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................................... 6

*Ward v. Nat'l Geographic Soc'y*,
    284 F. App'x 822 (2d Cir. 2008) ........................................................................... 6

**Statutes**

18 U.S.C. § 2710 ................................................................................................ 12, 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ..................................................................................... passim

Fed. R. Civ. P. 12(f) .................................................................................. 2, 3, 11, 16

Fed. R. Civ. P. 23 ............................................................................................. 5, 6, 9

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d
    ed.) ..................................................................................................................... 11

**INTRODUCTION**

As shown in MLB Advanced Media, L.P.'s ("MLBAM's") opening memorandum (ECF No. 27 ("Mem.")), Bryan Henry's class-action claim under the Video Privacy Protection Act ("VPPA") should be stricken because he agreed to a binding class-action waiver. And his individual claim should be dismissed because he fails to plead several key elements of a VPPA claim and to allege facts supporting that he himself was injured, as is required for Article III standing.

Henry fails to contest MLBAM's key showings as to the class-action waiver. He does not dispute that, according to his own allegations, he agreed to MLBAM's Terms of Use ("TOU") containing a clear and conspicuous waiver; that this waiver is valid and enforceable under New York law; and that it covers his VPPA claim. Instead, Henry argues that it is premature for the Court to decide whether the waiver applies here because it is ambiguous. But he agrees that under its plain terms, "[t]he TOU *waives* the parties' rights to litigate VPPA claims on a class basis while simultaneously *retaining* the parties' rights to participate in a class-wide settlement." (Opp'n at 11, ECF No. 29.) Rather, what Henry calls an ambiguity is in fact a supposed contradiction: he asserts that waiving class procedures except class-wide settlement is inconsistent with Rule 23. Henry offers no support for this position, and he is mistaken. Litigants regularly agree to class-wide settlements where class-action waivers apply. The TOU contains no contradiction, and the fact that Henry now dislikes the terms he agreed to does not make them ambiguous.

Because the TOU is unambiguous, Henry's next argument—that the Court should consider extrinsic evidence—also fails. Courts consider extrinsic evidence only where a contract term is ambiguous, which the class-action waiver here is not. So Henry's attempted analogy to what he calls "a five-act play" beyond the four corners of the parties' contract is beside the point. But even if the Court considers Henry's extrinsic evidence, that evidence supports MLBAM's position.

It shows that MLBAM revised its TOU in February 2024 to allow class-wide settlements but not any other class procedures to resolve VPPA and other non-arbitrable claims. And, even according to Henry's retelling, it shows that MLBAM then acted consistently with its TOU by mediating this case in July 2024. Henry's extrinsic evidence thus does not create any question of fact about the meaning of the class waiver. Any path the Court takes leads to the same conclusion: Henry's class allegations should be stricken under Rule 12(f).

Henry also fails to refute MLBAM's arguments for dismissing his individual VPPA claim under Rules 12(b)(6) and 12(b)(1). He does not cite a single case supporting that he pleaded a qualifying "disclosure" under the VPPA. To the contrary, his complaint's complete lack of factual allegations showing a disclosure of *his own* data means he not only fails to state a VPPA claim but also lacks Article III standing. Henry's complaint also lacks any allegations about *his own* Facebook profile, as his opposition concedes by not pointing to any. As multiple courts have held—including another since MLBAM's motion—this is a fatal pleading failure. It means Henry has not plausibly pleaded that his Facebook ID ("FID"), a numeric identifier tied to his Facebook profile, would identify him as required for an FID to be "personally identifiable information" under the VPPA. Finally, Henry's opposition ignores MLBAM's key point on the VPPA's "prerecorded" element: that his conclusory allegations about "prerecorded" video do not suffice because his complaint focuses on MLB.tv, a platform that primarily offers live content. As several courts have found, including one in this District earlier this month, a plaintiff focused on a primarily live platform must allege more about *his own* experience to plausibly allege that he viewed prerecorded video for VPPA purposes. Henry does not do so. For all these reasons, Henry's failure to plead supporting factual allegations means his VPPA claim fails under Rules 12(b)(6) and 12(b)(1).

**ARGUMENT**

I.    **The Court should strike Henry's class allegations because he waived his right to bring class-action claims, except for settlement purposes.**

The class-action waiver in MLBAM's TOU prohibits Henry from bringing his class claim. (*See* Mem. at 9–14.) Henry does not dispute that by registering for a digital subscription to MLB.tv, as he alleges he did, he agreed to a TOU containing a class-action waiver; that the waiver is valid and enforceable under New York law; and that it applies to his VPPA claim. (Opp'n at 8–15.) Still, Henry hopes to postpone a decision on the effect of the waiver by asserting that it is contradictory and thus ambiguous. (*Id.* at 11–12.) Henry is mistaken. The class-action waiver is unambiguous, so New York law bars the Court from considering extrinsic evidence to interpret it. Even if the Court considers Henry's proposed extrinsic evidence, nothing changes. That evidence reinforces what the text of the TOU makes clear: the parties waived class procedures, except for purposes of class-wide settlement. Thus, the Court should strike Henry's class allegations under Rule 12(f).

a.    **Because the class-action waiver unambiguously bars Henry's class claim, the Court must enforce it without relying on extrinsic evidence.**

The Court should apply the TOU's unambiguous class-action waiver. Under New York law, if a contract is "complete, clear and unambiguous on its face," then "the plain meaning of its terms" controls. *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569–70 (2002). "Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide." *Id.* "Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation." *Brad H. v. City of New York*, 17 N.Y.3d 180, 186 (2011). But contradictory terms in a contract do not necessarily create ambiguity. For example, "clauses similar to the phrase 'notwithstanding any other provision' trump conflicting contract terms." *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015) (cleaned up).

3

The class-action waiver is unambiguous because it is susceptible to only one reasonable interpretation. *See Brad H.*, 17 N.Y.3d at 186. That provision, titled "**Class Action Waiver**," reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(MLBAM TOU § 11.) There is no ambiguity in this provision, whether read clause-by-clause or as a whole. The first sentence requires the parties to resolve disputes on an individual basis, not in a class action. The second waives both parties' right to bring or participate in such an action. The third carves out class-wide settlement from the waiver. The meaning of each clause is clear, and when read in combination, the three clauses explain the scope of the waiver, which covers all class procedures except class-wide settlement. Because the class-action waiver is unambiguous, the Court must enforce "the plain meaning of its terms" as written. *See Greenfield*, 98 N.Y.2d at 569–70; *see also, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (striking class allegations due to valid, enforceable class-action waiver).

Henry cannot dispute this reading of the class-action waiver. Indeed, he agrees that "[t]he TOU *waives* the parties' rights to litigate VPPA claims on a class basis while simultaneously *retaining* the parties' rights to participate in a class-wide settlement." (Opp'n at 11 (emphasis in original).) Because Henry cannot attack the clarity of the text, he instead argues that the waiver is "inherently contradictory" and therefore ambiguous "because a 'class-wide settlement' may only

result from a class action complaint brought under Federal Rule of Civil Procedure 23, yet the TOU purportedly bars any MLB subscriber from ever pleading such a case and waives both parties' rights to participate in a class action." (*Id.* at 11–12 (footnote omitted).) Calling a contract contradictory does not make it so, however, and Henry fails to support his argument.[1] His only citation, in a footnote, reads: "Rule 23 offers the exclusive route to forming a class action." (*Id.* at 12 n.1 (quoting *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004)).) But that proposition does not prove that parties cannot waive certain Rule 23 procedures while retaining others, and Henry never explains why he thinks it does. (*See id.* at 11–12.) The Court should deem Henry's "perfunctory, undeveloped argument" about the contradictory nature of these provisions to be "forfeited." *United States v. Stegemann*, 701 F. App'x 35, 38 (2d Cir. 2017) (nonprecedential).

Forfeiture aside, binding precedent forecloses Henry's argument. "[U]nder New York law, clauses similar to the phrase 'notwithstanding any other provision' trump conflicting contract terms" without creating ambiguity. *Beardslee*, 25 N.Y.3d at 158 (cleaned up). Thus, when applying New York law to a contract with clear but seemingly conflicting terms, the Second Circuit held that there was no ambiguity because "[w]hatever tension otherwise would [have] exist[ed] among the three contract provisions discussed above [was] relieved by the 'notwithstanding' clause." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995). Here, the third sentence of the class-action waiver is a "notwithstanding" clause that excludes class-wide settlement from the waiver without creating ambiguity. (*See* MLBAM TOU § 11.)

---

[1] Henry argues that an ambiguous contract is construed against its drafter, but this principle applies only after a contract already has been found ambiguous; it is not a reason for finding a contract ambiguous. Henry himself concedes as much, noting that this principle applies only "where more than one reasonable interpretation exists." (Opp'n at 14 (citing *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 245 (2d Cir. 2021)).)

The cases Henry cites do not suggest otherwise. (*See* Opp'n at 11–12.) These cases concern whether the meaning of a term itself is ambiguous, not whether tension between unambiguous terms creates ambiguity. In *Faulkner v. National Geographic Society*, the court found ambiguity where contracts did not specify what constituted a further use of pictures. 452 F. Supp. 3d 369, 376–77 (S.D.N.Y. 2006), *judgment entered,* No. 97 CIV 09361 LAK, 2006 WL 2992834 (S.D.N.Y. Oct. 20, 2006), and *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008). And in *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, the court found no ambiguity in language specifying the standard the defendant's products had to meet. 809 N.Y.S.2d 70, 73–74 (App. Div. 2006). Neither case involved a "notwithstanding" clause or other language similar to the contract here. The Court should hold that the "notwithstanding" clause eliminates any tension between terms and renders the class-action waiver unambiguous. *See Morse/Diesel*, 67 F.3d at 439–40 (reversing the decision to submit a contract-interpretation question to the jury when a "notwithstanding" clause made the contract unambiguous).

The plain meaning of the class-action waiver is also consistent with Rule 23 because parties may agree to a class-wide settlement despite the existence of a class-action waiver. Retaining class-wide settlement accords with the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). Indeed, courts regularly cite class-action waivers as a reason to approve class-wide settlements. If a class-action waiver applies, a class-wide settlement often offers good value relative to the risks and costs of individual litigation or arbitration. *See* Fed. R. Civ. P. 23(e)(2)(C); *see, e.g.*, *Mills v. Cap. One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) ("[A] substantial number of class members signed releases of their state law claims and class/collective action

waivers. Settlement eliminates these uncertainties and the risks resulting from the releases and waivers." (citation omitted)); *T.K. ex rel. Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at \*13 (N.D. Ill. Mar. 25, 2022) ("The arbitration and class action waiver agreement entered into by TikTok users is perhaps the biggest obstacle to recovery; if Defendants were to enforce this agreement, it would bring the litigation here to a grinding halt, with Plaintiffs forced to pursue their claims individually and through arbitration."). The class-action waiver here has the same substantive effect as the *Mills* and *T.K.* settlements: the parties can settle claims on a class-wide basis, but otherwise claims must proceed individually. Henry does not explain why the parties cannot agree in the TOU to do what litigants routinely do in court.

Both parties agree that the text of the class-action waiver permits Henry to bring his VPPA claim individually, but not as a class action except for settlement purposes. (Opp'n at 11.) The Court should enforce the plain meaning of this provision without considering extrinsic evidence because the "notwithstanding" clause does not make it ambiguous, *see Morse/Diesel*, 67 F.3d at 439, and far from being contradictory, its substance tracks routine class-action practice, *see, e.g.*, *Mills*, 2015 WL 5730008, at \*5, \*18–19.

> **b.    Even if the Court considers extrinsic evidence, that evidence shows that the parties agreed to waive class procedures, except for settlement purposes.**

Even if the Court holds that the class-action waiver is ambiguous, it can still interpret that provision as a matter of law. Contractual ambiguity presents a question of fact only "when a term or clause is ambiguous ***and*** the determination of the parties' intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence"—otherwise, it remains a question of law. *Amusement Bus. Underwriters, a Div. of Bingham & Bingham, Inc. v. Am. Int'l Grp., Inc.*, 66 N.Y.2d 878, 880–81 (1985) (emphasis added) (citations omitted). The extrinsic evidence here reinforces rather than contradicts the plain meaning of the contract.

Henry's extrinsic evidence shows that the parties agreed not to engage in class procedures, except for purposes of class-wide settlement. He first focuses on purported inferences about MLBAM's intent based on its decision to change its TOU in February 2024 to: (a) exempt VPPA claims from its arbitration clause; and (b) exempt class-wide settlements from its continuing bar on class-wide adjudication. (Opp'n at 13.) He suggests that this TOU change shows that the "parties' intent is to resolve their VPPA claims in federal court on a class wide basis." (*Id.*) But according to Henry, the parties' intent is to use a class-wide settlement, not any other class procedure, to achieve that resolution: "MLB's intent is clear: . . . MLB hopes to extract a cheap class deal that resolves all its VPPA liability." (*Id.*) Henry criticizes MLBAM for supposedly "creat[ing] a race to the bottom" among VPPA claimants to achieve this "class deal," but he does not argue that the class-action waiver is unconscionable or otherwise unenforceable. (*Id.*) Henry has therefore forfeited any argument that MLBAM's motives are relevant to the interpretation of the TOU, *see Stegemann*, 701 F. App'x at 38, and he has not shown an improper motive in any event. Rather, Henry merely presents evidence that MLBAM adopted, and Henry agreed to, new TOU terms allowing class-wide settlements but not any other class procedures to resolve VPPA claims.

The other piece of extrinsic evidence on which Henry focuses—the parties' failed mediation in July 2024—is likewise consistent with their agreement. He acknowledges as much in his opposition. He states that "MLB's new TOU reserves both its subscribers' and MLB's right to settle all the VPPA claims on a class-wide basis." (Opp'n at 13.) But all Henry's evidence reveals is that MLBAM attempted to resolve this lawsuit, which was brought by a named plaintiff who proposes to represent a class. The class-action waiver permits exactly that. *See supra* section I.a. Henry cites no evidence suggesting that the parties intended to use other class procedures.

Because no credibility determination or inference from the extrinsic evidence could change the meaning of the class-action waiver, even if the Court determines that it is ambiguous, the Court should interpret the contract as a question of law. *See Amusement Bus. Underwriters*, 66 N.Y.2d at 880–81. At best, the extrinsic evidence Henry offers could only confirm that the parties' agreement allowed class-wide settlement but no other class procedures.

Nor should the Court construe the class-action waiver against the drafter, MLBAM. As Henry acknowledges (Opp'n at 14–15), that principle applies only when a term is ambiguous *and* "other guides to interpretation have been exhausted and the court concludes that there remain two reasonable interpretations of the contract." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1050 (2d Cir. 1989) (citations omitted) (applying New York law). Here, considering the extrinsic evidence resolves any ambiguity in MLBAM's favor because the only reasonable reading is that the TOU preserves class-wide settlement while waiving other class procedures.

       c.      **Because any reading of the class-action waiver shows that Henry agreed not to bring his class claim, the Court should strike his class allegations.**

The Court should grant MLBAM's motion to strike because the class-action waiver bars Henry from bringing his VPPA claim as a class action. Rule 23 instructs courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 23(c)(1)(A)). A motion to strike class allegations that "addresses issues separate and apart from the issues that will be decided on a class certification motion" is not premature. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)); (*see also* Mem. at 13 (citing cases granting motions to strike class allegations after finding class waivers valid and

enforceable)). Even Henry agrees that "where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis," the Court should strike class allegations. (Opp'n at 9 (quoting *Collins v. Pearson Educ., Inc.*, -- F. Supp. 3d --, No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024)).)

The class-action waiver here unambiguously bars Henry's class claim, and his proposed extrinsic evidence does not change that provision's meaning. *See supra* sections I.a–b. The class-action waiver thus "clearly precludes the possibility that [Henry's] claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Contrary to Henry's assertion, there are no "factual and legal disputes to be decided at a later point in the litigation" (Opp'n at 9 (quoting *Rothstein v. Auto Club S.*, No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316, at *5 (S.D.N.Y. Mar. 16, 2017), *R. & R. adopted*, No. 15-CV-9391 (LAK), 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017))), and the cases he cites are inapt. In *Staley v. Hotel 57 Services, LLC*, the court deferred interpreting the class-action waiver until after discovery, 680 F. Supp. 3d 440, 445–48 (S.D.N.Y. 2023), which is unnecessary here. *See supra* section I.b. And in other cases, the plaintiff was not subject to a class-action waiver or that point was disputed, and the courts denied motions to strike based on the possibility that **other** class members' waivers might preclude class certification. *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 693–97 (S.D.N.Y. 2015); *Rothstein*, 2017 WL 11455316, at *4–5; *Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966, at *6–7 (S.D.N.Y. Mar. 21, 2019).[2] Unlike in these cases, it is undisputed that Henry agreed to a class-action waiver, and MLBAM's motion raises an issue "separate and apart" from class certification because MLBAM's ability to

---

[2] *Emilio* was similar but involved a twist: an arbitrator had ruled that the plaintiff could bring his class claim in court, so allowing the defendant to raise other class members' arbitration agreements as a defense "would render the Arbitrator's judgment a nullity." 68 F. Supp. 3d at 519.

enforce the waiver against Henry is unrelated to whether a different plaintiff could become a class representative. *See Reynolds*, 136 F. Supp. 3d at 512 (quoting *Chen–Oster,* 877 F. Supp. 2d at 117).

Henry waived his right to bring a class action, except for purposes of class-wide settlement. No legal or factual disputes warrant waiting to enforce the waiver, and failing to strike the class allegations now "would prejudice [MLBAM] by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed.)). The Court should strike Henry's class allegations under Rule 12(f).

## II.    The Court should dismiss Henry's complaint because he fails to state a claim and lacks standing.

### a.    Henry fails to allege disclosures of *his* information.

Henry's complaint falls short of Rule 12(b)(6) and Rule 12(b)(1) standards because it does not include any factual allegations supporting that his information in particular was disclosed. (*See* Mem. at 16–18.) His opposition does not point to a single factual allegation of this nature. Instead, he falls back on the same conclusory allegations that fail to state a claim under Rule 12(b)(6), and he cites distinguishable case law that does not support standing under Rule 12(b)(1).

*First*, Henry attempts to cast his conclusory allegations as the factual ones required to satisfy pleading standards under Rule 12(b)(6). He begins by pointing to general allegations about how the Facebook pixel—the website tool he claims is responsible for the disclosure of users' data—supposedly functions. (Opp'n at 18–19 (citing Compl. ¶¶ 29–42, 47, ECF No. 1).) But as MLBAM has explained, these allegations amount to a request for an advisory opinion based "upon a hypothetical state of facts" about the Facebook pixel, which the Court cannot provide. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation marks and citations omitted); (*see also* Mem. at 17–

18). He then points to his cursory allegation that MLBAM caused information "concerning Plaintiff and Class members to be disclosed." But this allegation merely echoes the statute. *Compare* (Compl. ¶ 61), *with* 18 U.S.C. § 2710(b)(1) (referring to disclosures of "information concerning any consumer"). Mere recitations of "the elements of a claim" like this one do not suffice under Rule 12(b)(6). *See Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014).

Indeed, Henry does not point to a single case finding a complaint with similar allegations sufficiently pleaded a disclosure under the VPPA because he cannot. (*See* Opp'n at 18–19 (citing no cases).) To the contrary, since MLBAM filed its motion, the court in *Beagle v. Amazon.com, Inc.* adopted an argument similar to MLBAM's here. It found that to state a VPPA claim, a complaint must contain factual allegations showing "that a disclosure has affirmatively taken place," not just allegations consistent with "the mere *possibility* that information could be disclosed." *Beagle v. Amazon.com, Inc.*, No. C24-03136JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024). The *Beagle* court found that the complaint did not "plausibly suggest" that the defendant had disclosed the plaintiffs' data because it lacked factual allegations connecting the plaintiffs' theory to an actual disclosure. *Id.* Like in *Beagle*, Henry lacks factual allegations showing that MLBAM affirmatively disclosed *his* data. All Henry has shown is the "mere *possibility*" of a disclosure based on how he says the Facebook pixel functions, which is insufficient. *Id.*; (*see also* Mem. at 16–18).

***Second***, Henry cites several cases addressing standing arguments under Rule 12(b)(1) , but none of them dealt with a complaint devoid of any factual allegations whatsoever related to disclosure like Henry's. In *Collins*, for example, the defendant argued that the plaintiff lacked standing because he failed to allege details like "the dates he requested or obtained" videos.

2024 WL 895316, at *3. The court found "these details" not necessary "to allege that [the plaintiff] suffered an injury in fact." *Id.* By contrast, Henry's complaint lacks not just details but ***any*** factual allegations whatsoever supporting a disclosure of his individual information. The courts in *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023), and *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95, 100 (S.D.N.Y. 2023), likewise addressed arguments about failures to plead details, and they found the complaints insufficient under Rule 12(b)(6) even while upholding standing under Rule 12(b)(1). Whether for lack of standing or failure to state a claim, the absence of any factual allegations showing that a disclosure occurred means Henry cannot sustain his VPPA claim.

      **b.**    **Henry fails to allege that his Facebook profile contains "personally identifiable information."**

Henry's VPPA claim also fails because he has not credibly alleged that a disclosure of his FID would disclose his "personally identifiable information" ("PII"). He does not plead that his Facebook profile contains his name or any other information identifying him, without which he cannot state a VPPA claim. (*See* Mem. at 19–21.)

Henry lists case law contrary to MLBAM's position in his opposition (*see* Opp'n at 19–21), but MLBAM has already addressed this authority (*see* Mem. at 20–21). MLBAM has explained why this Court should instead follow the better-reasoned decisions finding that a VPPA plaintiff must plead facts supporting that they, personally, would be identified by any supposed transmissions of their FIDs to state a claim. (*See id.* (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508-JMA-JMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023)).)

Henry's own allegations show the inaccuracy of the distinctions he attempts to draw between his case and *Ghanaat* and *Solomon*. Henry says his general allegation that an FID can,

hypothetically, be used to "look up the user's Facebook profile ***and name***" suffices under those cases. (Opp'n at 21.) But the point made by the *Ghanaat* and *Solomon* courts is that VPPA plaintiffs must include allegations about ***their own*** particular Facebook profiles to state plausible claims. *See Ghanaat*, 689 F. Supp. 3d at 720 (dismissing the plaintiffs' VPPA claim because they did "not allege their Facebook pages contain any personal information, ***such as their names*** or email addresses" (emphasis added)); *Solomon*, 2023 WL 6390055, at *3 (dismissing a VPPA claim because the plaintiff "needed to allege that her public Facebook profile page contained identifying information about her"). And Henry's complaint never alleges that his Facebook profile contains his name or any other PII that could be used to identify him. (*See* Compl. ¶¶ 5, 33, 42 (describing how FIDs work).) So just like the VPPA claims in *Ghanaat* and *Solomon*, Henry's VPPA claim should be dismissed.

Indeed, another court recently joined *Ghanaat* and *Solomon* in finding that a plaintiff must do more than simply allege that his FID was disclosed. In *Heerde v. Learfield Communications, LLC*, the court dismissed the plaintiffs' VPPA claim because they "d[id] not identify what information on their Facebook pages, if any, was viewable and could be used to identify them." -- F. Supp. 3d --, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024). *Heerde* shows that the reasoning from *Ghanaat* and *Solomon* is gaining traction. And for good reason. The VPPA prohibits disclosures of information that "identifies a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). So if an FID leads to a Facebook profile that does not identify the plaintiff—such as by using a fake name—that disclosure cannot violate the VPPA. Here, because it is not clear that sharing Henry's FID would reveal his PII, his claim should be dismissed.

### c.      Henry fails to plausibly allege viewing "prerecorded" video.

Henry's complaint fails for the third reason that he does not plausibly allege that he watched prerecorded content on MLB.tv, and the VPPA protects against disclosures of only "prerecorded"—not live—content. (*See* Mem. 22–25.) Henry does not dispute that his allegations focus on videos allegedly watched on MLB.tv and that MLB.tv's main function is providing live-streamed baseball games. (*See* Opp'n at 21–24.) He nevertheless argues that his generic use of the word "prerecorded" a few times in his complaint suffices. (*See id.*) It does not.

Henry's opposition fails to address MLBAM's core point: that his conclusory allegations about viewing prerecorded content are implausible because his complaint focuses on a platform primarily used for live streaming. In this respect, this case is just like the *Solomon* case on which MLBAM relied in its opening memorandum. Because the challenged platform in that case primarily offered "live" content, the court found that the plaintiff needed to plead facts supporting that she watched prerecorded content to plausibly state a claim. *Solomon*, 2023 WL 6390055, at *5; *see also Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *4 (D.N.J. May 22, 2024) (applying the same logic to a platform that primarily offered video games). Since MLBAM filed its motion, another court in this District has adopted similar reasoning, dismissing a VPPA claim where the plaintiff lacked factual allegations to show that he watched "prerecorded video content" on the defendant's sports-streaming platform. *Hughes v. Nat'l Football League*, No. 1:22-CV-10743 (JLR), 2024 WL 4063740, at *5 (S.D.N.Y. Sept. 5, 2024).

Henry's allegations warrant the same outcome. Although Henry asserts that MLB.tv subscribers generally receive "access to" prerecorded video content (*see* Opp'n at 22), he provides no factual allegations supporting that he himself accessed any prerecorded content.

Henry likewise fails to meaningfully distinguish the Telephone Consumer Protection Act ("TCPA") cases that MLBAM relied on by analogy in its opening memorandum, which found

factual allegations necessary to plausibly plead the "prerecorded" element of that statute. (*See* Mem. at 24–25.) Henry attempts to distinguish these TCPA cases by saying that, unlike in the TCPA context, "whether a video is live or prerecorded" on MLB.tv "is readily apparent." (Opp'n at 23.) But that purported distinction fails to address whether Henry has ***plausibly alleged*** watching prerecorded, rather than live, video content on a streaming service that primarily offers live video content. Henry has not done so, so his complaint should be dismissed. (*See* Mem. at 22–25 (collecting VPPA and TCPA cases dismissing claims for failure to allege "prerecorded" elements of both statutes).)

## CONCLUSION

Based on a binding, unambiguous class-action waiver in a TOU that Henry concedes applies to him, the Court should strike Henry's class allegations under Rule 12(f). The Court should also dismiss Henry's complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1).

Dated: September 26, 2024          Respectfully submitted,

By: *S/ Alan E. Littmann*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice* pending)
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com

Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 26, 2024, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann