**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BRYAN HENRY, and JAMES CLIFFORD, *individually and on behalf of himself and all others similarly situated*,

Plaintiff,

v.

MAJOR LEAGUE BASEBALL
ADVANCED MEDIA, L.P.,

Defendant.

Case No. 1:24-cv-01446-GHW-GWG

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.'S MOTION TO STRIKE AND DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1) AND SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………..…………ii

TABLE OF AUTHORITIES…………………………………………………………….……iii

INTRODUCTION………………………………………………………………..…...……….1

STATEMENT OF THE FACTS………………………………………………….……...…6

ARGUMENT………………………………………………………...……..……...……………8

    I.    THE COURT SHOULD DENY THE MOTION TO STRIKE BECAUSE MLB'S TOU MAY BE REASONABLY INTERPRETED TO ALLOW CLASS TREATMENT OF PLAINTIFFS' VPPA CLAIMS……………………....…….….………………………8

        A.  The Class Action Waiver Contains Contradictory Terms That Create Ambiguity ……………………………..…………….…………….……...10

        B.  Extrinsic Evidence Will Prove that MLB's Intent is to Resolve the VPPA Claims on a Class-Wide Basis…..……………………………..…….….…….13

        C.  Even if the Parties' Intent Cannot Be Clearly Ascertained through Extrinsic Evidence, the Court Would Likely Resolve Ambiguity in the TOU Against the Drafter, MLB, and in Favor of Plaintiffs' Class Claims…………………………………………………………….……15

    II.    THE COURT SHOULD FIND THAT MLB'S CLASS ACTION WAIVER IS UNCONSCIONABLE AND UNENFORCEABLE…………………………………16

        A.  The Class Action Waiver is Procedurally Unconscionable………………17

        B.  The Class Action Waiver is Substantively Unconscionable…...………...18

   III.    PLAINTIFFS SUFFICIENTLY ALLEGE INJURY FROM MLB'S IMPROPER DISCLOSURES OF THEIR PERSONAL VIEWING INFORMATION…………...19

   IV.    PLAINTIFFS' VPPA CLAIMS ARE SUFFICIENTLY PLEADED..…………...…22

        A.  Plaintiffs Sufficiently Allege MLB Disclosed Their Personal Viewing Information………..…………………….………………………..…22

        B.  Plaintiffs Sufficiently Allege MLB Disclosed Their PII……………………23

        C.  Plaintiff Clifford Adequately Alleges he is a Consumer Under the VPPA..…24

CONCLUSION……………………………………………..……………………………....25

CERTIFICATE OF SERVICE…………………………..………………..…………....26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ........................................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 22

*Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015).............. 20, 21

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................. 8, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................ 22

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) .................................. 17, 19

*Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 361 N.E.2d 999 (N.Y. 1977).......... 14

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)..................................................... 19

*Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90 (S.D.N.Y. 2023) ..................................... 20

*Chen–Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012).............................. 9

*Collins v. Pearson Educ., Inc.*, No. 23 CIV. 2219 (PA), 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ...................................................................................................................................... passim

*Doe #1 v. College Bd.*, 440 F. Supp. 3d 349 (S.D.N.Y. 2020) .................................................... 18

*Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324 (W.D.N.Y. 2017)................................................ 16, 19

*Electra v. 59 Murray Enters.*, 987 F.3d 233 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 563 (2021). 16

*Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509 (S.D.N.Y. 2014).......................................... 9

*Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369 (S.D.N.Y. 2006).......................... 13, 14

*Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557 (2d Cir. 2011)...........................................11

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................... 21, 23, 24

*Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (1988) .............................................. 16

*Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............................ 23

*Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166 (N.Y. 2002)................................................11

*Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238 (S.D.N.Y. 2022)...... 9

*Heerde v. Learfield Communications, LLC.*, -- F. Supp. 3d --, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024) ........................................................................ 24

*Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791 (S.D.N.Y. 2020) ......................11

*Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232 (W.D.N.Y. 2014) ..................................... 17

*Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237 (D. Mass. 2015) ................ 18

*In re Celsius Network LLC*, 649 B.R. 87 (Bankr. S.D.N.Y. 2023)................................................ 14

*In re LIBOR-Based Fin'l Instruments Antitrust Litig.*, 327 F.R.D. 483 (S.D.N.Y. 2018)............ 12

iii

*Kerin v. U.S. Postal Serv.*, 116 F.3d 998 (2d Cir. 1997)................................................................ 16

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012)............................................................. 22

*Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010) ........................11

*Lucinda Jackson v. Fandom Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) .......................................................................................................................................... 23

*Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992).............................................................................. 21

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................ 20

*Matter of Friedman*, 407 N.Y.S.2d 999 (N.Y. App. Div. 2d Dept. 1978) ..................................... 17

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015) .......................................... 10

*Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395 (S.D.N.Y. 2012)............................................... 9

*Mills v. Capital One, N.A.*, No. 14 CIV 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .................................................................................................................................................. 13

*Morgan Stanley Grp. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) .............................. 15

*New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 28 A.D.3d 175 (N.Y. App. Div. 2006) .................................................................................................................................11

*Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274 (2d Cir. 2006)............................................. 25

*Prof. Staff Cong.-City U. of New York v. New York State Pub. Empl. Rel. Bd.*, 857 N.E.2d 1108 (N.Y. 2006)................................................................................................................................ 13

*Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D.N.Y. 2015) .............................................. 9

*Rothstein v. Auto Club S.*, No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316 (S.D.N.Y. Mar. 16, 2017), *R. & R. adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017) ............................... 9

*Salazar v. Nationall Basketball Association*, 118 F.4th 533 (2d Cir. 2024)............................ 5, 25

*Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992)............................................. 14

*Smith v. Trinity Broadcasting of Texas, Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024)......................................................................................................... 24

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107 (2d Cir. 2006) ................. 14

*Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440 (S.D.N.Y. 2023) .................................. 10, 16

*State v. Home Indem. Co.,* 486 N.E.2d 827 (N.Y. 1985).........................................................11, 15

*State v. Wolowitz*, 468 N.Y.S.2d 131 (N.Y. App. Div. 1983)........................................................ 17

*Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) .................................................................................................................................................. 10

*Tennille v. W. Union Co.*, 785 F.3d 422 (10th Cir. 2015) ............................................................. 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)...................................................................... 20

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044 (2d Cir. 1989) ................................ 16

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................................... 19

*White v. Continental Cas. Co.*, 878 N.E.2d 1019 (N.Y. 2007)......................................................11

*Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) ...................................................................................................................................... 13

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 .......................................................................... 1

**Other Authorities**

134 Cong. Rec. S5399 (May 10, 1988) ......................................................................................... 6

S. Rep. No. 100-599......................................................................................................................... 6

**Rules**

Federal Rules of Civil Procedure 12(b)(1)..................................................................................... 1

Federal Rules of Civil Procedure 12(b)(6)..................................................................................... 1

Federal Rules of Civil Procedure 12(f).......................................................................................... 1

**Treatises**

Dan B. Dobbs, 2 *Law of Remedies* 706 (2d ed.1993) .................................................................. 17

Plaintiffs Bryan Henry and James Clifford ("Plaintiffs") respond in opposition to Defendant Major League Baseball Advanced Media, L.P.'s ("MLB" or "Defendant") motion to dismiss to strike and dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(f), 12(b)(6), and 12(b)(1) [ECF No. 41] ("Mot.") and memorandum [ECF No. 42] ("Mem.").

## INTRODUCTION

This is a consumer digital privacy class action brought by Plaintiffs against MLB for violating the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), through use of the Facebook Pixel tracking tool on its video streaming service, *MLB.tv*, and its website, *MLB.com*. ECF No. 40 ("Compl.") at 1. Specifically, without obtaining consent, MLB knowingly disclosed to Meta Platforms, Inc. ("Facebook") data containing its digital subscribers' (i) personally identifiable information ("PII") or Facebook ID ("FID") and (ii) the computer file containing the prerecorded video, its name or title, and its corresponding URL viewed ("Video Media") (collectively, "Personal Viewing Information").

The Pixel is a code MLB installed on its *MLB*.com and MLB.*tv* websites (the "MLB Websites") that (a) tracks when digital subscribers enter the MLB Websites or Apps and view Video Media and (b) discloses to Facebook the digital subscribers' viewed Video Media, and most notably, the digital subscribers' FID. This occurs even when the digital subscriber has not shared (nor consented to share) such information, in violation of the VPPA.

Mass litigation against MLB—particularly for its use of the Facebook Pixel to transmit Personal Viewing Information—has proceeded like a five-act play. Although details of MLB's play are outside the four corners of the Complaint, the Court should consider this evidence because MLB's new Terms of Use Agreement ("TOU") includes an internally contradictory Class Action Waiver that both waives the parties' rights to "bring or participate" in any class action for VPPA

1

claims yet purportedly retains the parties' right to "participate in a class-wide settlement." The Class Action Waiver is ambiguous because parties cannot participate in a class-wide settlement without bringing or participating in a class action. Where a contract contains contradictory terms that create ambiguity, New York law requires this Court to consider extrinsic evidence to determine its intent. Extrinsic evidence submitted with this opposition demonstrates that the intent of MLB's consumer adhesion contract is to resolve all VPPA claims in federal court on a class-wide basis and, therefore, the new TOU may be reasonably interpreted to permit class claims to proceed. For this reason, it would be premature for this Court to strike the class allegations.

Act I began with a class action lawsuit brought against MLB in October 2022 for its alleged violations of the VPPA: *Hayes v. Major League Baseball Advance Media, L.P.*, No. 1:22-CV-05822 (N.D. Ill.). In January 2023, MLB moved to dismiss in favor of arbitration, arguing that its TOU required mandatory arbitration of VPPA claims. *See id.* at ECF No. 21 at 6–10. Shortly after MLB sought to compel arbitration, Hayes voluntarily dismissed the lawsuit. *Id.* at ECF Nos. 24–25.

The TOU in effect when *Hayes* was dismissed are the same as those operative when Plaintiffs signed up for the MLB Websites in 2021 and 2023, respectively. Section 11 of the prior TOU stated that "any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties … shall be settled by binding arbitration."[1] The terms further provided that "[a]ny and all claims shall be arbitrated on an individual basis only" and that "the arbitrator shall have no authority to arbitrator any Claim as a class action[.]"[2] In other words, the prior arbitration agreement subjected all claims to arbitration on an individual basis, as MLB argued in *Hayes*.

---

[1] *See* MLB.com Terms of Use Agreement, last updated February 4, 2020, *available at* https://web.archive.org/web/20240129184512/https://www.mlb.com/official-information/terms-of-use#section-11.
[2] *Id.*

Act II began with a wave of mass arbitrations. After the *Hayes* dismissal, thousands of MLB digital subscribers initiated arbitration with MLB over VPPA claims. *See* ECF No. 29-1, Declaration of Adam A. Schwartzbaum ("Schwartzbaum Decl.") ¶¶ 4–5. For example, in September 2023, Plaintiffs' Counsel transmitted correspondence to MLB stating they represented hundreds of individuals who sought to arbitrate claims concerning alleged violations of the VPPA. *Id.* In response, MLB agreed to a January 2024 mediation which failed. *Id.* ¶ 6.

Act III opened with a dramatic twist. On February 6, 2024, shortly after mediation, MLB launched a significant update to its TOU.[3] The new TOU only compels arbitration of a "Dispute," which is defined to *exclude*

> any dispute or claim related to trademark or copyright infringement or any dispute or claim related to the alleged violation of your privacy rights or interests whether based in contract, tort, statute, fraud, misrepresentation, common law, rule, regulation, or any other legal theory, including but not limited to: (i) ***claims under the Video Privacy Protection Act*** and corresponding state video privacy laws ….[4]

Thus, while the prior TOU mandated arbitration of all disputes, "claims under the [VPPA]" are the first type of dispute that is specifically *not* arbitrable under the new TOU. *Id.*

The new TOU also contains a new section entitled "Class Action Waiver" with patently contradictory terms. On the one hand, the Class Action Waiver requires all VPPA claim to be conducted "ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS … ACTION," and waives both MLB.com subscribers' *and* MLB's "RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW." *Id.* On the other hand, "NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE

---

[3] *See* MLB.com Terms of Use Agreement, last updated February 6, 2024, *available at* https://www.mlb.com/official-information/terms-of-use#section-11 (emphasis added).
[4] *Id.*

SETTLEMENT." The new TOU does not explain how MLB and its digital subscribers may participate in a class-wide settlement concerning VPPA claims when *both* parties agreed to only litigate such claims on an individual basis and to waive their rights to bring or participate in a class action. It also does not explain how any consumer could initiate a procedure to engage in a class-wide settlement absent filing a class action complaint.

Because MLB's new TOU carves VPPA claims out from arbitration and allows the parties to "participate in a class-wide settlement," Plaintiffs' Counsel interpreted the new TOU to mean that MLB intends to resolve its VPPA claims on a class-wide basis. Schwartzbaum Decl. ¶ 7. Thus, on February 26, 2024—just 20 days after MLB updated its TOU—Act IV opened with Plaintiff Henry instituting this class action lawsuit. *Id.*; *see also* ECF No. 1. On April 22, 2024, MLB submitted a pre-motion letter to the Court expressing its intent to move to strike Plaintiff's class allegations and dismiss the complaint. *See* ECF No. 20 at 1. The Court waived the pre-motion conference requirements and ordered MLB's motion to be filed on May 3, 2024. *Id.* Following that order, the parties conferred and agreed to mediate "Plaintiff's *and the purported Class's claims*." *Id.* at 1 (emphasis added). To aid mediation, the Court granted the parties' joint request to stay all deadlines in this action for a period of sixty days. *See* ECF No. 21. Unfortunately, the parties' mediation on July 23, 2024, did not result in a class-wide settlement. Schwartzbaum Decl. ¶ 8.

Finally, Act V begins with MLB filing its first motion to strike and dismiss Plaintiff's complaint. ECF No. 26. Plaintiffs responded with the filing of the operative Amended Complaint (ECF No. 40), and on December 19, 2024, MLB filed its renewed motion to strike and dismiss Plaintiffs' Amended Complaint, largely repeating the arguments in its first motion. Despite having represented to this Court that it sought to resolve Plaintiffs *and* "the purported Class's claims" at mediation, ECF No. 20 at 1, MLB's first argument is that the class allegations should be stricken

based on the Class Action Waiver. *See* Mem. at 13–20. MLB offers no explanation for the contradictory terms in the new TOU that both disallow class treatment of VPPA claims while simultaneously (and functionally) preserving its own right to participate in a class-wide settlement of those same claims in federal court.

The foregoing arguments and evidence demonstrate that the new TOU does not clearly preclude the possibility that Plaintiffs' claims may be brought on a class-wide basis because extrinsic evidence establishes that the TOU's intent is to resolve MLB's VPPA liability through a class settlement. For this reason, it would be premature for the Court to strike the class allegations. Case law cited by MLB suggests that the Court should determine the applicability of the Class Action Waiver at a later stage in this litigation, such as class certification or summary judgment, after the development of a fuller factual record.

The Court should also deny MLB's arguments for dismissal, just as most federal courts have done when considering nearly identical arguments. First, the Complaint sufficiently alleges MLB transmitted *Plaintiffs'* Personal Viewing Information to Meta without their consent, in violation of the VPPA. Second, Plaintiffs sufficiently allege that MLB knowingly shared their personally identifiable information ("PII") with Meta through its use of the Pixel, because their FIDs allow an ordinary person to connect their name and identity to the *MLB Websites'* pre-recorded videos they watched. Third, Plaintiff Clifford expressly alleges that he is a consumer under the VPPA, as he received emails and other digital content from MLB in exchange for his *MLB.com* subscriber registration. Contrary to MLB's arguments, these allegations satisfy the definition of a subscriber under *Salazar v. Nationall Basketball Association*, 118 F.4th 533 (2d Cir. 2024). In short, Plaintiffs' Complaint sufficiently alleges Plaintiffs' standing and the elements of a VPPA claim and, therefore, the Court should deny the Motion.

**STATEMENT OF FACTS THAT MUST BE TAKEN AS TRUE**

VPPA was passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase and viewing data. Compl. ¶ 18. Prior to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7–8 (1988). Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. Compl. ¶ 19. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* (quoting S. Rep. No. 100-599 at 7–8 (1988) (statements of Sens. Simon and Leahy, respectively). Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes." *Id.* ¶ 20 (citing 134 Cong. Rec. S5399 (May 10, 1988)). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

The importance of legislation like VPPA in the modern era of data mining from online activities is even more pronounced than it was when it was initially enacted. *Id.* ¶ 21. During a recent Senate Judiciary Committee meeting regarding VPPA "in the 21st Century", Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking,

video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information." *Id*. In this case, Defendant chose to deprive Plaintiff and the Class members of that right by systematically disclosing their Personal Viewing Information to Facebook, without providing notice to (let alone obtaining consent from) anyone. *Id*. ¶ 22.

Defendant is a limited partnership of the club owners of Major League Baseball headquartered in New York, New York. Am. Compl. ¶ 16. Defendant develops, owns, and operates the MLB Websites, which include a broad selection of prerecorded video content posted along with their stories and other digital media content. *Id*. MLB installed the Pixel on its Websites to transmit its subscribers' Personal Viewing Information to Facebook. *Id*. ¶ 4. When a subscriber watches a prerecorded video on its website, MLB sends to Facebook the video content name, its URL, and most notably, the subscriber's FID. *Id*. ¶¶ 5, 40–41, 56, 62. This occurs even when the subscriber has not shared—nor consented to share—such information. *Id*. ¶¶ 4, 27, 30, 45. This unconsented transmission results from Defendant's purposeful incorporation of the Pixel into the MLB Websites or Apps. *Id*. ¶¶ 35, 39–42.

An FID is a unique and persistent identifier that Facebook individually assigns to each user. *Id*. ¶ 42. Because the FID serves as a unique identifier for an individual's Facebook account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile. *Id*. ¶¶ 42, 44. By transmitting the subscriber's unique identifier together with the video they watched, MLB's use of the Pixel allows Facebook to know the video-watching habits of a specific user on MLB's Websites. *Id*. ¶¶ 35, 45, 47.

MLB installed the tracking Pixel because it benefits financially from the advertising and information services that stem from use of the Pixel. *Id*. ¶¶ 38–40. Specifically, Facebook uses the information to build a more detailed profile of its users, further enabling its ability to sell and

display targeted digital ads to them on Facebook. *Id*. ¶¶ 38–39. In exchange for using the Pixel, and at the expense of its subscribers' privacy, MLB uses the information received to build better targeted advertising on its website which, in turn, generates greater revenue. *Id*. ¶¶ 6, 47–49.

Plaintiff Bryan Henry began his digital subscription to MLB.tv in 2023 and continues to maintain the subscription to this day. *Id*. ¶¶ 12, 54–55. Plaintiff Henry's paid subscription to *MLB.tv* granted him exclusive access to view prerecorded video and media content on Defendant's website and app without advertisements. *Id*. Plaintiff Clifford began his digital subscription to MLB.com in 2021 and continues to maintain the subscription to this day. *Id*. ¶¶ 59. Plaintiff Clifford created an account with MLB.com, for which he receives emails, digital content and access to prerecorded video and media content on Defendant's website and app. *Id*. ¶¶ 14, 59–60.

Plaintiffs have had personal Facebook accounts throughout the period they have been digital subscribers of the MLB Websites. *Id*. ¶¶ 13, 15, 56, 61. During the relevant period, Plaintiffs have used their MLB Websites digital subscriptions to view prerecorded Video Media through the *MLB.tv* and *MLB.com* websites and/or Apps while logged into their Facebook accounts. *Id*. By doing so, Plaintiffs' Personal Viewing Information was disclosed to Facebook pursuant to the systematic process described herein. *Id*. Plaintiffs never gave MLB express written consent to disclose their Personal Viewing Information to Facebook. *Id*. ¶¶ 13, 15, 57. 62.

## ARGUMENT

### I.   THE COURT SHOULD DENY THE MOTION TO STRIKE BECAUSE MLB'S TOU MAY BE REASONABLY INTERPRETED TO ALLOW CLASS TREATMENT OF PLAINTIFFS' VPPA CLAIMS.

Motions to strike under Rule 12(f) are rarely successful. *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) ("Courts rarely grant motions to strike pursuant to Federal Rule of Civil Procedure 12(f)."); *Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509, 514

(S.D.N.Y. 2014) ("Motions to strike are viewed with disfavor and infrequently granted."). This is particularly true in the class-action context because a Rule 12(f) motion "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore*, 94 F. Supp. 3d at 447; *see also Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[A] determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination."). "Put differently, motions to strike class allegations are often denied as premature." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (citing *Chen–Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)); *Mazzola*, 849 F. Supp. 2d at 410 (denying motion to strike class allegations as premature).

While "striking the class allegations may be appropriate [] where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis," a motion to strike class allegations is "premature" where the defendant "has not definitively shown that the class waiver … clearly applies so as to preclude … a class action." *Collins v. Pearson Educ., Inc.*, No. 23 CIV. 2219 (PA), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022)). This Court has frequently denied motions to strike class allegations as premature where, as here, Defendant is "basing their argument against class claims on factual and legal disputes to be decided at a later point in the litigation." *Rothstein v. Auto Club S.*, No. 15 Civ. 9391 (LAK) (RLE), 2017 WL 11455316, at *4 (S.D.N.Y. Mar. 16, 2017), *R. & R. adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017); *see also, e.g., Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696

(S.D.N.Y. 2015) (denying motion to strike as premature because defendants had not yet proven plaintiffs had "waived their class action rights and established a 'meeting of the minds on all essential terms' of any such waiver"); *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *6–7 (S.D.N.Y. Mar. 21, 2019) (denying motion to strike as premature because the issue whether class members "entered into arbitration agreements that included class-action waivers" should be decided at the class certification stage).

As discussed in greater detail below, the Class Action Waiver is contradictory and ambiguous, so the Court will be required to consider extrinsic evidence to interpret the parties' intent. When the Court considers this external evidence at a later stage of this litigation, after the development of a full factual record, it will likely find that the parties' intent is to permit VPPA claims to be litigated in federal court on a class basis. Moreover, even if the Court were to find that the extrinsic evidence fails to resolve the ambiguity, it would then apply the doctrine of *contra proferentem* to construe the new TOU against the drafter, MLB, and in favor of Plaintiffs' class claims. The Court should deny the motion to strike the class allegations because Plaintiff proffers a reasonable interpretation of the new TOU that permits this case to be resolved on a class-wide basis and, therefore, the motion to strike is premature. *See Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440, 445–46 (S.D.N.Y. 2023) (denying motion to compel arbitration of plaintiffs' claims and to strike the class allegations in complaint because defendant failed to meet its burden to show that a "[class action] waiver – read against the other provisions of the contract – reveals, in a clear and convincing manner, an intent to preclude these claims from class-action litigation").

### A.  The Class Action Waiver Contains Contradictory Terms That Create Ambiguity.

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166,

170 (N.Y. 2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id*. (internal quotation marks omitted). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co*., 878 N.E.2d 1019, 1021 (N.Y. 2007). "The matter of whether the contract is ambiguous is a question of law for the court[,]" *Law Debenture Trust Co. v. Maverick Tube Corp*., 595 F.3d 458, 465 (2d Cir. 2010), and "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 780 N.E.2d at 170. "If, however, the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *State v. Home Indem. Co.,* 486 N.E.2d 827, 829 (N.Y. 1985); *see also Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 567 (2d Cir. 2011).

The TOU "is ambiguous" because "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 28 A.D.3d 175, 177 (N.Y. App. Div. 2006). Here, the Class Action Waiver in the new TOU contains terms that are inherently contradictory and cannot be reconciled, creating ambiguity: The TOU *waives* the parties' rights to litigate VPPA claims on a class basis while simultaneously *retaining* the parties' rights to participate in a class-wide settlement. These terms are contradictory because a "class-wide settlement" may only result from filed motions for preliminary and final class certification under Rule 23[5]—the quintessential way a plaintiff "bring[s] or … participate[s]" in a class action. The

---

[5] *See Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791 (S.D.N.Y. 2020) ("Under Rule 23(e)(1)(B), preliminary approval is warranted when the parties have shown that a court will likely be able to … certify the class for purposes of judgment on the proposal"); *In re LIBOR-Based Fin'l Instruments Antitrust Litig.*, 327 F.R.D. 483,

TOU is ambiguous because it waives *both* parties' ability to take the actions necessary to "participate in a class-wide settlement."

MLB argues that the "class-wide settlement exception" does not make the class action waiver ambiguous because it is set apart by the phrase, "notwithstanding the foregoing," and under New York law, such clauses "'trump conflicting contract terms' without creating ambiguity." Mem. at 18 (citing *Beardless v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015)). But a "notwithstanding" clause does not automatically resolve contractual ambiguity, as MLB contends. Instead, MLB's case law holds that a provision introduced by a notwithstanding clause "overrides any inconsistent language elsewhere in the [contract]." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 91 (2d Cir. 2002). If, as Plaintiffs reasonably contend, the right to "participate" in a class-wide settlement includes the right to "bring or participate" in a class action, then application of the "notwithstanding" principle supports the conclusion that the "class-wide settlement exception" "trumps" the class action waiver and allows consumers to seek class treatment of VPPA claims.

Furthermore, the ambiguity of the phrase "participate in a class-wide settlement" is not resolved by the "notwithstanding" principle. Defendants' position—that the clause permits "the parties to engage in class procedure for settlement purposes" but otherwise prohibits Plaintiffs from maintaining class actions against MLBAM" (Mem. at 18–20)—introduces further ambiguity because the TOU does not specify which aspects of the class action "procedure" consumers may or may not exercise in furtherance of such a settlement. For example, the TOU does not answer whether consumers may move to compel class-wide discovery necessary

---

490 (S.D.N.Y. 2018) ("Before [finally] approving a class settlement agreement, a district court must first determine whether the requirements for class certification … have been satisfied").

to ascertain a class or assess their damages, move to enforce a settlement agreement contested by MLB, or even dictate the terms of a motion for preliminary or final class certification.

Nor is the ambiguity resolved by the fact that "parties may, and regularly do, agree to class-wide settlements where class-action waivers are present." Mem. at 19–20. In all of MLB's cited cases,[6] the class action waivers were tied to an arbitration agreement evidencing the parties' intent to forego class procedures to litigate and settle disputes. *Id.* Further, in *none* of these cases did the class action waivers reserve the right to participate in a class-wide settlement. *Id.* Conversely, MLB's TOU *prohibit* arbitration of VPPA claims and evidence intent to resolve them using class procedures. Thus, MLB's cases concerning class-wide settlement of cases where the defendant waived individual arbitration are irrelevant to whether its Class Action Waiver is ambiguous.

In short, MLB's attempts to reconcile the conflicting terms of the TOU provide further evidence that the class action waiver is reasonably susceptible to more than one meaning. Under New York law, a waiver of rights must be "'clear, unmistakable and without ambiguity.'" *Prof. Staff Cong.-City U. of New York v. New York State Pub. Empl. Rel. Bd.*, 857 N.E.2d 1108, 1111 (N.Y. 2006) (internal citation omitted). The Court should therefore find that the Class Action Waiver is ambiguous. *See, e.g., Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369, 375, 377–79 (S.D.N.Y. 2006) (finding ambiguity because contractual language was reasonably susceptible to more than one meaning).

### B. Extrinsic Evidence Will Prove that MLB's Intent is to Resolve the VPPA Claims on a Class-Wide Basis.

Where, as here, contradictions in a contract make it ambiguous, the Court should look "to extrinsic evidence to determine the proper meaning of the contract." *In re Celsius Network LLC*,

---

[6] *Tennille v. W. Union Co.*, 785 F.3d 422 (10th Cir. 2015); *Mills v. Capital One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015); *Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846 (C.D. Cal. Oct. 6, 2014).

649 B.R. 87, 99 (Bankr. S.D.N.Y. 2023) (examining extrinsic evidence to resolve ambiguity caused by contradictory terms in defendant's terms of use). Such "extrinsic evidence may properly be considered in the search for the contracting parties' intent." *Seiden Assocs. v. ANC Holdings, Inc*., 959 F.2d 425, 429 (2d Cir. 1992); *see also Faulkner*, 452 F. Supp. 2d at 369, 375, 377–79 (analyzing extrinsic evidence to ascertain intent of ambiguous contract). Indeed, "[t]he cardinal principle for the construction and interpretation ... [of] all contracts—is that the intentions of the parties should control." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (citation omitted). Under New York law, courts determine intent by looking at "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp*., 361 N.E.2d 999, 1001 (N.Y. 1977). "In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Id.*

The extrinsic evidence submitted by Plaintiff provides a reasonable basis for a finding that the parties' intent is to resolve their VPPA claims in federal court on a class wide basis and, therefore, to allow consumers to use class procedures to achieve that aim. The Court should deny the motion to strike based on the existence of this reasonable interpretation of the new TOU.

Plaintiffs' extrinsic evidence demonstrates a few fundamental truths. First, MLB initially desired to have all VPPA claims subjected to individual arbitration. Second, after MLB was threatened with tens of thousands of individual arbitrations from MLB digital subscribers for alleged VPPA violations and failed to settle them, MLB introduced the new TOU in February 2024 to undermine those claimants and attempt to require all MLB subscribers to bring their VPPA claims in federal court. Third, despite its purported desire to only allow VPPA claims to be brought

in court on an individual basis, MLB's new TOU reserves both its subscribers' and MLB's right to settle all the VPPA claims on a class-wide basis. Indeed, this is precisely what MLB attempted to do when it agreed to delay this case in favor a second mediation that, *according to MLB*, was intended to negotiate Plaintiffs' *and the Class's* claims.

Based on the foregoing evidence, MLB's intent is clear: To pit the VPPA claimants against one another and create a race to the bottom from which MLB hopes to extract a cheap class deal that resolves all its VPPA liability. In other words, extrinsic evidence reveals that MLB wants to resolve its VPPA liability through a class resolution in federal court. The Court should conclude that there is a reasonable basis to find that this intent may be effectuated by construing the TOU to allow Plaintiffs' VPPA claims to proceed on a class basis. Thus, the motion to strike should be denied as premature. *See supra* at 9–10 (citing cases supporting denial of motion).

### C. Even if the Parties' Intent Cannot Be Clearly Ascertained through Extrinsic Evidence, the Court Would Likely Resolve Ambiguity in the TOU Against the Drafter, MLB, and in Favor of Plaintiffs' Class Claims.

Striking of the class allegations would be premature because Plaintiffs should be allowed to develop a complete factual record concerning the intent of the contradictory and ambiguous Class Action Waiver. Plaintiffs suggest this evidence will support an interpretation of the new TOU that allows the claims to proceed on a class-wide basis. But even "if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court." *Home Indem. Co.,* 486 N.E.2d at 829. "Under those circumstances, the ambiguity must be resolved against the [party] which drafted the contract." *Id*. (internal citations omitted). Resolving the ambiguity against the party who drafted the contract is the doctrine of *contra proferentem. See Morgan Stanley Grp. v. New England Ins. Co*., 225 F.3d 270, 276 (2d Cir. 2000). The *contra proferentem* principle, that a contract is construed against the

drafter, is to be applied only (i) where more than one reasonable interpretation exists, and (ii) as a last resort, after all other guides to interpretation have been exhausted. *See Electra v. 59 Murray Enters.*, 987 F.3d 233, 245 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 563 (2021); *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1050 (2d Cir. 1989).

If, after the factual record is fully developed, the Court finds that the Class Action Waiver has more than one reasonable interpretation and extrinsic evidence does not establish the parties' intent, it will likely then apply the *contra proferentem* principle to construe the new TOU against the drafter, MLB, and in favor of Plaintiffs' class claims. *See Staley*, 680 F. Supp. 3d at 448 ("The choice between [two reasonable] interpretations is made easier" by the law that "ambiguities in a contract must be construed against the drafter") (citing *Kerin v. U.S. Postal Serv.*, 116 F.3d 998, 992 (2d Cir. 1997)). Because there are multiple ways for this Court to find that the new TOU does not prohibit Plaintiffs' claims from class treatment, the Court should deny the motion to strike as premature. *Id.* (adopting plaintiff's interpretation of a class action waiver at the motion to strike stage and denying "the defendants' motion without prejudice to its being re-raised at the class certification stage, where the Court may benefit from additional discovery on this issue").

## II.    THE COURT SHOULD FIND THAT MLB'S CLASS ACTION WAIVER IS UNCONSCIONABLE AND UNENFORCEABLE

The Court should find the Class Action Waiver both procedurally and substantively unconscionable and, therefore, unenforceable. "Under New York law, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable ... according to its literal terms.'" *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017) (citing *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (1988)). Proof of unconscionability requires "a showing that such a contract is both procedurally and substantively unconscionable." *Id.* "The procedural element of

16

unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 1983). Procedural and substantive unconscionability operate on a "sliding scale," meaning that "the more questionable the meaningfulness of the choice, the less imbalance in a contract's terms should be tolerated." *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 238 (W.D.N.Y. 2014).

MLB sprung the Class Action Waiver on Plaintiffs without notice as an amendment to a contract of adhesion that they had no ability to negotiate. The Waiver precludes Plaintiffs' participation in a class action proceeding, while giving full discretion and unreasonable bargaining power for MLB to force an unfavorable class-wide settlement. These facts render the Class Action Waiver procedurally and substantively unconscionable.

## A. The Class Action Waiver is Procedurally Unconscionable

Defendant's Class Action Waiver is procedurally unconscionable because it was forced onto Plaintiffs within a contract of adhesion. A contract is procedurally unconscionable when there is a significant disparity in bargaining power between the parties, including the absence of negotiations or unfair surprise. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). First, Plaintiffs had no opportunity to negotiate any part of MLB's TOU when they created MLBtv and MLB.com accounts in 2021 and 2023, when the TOU mandated arbitration of VPPA claims. This is a hallmark of procedural unconscionability. *See Matter of Friedman*, 407 N.Y.S.2d 999, 1008 (N.Y. App. Div. 2d Dept. 1978) ("[U]nequal bargaining position ha[s] been recognized as procedurally unconscionable"). Second, MLB provides no evidence that it notified Plaintiffs of the 2024 amendments to TOU, which exclude VPPA claims from arbitration and introduced the ambiguous Class Action Waiver. Instead, MLB argues

Plaintiffs became bound to the 2024 TOU because, under section 13 of the TOU, "your use of an MLB Digital Property after [a change to the TOU] is posted will mean that you accept such change" and Plaintiffs allege that they accessed MLB's Websites or Apps since the 2024 update. Mem. at 11. This provides further evidence of oppression and unfair surprise. *Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 245 (D. Mass. 2015) ("Procedural unconscionability is concerned with 'unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'") (quoting Dan B. Dobbs, 2 *Law of Remedies* 706 (2d ed.1993)). Accordingly, the formation of the Class Action Waiver agreement reflects a substantial amount of procedural unconscionability.

### B. The Class Action Waiver is Substantively Unconscionable.

The Class Action Waiver is substantively unconscionable because its class settlement exception is entirely one-sided and unreasonably favorable to MLB. "Substantive unconscionability exists where the contractual terms are 'grossly unreasonable' and favor the party seeking to enforce the contract." *Doe #1 v. College Bd.*, 440 F. Supp. 3d 349, 355–56 (S.D.N.Y. 2020). While the Class Action Waiver purports to afford both parties the right to participate in a class-wide settlement, MLB holds the exclusive practical power to engage in such a settlement and to determine the terms of any such agreement. The TOU affords consumers like Plaintiffs no mechanism to engage with class-wide resolution unless MLB suggests it, empowering Defendant to effectuate a reverse-auction for the lowest-valued settlement. At any point in the settlement process, including during the procedures under Rule 23, MLB may simply invoke the Class Action Waiver to dispose of the class-wide settlement, and as a result, meaningfully prejudices any purported right of Plaintiffs to "bring or participate."

The Class Action Waiver is grossly favorable to Defendant over Plaintiffs, and as such is substantively unconscionable. *See Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y.

2017) (finding arbitration clause, which unfairly required plaintiff to give up federal rights, "unconscionable and void against public policy"); *Brennan*, 198 F. Supp. 2d at 384 (finding contract substantively unconscionable because "its terms are unreasonably favorable to the party against whom unconscionability is claimed" and because its "terms allow Bally to unilaterally modify the contract at any time, thus binding employees to a contract they may never have seen").

### III.  PLAINTIFFS SUFFICIENTLY ALLEGE INJURY FROM MLB'S IMPROPER DISCLOSURES OF THEIR PERSONAL VIEWING INFORMATION.

MLB's attack on Plaintiffs' standing is based solely on the sufficiency of the Complaint's allegations. *See* Mem. at 20–32. "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint… the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In this situation, "[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Id.* (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Applying this standard, the Court should conclude Plaintiffs sufficiently allege that MLB disclosed their Personal Viewing Information and identities to Meta and, therefore, they were injured by MLB's invasion of their privacy rights.

On this argument, *Collins* is instructive. 2024 WL 895316, at *3. There, as here, the defendant argued the complaint did not adequately plead injury in-fact for a VPPA claim because "it contains only spare and conclusory allegations as to [plaintiff's] injury," criticizing the plaintiff for failing to "specifically identify the services to which [plaintiff] subscribed, the specific videos he requested or obtained, the dates he requested or obtained these videos, where on [defendant's]

website the videos can be found, the disclosed Facebook ID, or the disclosed video title." *Id.* As this Court explained, however, "these details are not needed to allege that [plaintiff] suffered an injury in-fact." *Id.* As in this case, "[t]he Complaint alleges that [defendant], as an across-the-board practice, disclosed to Facebook [plaintiff's] Facebook ID, and the titles and URLs of each of the videos and other services he required or obtained from [defendant's] website." *Id.*; *see* Compl. ¶ 41. "Even without the names of specific videos and the like, this adequately alleges concrete injury, in that [defendant] 'intentionally disclosed [plaintiff's] personally identifiable information' and his 'video-watching activity' to Facebook 'without [his] knowledge or consent' via the Pixel." *Collins*, 2024 WL 895316, at *3 (quoting *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 90 (S.D.N.Y. 2023) (denying defendant's motion to dismiss VPPA claim for lack of standing)).

Not only has the Supreme Court held that "'disclosure of private information' is an intangible harm traditionally recognized as actionable in American courts," *id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), but also "specific to this statute, courts in this Circuit have held that 'because the VPPA creates a specific right to relief for disclosures made in violation of the statute, a plaintiff asserting claims under the VPPA need only assert [his] information was wrongfully disclosed'" to support Article III standing. *Id.* (citing *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 668 (S.D.N.Y. 2015)). As in *Collins*, "x[t]he Complaint here clears that threshold." *Id.* (citing *Carter*, 670 F. Supp. 3d at 90 (concrete injury under VPPA where plaintiff's video-watching and personal information was allegedly disclosed to a third party); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023)).

MLB's argument that the Complaint fails to allege "any disclosure of their personal information" to Facebook, Mem. at 21, ignores both its factual allegations and the liberal standard applicable at this stage. As the *Collins* court noted, "[a]t the pleading stage, general factual

allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." 2024 WL 895316, at *3 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up)). "The Complaint's allegation here of an overarching business practice necessarily picks up the specific facts necessary to establish the claim." *Id.* The Court should therefore "reject [MLB's] first argument as an improper "attempt[ ] to devise [ ] additional pleading requirement[s]." *Id.* (quoting *Austin-Spearman*, 98 F. Supp. 3d at 667).

Beyond Plaintiffs' general allegations of how the Facebook Pixel works and Defendant's regular course of conduct in transmitting Personal Viewing Information to Meta without consent, Plaintiffs have specifically alleged that they were individually impacted by Defendant's practices, and that "through the use of the pixel, Defendant knowingly transmitted Plaintiff[s] Personal Viewing Information," including their FIDs, to Facebook. Compl. ¶¶ 56, 61. Accordingly, Plaintiffs have plainly alleged specific facts that their privacy was invaded in violation of the VPPA when Defendant disclosed their Personal Viewing Information and identities to Facebook.

Finally, MLB suggests that Plaintiff lacks standing because they "do not credibly allege that any of their PII was shared with third parties through the Meta [] Pixel". Mem. at 26. However, as Defendant concedes, "'[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.'" Mot. at 29 (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023)). Notwithstanding, Defendant relies on cases dismissing VPPA claims where plaintiffs failed to allege the personal information contained in their Facebook accounts. *See e.g.* Mot. at 27–30 (citing *Ghanaat*, 689 F. Supp. 3d at 720 ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"). This ignores Plaintiffs allegations concerning the

personal information contained in their Facebook profiles, easily accessible to the recipients of their FIDs. Compl. ¶¶ 13, 15 (identifying the "real name and other personally identifying information" on Plaintiffs' Facebook pages). As such, the cases cited by MLB are inapposite. Moreover, "[t]hese arguments, [] go to the merits of [Plaintiffs'] claims, not his standing to bring it." *Collins*, 2024 WL 895316, at *4 (citing cases). Thus, as in *Collins*, the Court should reject all MLB's challenges to Plaintiffs' standing. *Id.*

## IV.    PLAINTIFFS' VPPA CLAIMS ARE SUFFICIENTLY PLEADED.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Applying this standard, the Court should conclude the Complaint contains sufficient factual allegations to state a claim under the VPPA.

### A. Plaintiffs Sufficiently Allege MLB Disclosed Their Personal Viewing Information.

As shown above, Plaintiff alleges an actionable disclosure of ***their*** Personal Viewing Information, including their Facebook accounts containing their real names. *See supra* at 16–19. Plaintiffs allege that ***they*** have "had a Facebook account since before [they] signed up" for the MLB Websites and that, during the relevant period, ***they*** "requested, obtained, and viewed Video Media" via the MLB Websites and Apps. Compl. ¶¶ 56, 61. The Complaint defines "Video Media" as "the computer file containing the prerecorded video, its name or title, and its corresponding URL viewed." *Id.* ¶ 1. Plaintiffs further allege that, through the Pixel, whenever a digital subscriber,

including themselves, viewed Video Media on MLB's platforms, the Pixel transmitted it, along with the users FID, to Facebook, allowing Facebook to connect their identities to the prerecorded videos they watched. *Id.* ¶¶ 38–53, 56, 61. Finally, Plaintiff alleges that, because of this factual scenario, "Defendant knowingly caused Personal Viewing Information, including FIDS, concerning **Plaintiffs** and Class members to be disclosed to Facebook." *Id.* ¶ 75.

The Court should reject Defendant's argument that Plaintiffs have failed to allege "any facts showing that MLBAM [] actually sent their information" because it ignores Plaintiffs' specific factual allegations, in violation of the pleading standard on a motion to dismiss. Mem. at 25. Instead, accepting the foregoing allegations as true and liberally construing them in Plaintiff's favor, the Court should conclude Plaintiffs sufficiently allege the disclosure of their Personal Viewing Information to Facebook without their consent, which is sufficient to state a VPPA claim.

**B. Plaintiffs Sufficiently Allege MLB Disclosed Their PII.**

Recycling another failed argument that most courts have rejected, MLB suggests that the Complaint fails to sufficiently allege that any of Plaintiffs' PII was shared with any third party through the Pixel because they do nothing to allege "that they would in fact be identified by the information they say was disclosed to Meta." Mem. at 26. MLB is wrong.

Courts in this district (and across this country) have "uniformly held Facebook IDs to constitute PII under the VPPA." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023) (citing many persuasive cases); *see also Ghanaat*, 689 F. Supp. 3d at 720 ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII") (citing *Lucinda Jackson v. Fandom Inc*., No. 22-cv-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) (explaining that the ID can readily be used by the average person to access a consumer's Facebook page, containing substantial personal information)).

While MLB acknowledges these authorities, it argues that this Court should eschew them in favor of three district court decisions which diverge from the federal consensus: *Ghanaat*, 689 F. Supp. 3d at 714, *Smith v. Trinity Broadcasting of Texas, Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024), and *Heerde v. Learfield Communications, LLC.*, -- F. Supp. 3d --, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024). The Court should decline to follow these cases because, in addition to being a minority position, they are factually distinguishable, as addressed above. *See supra* at 18–19.

Specifically, in *Ghanaat*, the court *agreed* "that a FID can constitute PII where it leads to a Facebook page that discloses personal and identifying information about the consumer," and only dismissed the VPPA claim because plaintiffs' allegations did "not allege their Facebook pages contain any personal information, *such as their names* and or email addresses." 2023 WL 5738391, at *4 (emphasis added). *Trinity* and *Heerde* hold similarly. *See Trinity*., 2024 WL 4394557, at *3 (plaintiff failed to allege Facebook profile contained any identifying information); *Heerde*, 2024 WL 3573874, at *4 (same). But Plaintiffs' Complaint alleges that an FID can be used by *any ordinary person* to "look up the user's Facebook profile *and name*," and that their Facebook profiles did in fact contain their "real name and other [PII]." Compl. ¶¶ 13, 15, 42 (emphasis added). These allegations are clearly distinguishable from the cases Defendant relies on.

Plaintiffs clearly allege that their FIDs, linked to the personal Facebook pages containing their PII, were disclosed to Facebook through MLB's use of the Pixel. Accordingly, the Court should conclude that the Complaint alleges MLB's disclosure of Plaintiffs' PII.

## C. Plaintiff Clifford Adequately Alleges he is a Consumer Under the VPPA

Lastly, Defendant's argument that Plaintiff Clifford fails to allege he is a consumer under the VPPA because he "does not allege that a registration on MLB.com provides a 'future and

recurrent benefit' by giving him any access to 'video and media content' beyond what every other member of the public gets," Mem. at 32–33, is almost identical to the argument squarely rejected by the Second Circuit in *Salazar*. The Court should do the same here.

In *Salazar*, the NBA contended that its online newsletter received through a subscription by the plaintiff was not a "good or service" under the VPPA because it did not, itself, contain audiovisual goods or services. *Salazar*, 118 F.4th 533 at 546. After a thorough analysis of the statutory text and the NBA's policy arguments, the Second Circuit held that "[t]he phrase 'goods or services' in the VPPA's definition of 'consumer' is not cabined to only audiovisual 'goods or services.' The NBA's online newsletter therefore is a qualifying good or service." *Id.* at 550. Because the plaintiff alleged that he had provided the NBA with his personal information when he signed up for "goods and services" in the form of the newsletter in return for receiving periodic NBA-related updates, he met the definition of a consumer under the VPPA. *Id*. at 550–52.

Plaintiff Clifford's allegations are nearly identical to those that the Second Circuit found sufficient to state a VPPA claim. Plaintiff Clifford gave MLB his personal information in exchange for the future and recurring benefit of receiving emails and other digital content from MLB.com. Compl. ¶¶ 59–60. As such, he has alleged both the goods and services received, as well as his "subscriber" status, meeting the VPPA's definition of a consumer.

## CONCLUSION

For the reasons shown above, Plaintiff respectfully requests the Court deny the motion to strike the class allegations and the motion to dismiss under Rules 12(b)(1) and 12(b)(6). If the Court grants any part of Defendant's Motion, Plaintiff respectfully requests leave to amend. *See Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006).

Dated: February 7, 2025                   Respectfully submitted,

                                          **SHAMIS & GENTILE, P.A.**

                                          */s/ Andrew J. Shamis*
                                          Andrew J. Shamis, Esq.
                                          New York Bar No. 5195185
                                          ashamis@shamisgentile.com
                                          14 NE 1st Ave., Suite 705
                                          Miami, FL 33132

                                          **EDELSBERG LAW, P.A.**

                                          */s/ Adam A. Schwartzbaum*
                                          Adam A. Schwartzbaum, Esq.*
                                          Florida Bar No. 93014
                                          adam@edelsberglaw.com
                                          Scott Edelsberg, Esq.*
                                          Florida Bar No. 100537
                                          scott@edelsberglaw.com
                                          20900 NE 30th Avenue
                                          Aventura, FL 33180

                                          **Pro Hac Vice* to be filed

                                          *Counsel for Plaintiff and the Proposed Class*


### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 7, 2025, I caused a true and correct

copy of the foregoing to be served on all counsel of record in this action via CM/ECF.

                                          */s/ Andrew J. Shamis*
                                          Andrew J. Shamis

26