**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BRYAN HENRY AND JAMES CLIFFORD, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.,

Defendant.

Case No. 1:24-cv-01446-GHW-GWG

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Court should strike Plaintiffs' class allegations because they agreed to an enforceable waiver of the right to bring a class action, except for settlement purposes. ..... 3

a. The 2024 TOU is not unconscionable and must be enforced. ..... 3

i. Binding precedent and Plaintiffs' own allegations foreclose their procedural-unconscionability argument. ..... 4

ii. Settled New York law defeats Plaintiffs' substantive-unconscionability argument. ..... 8

b. Because the class-action waiver unambiguously bars Plaintiffs' class claims, the Court must enforce it without relying on extrinsic evidence. ..... 11

i. The text of the class-action waiver is unambiguous, so the Court should not consider extrinsic evidence. ..... 11

ii. Plaintiffs unsuccessfully attempt to introduce ambiguity. ..... 13

iii. Routine class-action practice reinforces that the waiver is enforceable. ..... 15

c. Even if the Court considers extrinsic evidence, that evidence shows that the parties agreed to waive class procedures, except for settlement purposes. ..... 17

d. Because any reading of the class-action waiver shows that Plaintiffs agreed not to bring their class claims, the Court should strike their class allegations. ..... 19

II. The Court should dismiss Plaintiffs' complaint because they fail to state a claim and lack standing. ..... 21

a. Plaintiffs fail to allege disclosures of *their* information. ..... 21

b. Plaintiffs fail to allege that their Facebook profiles are publicly visible. ..... 23

c. Clifford fails to plausibly allege that he is a "consumer." ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Cases**

*Alex v. NFL Enters. LLC*,
2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023)........................................................... 25

*Amusement Bus. Underwriters, a Div. of Bingham & Bingham, Inc. v. Am. Int'l Grp., Inc.*,
66 N.Y.2d 878 (1985) ........................................................................................ 17, 18

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022) ........................................................................ 7

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............................................................ 22, 23, 25

*Beagle v. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024)......................................................... 22

*Beardslee v. Inflection Energy, LLC*,
25 N.Y.3d 150 (2015) ........................................................................................ 11, 14

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985) ................................................................................... 6, 7

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
*R. & R. adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018)............................... 8

*Blyden v. Mancusi*,
186 F.3d 252 (2d Cir. 1999) ..................................................................................... 10

*Brad H. v. City of New York*,
17 N.Y.3d 180 (2011) ............................................................................................... 11

*Brennan v. Bally Total Fitness*,
198 F. Supp. 2d 377 (S.D.N.Y. 2002) .................................................................... 4, 9

*Camilo v. Uber Techs., Inc.*,
2018 WL 2464507 (S.D.N.Y. May 31, 2018) ........................................................... 12

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012) ...................................................................... 19

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ................................................................ 19, 22

*Doe #1 v. Coll. Bd.*,
440 F. Supp. 3d 349 (S.D.N.Y. 2020) .................................................. 4, 9

*Donelson v. Ameriprise Fin. Servs., Inc.*,
999 F.3d 1080 (8th Cir. 2021) .................................................. 20

*Eisen v. Venulum Ltd.*,
244 F. Supp. 3d 324 (W.D.N.Y. 2017) .................................................. 4, 9

*Emilio v. Sprint Spectrum L.P.*,
68 F. Supp. 3d 509 (S.D.N.Y. 2014) .................................................. 19, 20

*Faulkner v. Nat'l Geographic Soc'y*,
452 F. Supp. 2d 369 (S.D.N.Y. 2006),
*judgment entered*, 2006 WL 2992834 (S.D.N.Y. Oct. 20, 2006),
and *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*,
284 F. App'x 822 (2d Cir. 2008) .................................................. 13

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
639 F.3d 557 (2d Cir. 2011) .................................................. 12

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .................................................. 23

*Gillman v. Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988) .................................................. 4, 5, 8, 9

*Greenfield v. Philles Recs., Inc.*,
98 N.Y.2d 562 (2002) .................................................. 11, 12, 17

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
635 F. Supp. 3d 238 (S.D.N.Y. 2022) .................................................. 20

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .................................................. 23

*Hojnowski v. Buffalo Bills, Inc.*,
995 F. Supp. 2d 232 (W.D.N.Y. 2014) .................................................. 4

*Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*,
77 F. Supp. 3d 237 (D. Mass. 2015) .................................................. 4, 7

*L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010) .................................................. 12

*Lawrence v. NYC Med. Prac., P.C.*,
2023 WL 4706126 (S.D.N.Y. July 21, 2023) .................................................. 5

*Mandel v. Liebman*,
303 N.Y. 88 (1951) .......... 4

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .......... 22

*Matter of Friedman*,
407 N.Y.S.2d 999 (App. Div. 1978) .......... 4, 5

*Mayfield v. Asta Funding, Inc.*,
95 F. Supp. 3d 685 (S.D.N.Y. 2015) .......... 20

*Maywalt v. Parker & Parsley Petro. Co.*,
67 F.3d 1072 (2d Cir. 1995) .......... 10

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 8

*Mizrahi v. Mizrahi*,
99 N.Y.S.3d 63 (App. Div. 2019) .......... 9

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
67 F.3d 435 (2d Cir. 1995) .......... 13

*N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*,
809 N.Y.S.2d 70 (App. Div. 2006) .......... 13

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......... 3, 9

*Preiser v. Newkirk*,
422 U.S. 395 (1975) .......... 22

*Pro. Staff Cong.-City Univ. of N.Y. v. N.Y. State Pub. Emp. Rels. Bd.*,
7 N.Y.3d 458 (2006) .......... 13

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994) .......... 7

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010) .......... 6

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) .......... 19, 20

*Rothstein v. Auto Club S.*,
2017 WL 11455316 (S.D.N.Y. Mar. 16, 2017),
*R. & R. adopted*, 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017) .......... 20

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .......... 24

*Saliba v. Five Towns Coll.*,
991 F. Supp. 2d 449 (E.D.N.Y. 2014) .......... 21

*Smith v. Trinity Broad. of Tex., Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) .......... 24

*Staley v. Hotel 57 Servs., LLC*,
680 F. Supp. 3d 440 (S.D.N.Y. 2023) .......... 20

*State v. Home Indem. Co.*,
66 N.Y.2d 669 (1985) .......... 12

*State v. Wolowitz*,
468 N.Y.S.2d 131 (App. Div. 1983) .......... 4

*Sullivan v. Study.com LLC*,
2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) .......... 20

*Tech. Ins. Co., Inc. v. Phila. Indem. Ins. Co.*,
642 F. Supp. 3d 445 (S.D.N.Y. 2022) .......... 15

*Tsadilas v. Providian Nat'l Bank*,
786 N.Y.S.2d 478 (App. Div. 2004) .......... 10, 11

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
875 F.2d 1044 (2d Cir. 1989) .......... 19

*United States v. Stegemann*,
701 F. App'x 35 (2d Cir. 2017) .......... 18

*White v. Cont'l Cas. Co.*,
9 N.Y.3d 264 (2007) .......... 12

**Statutes**

18 U.S.C. § 2710 .......... 21, 24

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 12(f) .......... 2, 3, 21, 25

Fed. R. Civ. P. 23 .......... 1, 14, 16, 19

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed.) ........ 20

## INTRODUCTION

In response to Defendant MLB Advanced Media, L.P.'s ("MLBAM's") opening brief (ECF No. 42 ("Mem.")), Plaintiffs Bryan Henry and James Clifford do not contest the dispositive facts as to the class-action waiver. They do not dispute that they each registered on MLB.tv or MLB.com, which are governed by a Terms of Use. Nor do they dispute that MLBAM's current Terms of Use, effective February 6, 2024 ("2024 TOU"), contains a clear and conspicuous class-action waiver that covers their claims. Instead, Plaintiffs argue that MLBAM cannot enforce the 2024 TOU because it is unconscionable. They also argue that it would be premature for the Court to decide whether the waiver applies here because it is ambiguous. Neither argument has merit.

The 2024 TOU's class-action waiver is not unconscionable. New York law requires Plaintiffs to establish both procedural and substantive unconscionability to avoid the effect of the parties' contract. Plaintiffs cannot show procedural unconscionability because New York law upholds "take it or leave it" contracts like MLBAM's Terms of Use, and both Plaintiffs have already conceded in the complaint that the 2024 TOU applies to them. And as to substantive unconscionability, they do not dispute that courts applying New York law uniformly enforce class-action waivers. Plaintiffs attempt to distinguish the waiver here because it allows for class-wide settlement. But the potential unfairness Plaintiffs attribute to the waiver is inherent in any class-wide settlement and mitigated by the procedural safeguards of Rule 23, so there is no reason to treat the waiver here differently than any other routinely enforced class-action waiver.

Next, Plaintiffs argue that the class-action waiver is ambiguous, but they agree that under its plain terms, "[t]he TOU ***waives*** the parties' rights to litigate VPPA claims on a class basis while simultaneously ***retaining*** the parties' rights to participate in a class-wide settlement." (ECF No. 44 ("Opp'n") at 11.) Because that is not ambiguous at all, Plaintiffs try to manufacture ambiguity by arguing that the waiver is contradictory and that the "notwithstanding" clause that preserves the

right to settle on a class-wide basis is somehow unclear. Neither argument works. New York courts uniformly endorse similar class-action waivers, and parties in class actions routinely agree to class-wide settlements despite class-action waivers, just as the 2024 TOU contemplates.

Because the 2024 TOU is unambiguous, Plaintiffs' next argument—that the Court should consider extrinsic evidence—also fails. Courts consider extrinsic evidence only if ambiguity exists, and none does here. So Plaintiffs' attempted analogy to what they call "a five-act play" beyond the four corners of the parties' contract is beside the point. But even if the Court considers Plaintiffs' extrinsic evidence, that evidence supports MLBAM's position. It shows that MLBAM revised its Terms of Use in February 2024 to allow class-wide settlements but not any other class procedures to resolve VPPA and other non-arbitrable claims. And, even according to Plaintiffs' retelling, it shows that MLBAM then acted consistently with the 2024 TOU by mediating this case in July 2024 to attempt a class-wide settlement. Plaintiffs' extrinsic evidence thus does not create any question of fact about the meaning of the class waiver. Any path the Court takes leads to the same conclusion: Plaintiffs' class allegations should be stricken under Rule 12(f).

Plaintiffs also fail to refute MLBAM's arguments for dismissing their individual VPPA claims under Rules 12(b)(6) and 12(b)(1). Plaintiffs do not cite a single case showing that they pleaded a qualifying "disclosure" under the VPPA. To the contrary, the complaint's complete lack of factual allegations showing a disclosure of ***Plaintiffs' own*** data means they not only fail to state a VPPA claim but also lack Article III standing. Plaintiffs also fail to allege that their Facebook profiles contain any ***publicly visible*** information. As multiple courts have held, this is a fatal pleading failure. It means Plaintiffs have not plausibly pleaded that their Facebook IDs ("FIDs"), numeric identifiers tied to their individual Facebook profiles, would allow an ordinary person to identify them. This is required for FIDs to constitute "personally identifiable information" under

the VPPA. Finally, Plaintiffs' opposition ignores MLBAM's key point on the VPPA's "consumer" element: that Clifford's conclusory allegations about "subscribing" to MLB.com, a publicly accessible website that contains no subscriber-only content of any kind, fail to qualify him as a "consumer" under the VPPA. As the Second Circuit has explained, a VPPA plaintiff must allege that he has exchanged personal information for a recurrent benefit, such as a newsletter or other specific good, to qualify as a "consumer." Clifford does not do so. For all these reasons, Plaintiffs' VPPA claims fail under Rules 12(b)(6) and 12(b)(1).

## ARGUMENT

### I. The Court should strike Plaintiffs' class allegations because they agreed to an enforceable waiver of the right to bring a class action, except for settlement purposes.

The Court should strike Plaintiffs' class allegations under Rule 12(f) because the class-action waiver in MLBAM's TOU prohibits Plaintiffs from bringing their class claims. (*See* Mem. at 13–20.) Plaintiffs do not dispute that by registering for MLB.tv or MLB.com, as they allege they did, they each agreed to the 2024 TOU containing a class-action waiver that applies to their VPPA claims. (*See* Opp'n at 2–5 (recounting how they invoked the terms of the waiver to bring their VPPA claims as a class action).) Still, Plaintiffs hope to avoid the effect of the parties' contract. They try to evade enforcement of the class-action waiver entirely by arguing that the waiver is unconscionable and therefore unenforceable; alternatively, Plaintiffs attempt to postpone enforcement by arguing that the waiver is ambiguous. (*Id.* at 8–19.) Both arguments fail, and the Court should strike Plaintiffs' class allegations now under Rule 12(f).

#### a. The 2024 TOU is not unconscionable and must be enforced.

Plaintiffs do not, and cannot, dispute that courts applying New York law "have ***uniformly held*** that class action waivers are not unconscionable." (Mem. at 15 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009)) (emphasis added).) Indeed, only two

of the seven cases Plaintiffs cite analyze whether a class-action waiver is unconscionable, and both ***upheld*** the waiver. *See Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 356–57 (S.D.N.Y. 2020) (class-action waiver not unconscionable under New York law); *Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 245–48 (D. Mass. 2015) (noting that Supreme Court precedent holds that waiving class procedures does not make a contract unconscionable).[1]

Despite the lack of legal authority for their position, Plaintiffs maintain that the class-action waiver is unenforceable because it is unconscionable. (*See* Opp'n at 16–19.) But courts will refuse to enforce a contract under New York law only if it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms." *Gillman*, 73 N.Y.2d at 10 (quoting *Mandel v. Liebman*, 303 N.Y. 88, 94 (1951)). Procedural unconscionability relates to "the contract formation process and the alleged lack of meaningful choice," while substantive unconscionability "looks to the content of the contract, per se." *Wolowitz*, 468 N.Y.S.2d at 145. Plaintiffs must show that the class-action waiver is both procedurally ***and*** substantively unconscionable to avoid their agreements. *Gillman*, 73 N.Y.2d at 10; (*see* Opp'n at 16 (conceding that showing both types of unconscionability is necessary)). Because Plaintiffs can show neither, the Court should enforce the class-action waiver.

**i. Binding precedent and Plaintiffs' own allegations foreclose their procedural-unconscionability argument.**

Plaintiffs argue that the 2024 TOU's class-action waiver is procedurally unconscionable because there was "a significant disparity in bargaining power between the parties," due to

---

[1] The other cases analyze the enforceability of arbitration clauses, *see Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 339 (W.D.N.Y. 2017); *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 238 (W.D.N.Y. 2014); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382–83 (S.D.N.Y. 2002), a security agreement, *see Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988), lease terms, *see State v. Wolowitz*, 468 N.Y.S.2d 131, 140 (App. Div. 1983), and a contract for the sale of paintings, *see Matter of Friedman*, 407 N.Y.S.2d 999, 1007–09 (App. Div. 1978).

"the absence of negotiations" and "unfair surprise." (*See* Opp'n at 17 (also characterizing the disparity as the 2024 TOU being "forced onto Plaintiffs").) But "disparity in bargaining power" is just one of the five factors courts weigh to determine whether procedural unconscionability exists under New York law. *See Gillman*, 73 N.Y.2d at 10–11. Plaintiffs do not discuss the other factors, (*see* Opp'n at 17–18), so they implicitly concede that "size and commercial setting," lack of "deceptive or high-pressured tactics," lack of "fine print in the contract," and their "experience and education" all favor enforcement here, *see Gillman*, 73 N.Y.2d at 10–11. *See also Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649-GHW, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) (explaining that plaintiffs' failure to argue *Gillman* factors "reinforce[d] the conclusion that the agreements were not procedurally unconscionable," and the lack of fine print "cut[] strongly against" such a finding); (Mem. at 16–17 (explaining that the class-action waiver here was conspicuous within the 2024 TOU)). Thus, to show procedural unconscionability, Plaintiffs must show that disparity in bargaining power outweighs the other four factors. Yet neither argument Plaintiffs make does this.

***"Take it or leave it."*** Plaintiffs argue that the class-action waiver is unconscionable because they "had no opportunity to negotiate any part of MLB's TOU when they created MLBtv [sic] and MLB.com accounts." (Opp'n at 17.) But Plaintiffs fail to identify anything besides their inability to negotiate that supposedly made their bargaining power unequal. The only case they cite for this argument involves a contracting party's lack of sophistication, (*see id.* (citing *Friedman*, 407 N.Y.S.2d at 1008)), and Plaintiffs never say they lack that, (*see* Opp'n at 17–18).

In any event, binding Second Circuit precedent holds that a "take it or leave it" contract is not necessarily unconscionable. "[I]t is plain" offering a contract "on a 'take it or leave it' basis

. . . is not sufficient under New York law to render the [contract] procedurally unconscionable." *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (cleaned up).

***Lack of notice.*** Plaintiffs' argument about lack of notice fails because it contradicts their binding admissions and lacks support in the record. Plaintiffs argue that the 2024 TOU is unenforceable because when they initially signed up for MLB.tv or MLB.com, a different Terms of Use was in force, and MLBAM "provides no evidence that it notified Plaintiffs of the 2024 amendments to [the] TOU." (Opp'n at 17.)

The Court should disregard this argument because it contradicts admissions in the complaint and in sworn declarations by counsel that Plaintiffs brought this lawsuit under the 2024 TOU. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985). And Plaintiffs allege and therefore admit that the 2024 TOU binds them. In their complaint, Plaintiffs allege that venue is "proper in this District because the MLB.tv Terms of Use states that, ***as to Plaintiffs' VPPA claims***, the exclusive jurisdiction is 'the federal and state courts in New York County, New York.'" (ECF No. 40 ("Compl.") ¶ 11 (italics omitted and emphasis added).)[2] The "Terms of Use" Plaintiffs refer to can only be the 2024 TOU. The text Plaintiffs quote appears only in the 2024 TOU, not in any previous Terms of Use. (*Compare* 2024 TOU § 12 (containing quoted text), *with, e.g.*, Ex. B, 2020 TOU § 11(5) (wording forum-selection clause differently).)[3] And only the 2024 TOU exempts VPPA claims from arbitration. (*Compare*

---

[2] Clifford alleges that he used MLB.com, but the same TOU governs MLB.com and MLB.tv. (*See* Ex. A, 2024 TOU § 1 (noting that the TOU applies to both MLB.tv and MLB.com), available at https://www.mlb.com/official-information/terms-of-use (Feb. 6, 2024); *see also* Mem. at 7 n.5 (noting that the Court can take judicial notice of the 2024 TOU).)

[3] 2020 TOU (as of Jan. 1, 2023) available at https://web.archive.org/web/20230101193103/https:/www.mlb.com/official-information/terms-of-use (updated Feb. 4, 2020) (retrieved Feb. 28,

2024 TOU § 11(1) (defining VPPA claims as non-arbitrable), *with* 2020 TOU § 11(1) (no such exception).) Plaintiffs' allegation is thus a binding judicial admission that the 2024 TOU applies to them. *See Bellefonte*, 757 F.2d at 528. Based on this admission, the Court should reject both Plaintiffs' lack-of-notice argument.

Henry's judicial admissions go even further because he has repeatedly represented that the 2024 TOU applies to him. Henry's original complaint contained the same venue allegation based on the 2024 TOU that appears in the operative complaint. (*See* ECF No. 1 ¶ 11.) When MLBAM asserted that the 2024 TOU applied in its first motion to dismiss, (*see* ECF No. 27 at 5–12), Henry did not dispute the point, (*see generally* ECF No. 29). In fact, his counsel swore under penalty of perjury that counsel "interpreted the new TOU to mean that MLB intends to resolve its VPPA claims on a class-wide basis. Thus, on February 26, 2024—just 20 days after MLB updated its TOU— . . . [Henry] institut[ed] this class action lawsuit." (*Id.* at 4 (citing Schwartzbaum Decl. ¶ 7).) Despite Plaintiffs' changed position about whether the 2024 TOU applies, counsel makes substantially the same sworn statement in Plaintiffs' response brief. (*See* Opp'n at 4.) Throughout this case, MLBAM has relied on Henry's multiple representations that the 2024 TOU applies to him. The Court should hold Henry to his judicial admissions and disregard his lack-of-notice argument. *See Bellefonte*, 757 F.2d at 528 (factual assertion in pleading is binding judicial admission); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (same for statement in brief).

Even if the Court allows Clifford to argue that he did not receive notice, this argument fails. Clifford argues that he did not receive notice of the revised TOU, constituting "oppression and unfair surprise." (Opp'n at 17–18 (citing *Hopkinton*, 77 F. Supp. 3d at 245).) But Clifford alleges

---

2025). The Court can take judicial notice of archived webpages. *See, e.g.*, *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022).

that he used MLB.com after February 6, 2024, when the 2024 TOU became effective. (Compl. ¶¶ 14, 59, 61.) When he allegedly accessed MLB.com after February 6, 2024, Clifford would have seen the following message:




(Ex. C.)[4] Like the initial prompt to sign up, this notice of the amended TOU is: (1) in a clear, uncluttered pop-up; (2) directly beside the "OK" button; (3) visible without scrolling; (4) with blue font denoting hyperlinks; (5) with the prompt saying, "[b]y continuing to use our services, you agree to the updated Privacy Policy and Terms of Use Agreement"; and (6) temporally connected to the action required to dismiss the pop-up window. *See* (Mem. at 14–15); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) (applying these factors), *R. & R. adopted as modified*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018). Based on his alleged use of MLB.com after February 6, 2024, Clifford received notice of and agreed to be bound by the 2024 TOU. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (being presented with an online contract and manifesting assent to it is binding, including under New York law).

Any disparity in bargaining power does not make the 2024 TOU unenforceable under New York law, and no other *Gillman* factor weighs in Plaintiffs' favor, so the Court should hold that the 2024 TOU's class-action waiver is not procedurally unconscionable.

**ii. Settled New York law defeats Plaintiffs' substantive-unconscionability argument.**

The Court should not reach the issue of substantive unconscionability because the 2024

[4] MLB.com Homepage (as of Feb. 7, 2024), available at https://web.archive.org/web/20240207235001/https://www.mlb.com/ (retrieved Feb. 24, 2025).

TOU is not procedurally unconscionable, (*see supra* at 4–8), and Plaintiffs do not argue unconscionability based on the substantive element alone, *see* (Opp'n at 16–19); *Gillman*, 73 N.Y.2d at 10 (requiring a plaintiff to show procedural ***and*** substantive unconscionability). If the Court analyzes substantive unconscionability, however, it should hold that the class-action waiver is not substantively unconscionable. A contract is substantively unconscionable only if its terms are "'grossly unreasonable' and favor the party seeking to enforce the contract." *See Doe #1*, 440 F. Supp. 3d at 355–56 (citing *Mizrahi v. Mizrahi*, 99 N.Y.S.3d 63, 66 (App. Div. 2019)); (*accord* Opp'n at 18). Plaintiffs concede, as they must, that the class-action waiver applies equally to both sides. (Opp'n at 18.) And under *Doe #1*, a case Plaintiffs cite, the waiver's mutual nature indicates that it is not substantively unconscionable. *See* 440 F. Supp. 3d at 357 (upholding class-action waiver on this basis). But Plaintiffs nevertheless argue that the waiver here is unconscionable because it gives MLBAM "the exclusive practical power to engage" in a class-wide settlement. (*See* Opp'n at 18.) Plaintiffs' argument is foreclosed by New York law and incorrect on the facts.

Plaintiffs do not dispute that courts "have ***uniformly held*** that class action waivers are not unconscionable" under New York law. (Mem. at 15 (quoting *Nayal*, 620 F. Supp. at 573 (emphasis added)); *see generally* Opp'n.) Instead, they cite cases where courts found contracts that waived ***substantive*** rights unconscionable. *See* (Opp'n at 18–19); *Eisen*, 244 F. Supp. 3d at 345 (finding arbitration clause unconscionable because it "purport[ed] to renounce wholesale the application of any federal law to the plaintiffs' federal claims" (cleaned up)); *Brennan*, 198 F. Supp. 2d at 384 (finding arbitration clause unconscionable because it "denied [the plaintiff] the right to proceed in court on her pending sexual harassment claim").[5] The class-action waiver in the 2024 TOU, like

[5] *Brennan* also held that the contract was unconscionable because it permitted the employer to "bind[] employees to a contract they may never have seen." 198 F. Supp. 2d at 384. As MLBAM

other class-action waivers, limits the parties' rights to use certain procedures, but it allows them to bring any substantive legal claim in the designated forum. New York law allows this. *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("Under New York law, a contractual proscription against class actions is neither unconscionable nor violative of public policy." (cleaned up)).

Plaintiffs also identify potential concerns inherent in all class-wide settlements, not caused by the 2024 TOU's class-action waiver. They argue that "[t]he TOU affords consumers like Plaintiffs no mechanism to engage with class-wide resolution unless MLB suggests it, empowering Defendant to effectuate a reverse-auction for the lowest-valued settlement." (Opp'n at 18.) Plaintiffs claim that "[a]t any point in the settlement process, . . . MLB may simply invoke the Class Action Waiver to dispose of the class-wide settlement." (*Id.*) Plaintiffs' baselessly assert that MLBAM will try to cut firms out of a class deal or engage in other misconduct. But Plaintiffs ignore that in ***every*** settlement negotiation, with or without a class-action waiver, ***any*** party can walk away from the bargaining table before a binding agreement is reached. Further, the risk of a "reverse-auction" is inherent in ***every*** class-wide settlement. *See, e.g.*, *Blyden v. Mancusi*, 186 F.3d 252, 270 n.9 (2d Cir. 1999) (discussing the possibility of a "reverse-auction" in a class-wide settlement). This risk is mitigated by procedural safeguards that apply to any class-wide settlement, including a hypothetical class-wide VPPA settlement.[6] In other words, the concerns Plaintiffs raise are not a result of any substantive unconscionability in the terms of the 2024 TOU's class-action

---

explained above, amendments to its TOU are effective only after notice to a user, (*see supra* at 7–8), so *Brennan*'s reasoning on this point does not apply here.

[6] To name two safeguards, "the district court has a fiduciary responsibility to ensure that [a class-wide] settlement is fair and not a product of collusion," *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (cleaned up), and class members have a right to opt out of class-wide settlements for damages, *see* Fed. R. Civ. P. 23(c)(2)(B), (e)(4).

waiver, but rather are inherent in class-wide settlements generally.

Class-action waivers are proper under New York law, *see Tsadilas*, 786 N.Y.S.2d at 480; (Mem. at 15–16), and the class-wide settlement exception in the 2024 TOU does not support finding the class-action waiver here any less enforceable than waivers routinely upheld under New York law. The Court should hold that the class-action waiver is not substantively unconscionable and that it is enforceable here.

**b. Because the class-action waiver unambiguously bars Plaintiffs' class claims, the Court must enforce it without relying on extrinsic evidence.**

After determining that the 2024 TOU's class-action waiver is enforceable, the Court should apply the waiver because it is unambiguous. Under New York law, if a contract is "complete, clear and unambiguous on its face," then "the plain meaning of its terms" controls. *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569–70 (2002). "Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide." *Id.* "Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation." *Brad H. v. City of New York*, 17 N.Y.3d 180, 186 (2011). But contradictory terms in a contract do not necessarily create ambiguity. For example, "clauses similar to the phrase 'notwithstanding any other provision' trump conflicting contract terms." *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015) (cleaned up). Because the 2024 TOU's class-action waiver is unambiguous, the Court should apply it without considering extrinsic evidence. *See Greenfield*, 98 N.Y.2d at 569–70.

**i. The text of the class-action waiver is unambiguous, so the Court should not consider extrinsic evidence.**

The class-action waiver is unambiguous because it is susceptible to only one reasonable interpretation. *See Brad H.*, 17 N.Y.3d at 186. That provision, titled "**Class Action Waiver**," reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(2024 TOU § 11.) There is no ambiguity in this provision, whether read clause-by-clause or as a whole. The first sentence requires the parties to resolve disputes on an individual basis, not in a class action. The second waives both parties' right to bring or participate in such an action. The third carves out class-wide settlement from the waiver. The meaning of each clause is clear, and when read in combination, the three clauses explain the scope of the waiver, which extends to all class procedures except class-wide settlement. Because the class-action waiver is unambiguous, the Court must enforce "the plain meaning of its terms" as written. *See Greenfield*, 98 N.Y.2d at 569–70; *see also, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (striking class allegations due to valid, enforceable class-action waiver).

The cases Plaintiffs cite do not suggest otherwise. (*See* Opp'n at 11–13.) Plaintiffs cite several cases for governing legal standards only; none involved language similar to the 2024 TOU's class-action waiver.[7] Other cases Plaintiffs cite analyze whether the meaning of a term itself is ambiguous, not whether tension between unambiguous terms creates ambiguity.

---

[7] *See White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 266 (2007) ("total disability" in disability income policy unambiguous); *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (provisions in indenture agreement were unambiguous or it was immaterial); *State v. Home Indem. Co.*, 66 N.Y.2d 669, 672 (1985) ("The People of the State of New York as interests may appear" in insurance contract was ambiguous); *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567–68 (2d Cir. 2011) ("arising out of" in insurance contract was unambiguous).

In *Faulkner v. National Geographic Society*, the court found ambiguity where contracts did not specify what constituted a further use of pictures. 452 F. Supp. 2d 369, 376–77 (S.D.N.Y. 2006), *judgment entered*, No. 97 CIV 09361 LAK, 2006 WL 2992834 (S.D.N.Y. Oct. 20, 2006), and *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008). In *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, the court found no ambiguity in language specifying the standard the defendant's products had to meet. 809 N.Y.S.2d 70, 73–74 (App. Div. 2006). Neither case involved a "notwithstanding" clause or other language similar to the contract here. Finally, Plaintiffs cite a labor-law case to argue that "[u]nder New York law, a waiver of rights must be 'clear, unmistakable and without ambiguity,'" (Opp'n at 13 (quoting *Pro. Staff Cong.-City Univ. of N.Y. v. N.Y. State Pub. Emp. Rels. Bd.*, 7 N.Y.3d 458, 465 (2006))), but Plaintiffs cite no case applying this standard to a consumer TOU, and even assuming that standard applies here, the unambiguous class-action waiver satisfies it, as discussed above.

Thus, the Court should hold that the "notwithstanding" clause in the class-action waiver eliminates any tension between terms and renders it unambiguous. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439–40 (2d Cir. 1995) (reversing decision to submit contract-interpretation question to jury when "notwithstanding" clause made contract unambiguous).

**ii. Plaintiffs unsuccessfully attempt to introduce ambiguity.**

Plaintiffs cannot dispute MLBAM's reading of the class-action waiver. Indeed, they agree that by its plain terms, "[t]he TOU ***waives*** the parties' rights to litigate VPPA claims on a class basis while simultaneously ***retaining*** the parties' rights to participate in a class-wide settlement." (Opp'n at 11.) Despite being able to succinctly and accurately summarize the effect of the waiver, Plaintiffs argue that the class-action waiver is "inherently contradictory" and the notwithstanding clause ***increases*** its ambiguity. (*See id.* at 11–13.) The Court should reject Plaintiffs' efforts to inject ambiguity into a provision where there is none.

Plaintiffs first incorrectly argue that the terms of the class-action waiver are "inherently contradictory" and therefore ambiguous "because a 'class-wide settlement' may only result from filed motions for preliminary and final class certification under Rule 23." (*Id.* at 11 (citations omitted).) Plaintiffs cite only basic principles of class-action law to support this argument. (*See id.* at 11–12 & n.5.) Although a class-wide settlement must be certified under Rule 23, that does not mean that parties cannot waive certain Rule 23 procedures while retaining others, and Plaintiffs do not say why they think it does. (*See id.* at 11–12.) Parties routinely enter—and courts approve—class-wide settlements where class-action waivers might otherwise prevent class litigation. (*See* Mem. at 19–20.) This practice establishes that there is nothing "inherently contradictory" about waiving some class procedures under Rule 23 while retaining others. (*Contra* Opp'n at 11–12.)

Plaintiffs next discuss the "notwithstanding" clause, which they concede under New York law trumps conflicting contract terms. (*Id.* at 12); *see Beardslee*, 25 N.Y.3d at 158. Despite binding New York precedent to the contrary, they argue that the "notwithstanding" clause here ***increases*** ambiguity for two reasons. ***First***, they argue that "the right to 'participate' in a class-wide settlement includes the right to 'bring or participate' in a class action," so the "notwithstanding" clause's exception swallows the waiver entirely and "allows consumers to seek class treatment of VPPA claims" for ***any*** purpose. (*See* Opp'n at 12.) ***Second***, Plaintiffs suggest that the class-action waiver is ambiguous because the notwithstanding clause does not delineate every single procedure that parties may undertake "in furtherance of" a class-wide settlement. (*See id.* at 12–13.)

The plain meaning of the "notwithstanding" clause thwarts Plaintiffs' attempts to find ambiguity where none exists. Plaintiffs do not quote the full text of the class-settlement exception in the argument section of their brief, so MLBAM repeats it here: "Notwithstanding the foregoing, the parties retain the right to participate in a class-wide settlement." (2024 TOU § 11.) Under this

clause, the parties can use class procedures to "participate in a class-wide settlement," but not otherwise. This straightforward reading eliminates Plaintiffs' manufactured ambiguity. The exception does not swallow the entire class-action waiver because it applies only if the parties are "participat[ing] in a class-wide settlement." (*Id.*; *contra* Opp'n at 12.) And Plaintiffs are mistaken that "the TOU does not answer whether" parties may take certain actions, (*see* Opp'n at 12–13), because the "notwithstanding" clause allows the parties to "participate in a class-wide settlement." Thus, if Plaintiffs take some action ***to participate in*** such a class-wide settlement, they may do so, but because the parties have not reached a settlement here, Plaintiffs class claims remain barred.

The Could should ignore Plaintiffs' attempts to distract from the plain meaning of the class-action waiver. That plain meaning and New York contract law show that the class-action waiver is unambiguous.

**iii. Routine class-action practice reinforces that the waiver is enforceable.**

Finally, Plaintiffs' discussion of cases where parties entered class-wide settlements despite the existence of class-action waivers only bolsters the conclusion that the class-action waiver here is enforceable. In its opening brief, MLBAM explained that parties subject to class-action waivers regularly enter class-wide settlements. (Mem. at 19–20.) Plaintiffs identify two factual differences between those cases and the waiver here: those cases involved arbitration agreements demonstrating the intent to give up "class procedures to litigate and settle disputes," and the class-action waivers in those cases did not "reserve the right to participate in a class-wide settlement." (Opp'n at 13.) But MLBAM acknowledged these differences, (*see* Mem. at 19–20), and Plaintiffs do not explain ***why*** these differences matter nor, if they matter, why they support finding the class-action waiver ambiguous or unenforceable, (*see* Opp'n at 13). The Court should, as a result, reject Plaintiffs' arguments on these points. *Cf. Tech. Ins. Co., Inc. v. Phila. Indem. Ins. Co.*, 642 F. Supp.

3d 445, 465 (S.D.N.Y. 2022) (rejecting argument based on factual difference in cited case where the party "fail[ed] to explain why that is a meaningful distinction").

Plaintiffs do, however, concede three key points drawn from these cases that support finding the waiver here enforceable. ***First***, they agree that, consistent with Rule 23, parties can first agree to waive all class procedures, then later set aside the waiver to enter a class-wide settlement. (*See* Opp'n at 13.) ***Second***, they concede that parties may enter a class-wide settlement despite having given up their right to a judicial forum completely. (*See id.*) ***Third***, Plaintiffs do not dispute that if parties try and fail to settle on a class-wide basis, the underlying waiver can still be enforced. (*See id.*; Mem. at 20 (noting that the prospect of later enforcement of a waiver is a reason courts approve class-wide settlements).) Putting these concessions together, Plaintiffs agree that a defendant can elect not to enforce a class-action waiver in hopes of settling on a class-wide basis, but if there is no settlement, the defendant can enforce the waiver. (*See* Opp'n at 13.)

The 2024 TOU's class-action waiver does exactly what Plaintiffs agree is permissible. (*See* 2024 TOU § 11.) Under class-action waiver, MLBAM and the user agree to proceed in individual litigation, and they also agree that they may choose to settle disputes on class-wide basis under Rule 23. (*See* Mem. at 18–19 (describing how the waiver operates).) There are only two immaterial differences between the effect of the 2024 TOU's class-action waiver and the waivers in the cases MLBAM cited in its opening brief: (1) parties to the 2024 TOU select individual litigation rather than individual arbitration as the default forum; and (2) the parties agree at the outset, not after a dispute arises, that they may waive the class-action waiver for purposes of class-wide settlement. Plaintiffs offer no reason why parties cannot agree when signing a contract to do what parties routinely agree to do in court, (*see* Opp'n at 13), and no such reason exists. Thus, the 2024 TOU's class-action waiver does not contradict Rule 23.

Much of Plaintiffs' argument rests on the mistaken assumption that the class-action waiver here is inconsistent with normal class-action practice. (*See* Opp'n at 11–12 (discussing supposed contradiction in the class-action waiver).) But as MLBAM has shown, the waiver here matches ordinary practice, which reinforces that the waiver is enforceable. (*See* Mem. at 19–20.)

*   *   *

Because the 2024 TOU's class-action waiver is unambiguous, New York law requires the Court to enforce it without considering extrinsic evidence. *See Greenfield*, 98 N.Y.2d at 569–70.

**c. Even if the Court considers extrinsic evidence, that evidence shows that the parties agreed to waive class procedures, except for settlement purposes.**

Even if the Court holds that the class-action waiver is ambiguous, it can still interpret that provision as a matter of law and enforce the waiver now. Contractual ambiguity presents a question of fact only "when a term or clause is ambiguous ***and*** the determination of the parties' intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence"—otherwise, it remains a question of law appropriate for resolution on the pleadings. *Amusement Bus. Underwriters, a Div. of Bingham & Bingham, Inc. v. Am. Int'l Grp., Inc.*, 66 N.Y.2d 878, 880–81 (1985) (emphasis added) (citations omitted). The extrinsic evidence here reinforces rather than contradicts the plain meaning of the contract.

Plaintiffs' extrinsic evidence shows that the parties agreed not to engage in class procedures, except for purposes of class-wide settlement. They first focus on purported inferences about MLBAM's intent based on its decision to change its TOU in February 2024 to exempt VPPA claims from its arbitration clause and to exempt class-wide settlements from its continuing bar on class-wide adjudication. (Opp'n at 14–15.) They suggest that this TOU amendment shows that the "parties' intent is to resolve their VPPA claims in federal court on a class wide basis and, therefore, to allow consumers to use class procedures to achieve that aim." (*Id.* at 14.) But even according to

Plaintiffs, the parties' intent is to use a class-wide ***settlement***, not any other class procedure, to achieve that resolution: "MLB's intent is clear: . . . MLB hopes to extract a cheap class deal that resolves all its VPPA liability." (*Id.* at 15.) Plaintiffs criticize MLBAM for supposedly "creat[ing] a race to the bottom" among VPPA claimants to achieve this "class deal," (*id.*), but the class-action waiver is neither unconscionable nor otherwise unenforceable for the reasons explained above, (*see supra* at 3–17). Nor do Plaintiffs explain why their baseless assertions as to MLBAM's motives are relevant to the interpretation of the 2024 TOU, so they forfeit any such argument. *See United States v. Stegemann*, 701 F. App'x 35, 38 (2d Cir. 2017).

The other piece of extrinsic evidence on which Plaintiffs focus—the parties' failed mediation in July 2024—is likewise consistent with the terms of the parties' agreement. Plaintiffs acknowledge as much in their response brief, stating that "MLB's new TOU reserves both its subscribers' and MLB's right to settle all the VPPA claims on a class-wide basis." (Opp'n at 14–15.) But all Plaintiffs' evidence reveals is that MLBAM attempted to settle this lawsuit, which was then brought by a single named plaintiff (Henry) who proposed to represent a class. The class-action waiver permits exactly that. (*See supra* at 11–15.) Plaintiffs cite no evidence suggesting that the parties intended to use other class procedures.

Because no credibility determination or inference from the extrinsic evidence could change the meaning of the class-action waiver, even if the Court determines that it is ambiguous, the Court should interpret and enforce the contract as a question of law. *See Amusement Bus. Underwriters*, 66 N.Y.2d at 880–81. At best, the extrinsic evidence Plaintiffs offer could only confirm that the parties' agreement allowed class-wide settlement but no other class procedures.

Nor should the Court construe the class-action waiver against the drafter, MLBAM. As Plaintiffs acknowledge, (Opp'n at 15–16), that principle applies only when a term is ambiguous

***and*** "other guides to interpretation have been exhausted and the court concludes that there remain two reasonable interpretations of the contract." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1050 (2d Cir. 1989) (citations omitted) (applying New York law). Here, considering the extrinsic evidence resolves any ambiguity in MLBAM's favor because the only reasonable reading is that the 2024 TOU preserves class-wide settlement while waiving other class procedures.

**d. Because any reading of the class-action waiver shows that Plaintiffs agreed not to bring their class claims, the Court should strike their class allegations.**

The Court should grant MLBAM's motion to strike because the class-action waiver bars Plaintiffs from bringing their VPPA claims as a class action. Rule 23 instructs courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 23(c)(1)(A)). A motion to strike class allegations that "addresses issues separate and apart from the issues that will be decided on a class certification motion" is not premature. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)); (*see also* Mem. at 15–16 (citing cases granting motions to strike class allegations after finding class waivers valid and enforceable)). Even Plaintiffs agree that "where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis," the Court should strike class allegations. (Opp'n at 9 (quoting *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 290 (S.D.N.Y. 2024)).)

The class-action waiver here unambiguously bars Plaintiffs' class claims, and their proposed extrinsic evidence does not change that provision's meaning. (*See supra* at 11–19.) The class-action waiver thus "clearly precludes the possibility that [Plaintiffs'] claim may be brought

on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Contrary to Plaintiffs' assertion, there are no "factual and legal disputes to be decided at a later point in the litigation," (Opp'n at 9 (cleaned up)), and the cases they cite are inapt. In *Staley v. Hotel 57 Services, LLC*, the court deferred interpreting the class-action waiver until after discovery, 680 F. Supp. 3d 440, 445–48 (S.D.N.Y. 2023), which is unnecessary here. (*See supra* at 11–17.) And in other cases, the plaintiff was not subject to a class-action waiver or that point was disputed, and the courts denied motions to strike based on the possibility that ***other*** class members' waivers might preclude class certification. *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 693–97 (S.D.N.Y. 2015); *Rothstein v. Auto Club S.*, No. 15 CIV. 9391 (LAK) (RLE), 2017 WL 11455316, at *4–5 (S.D.N.Y. Mar. 16, 2017), *R. & R. adopted*, No. 15-CV-9391 (LAK), 2017 WL 1373914 (S.D.N.Y. Apr. 13, 2017); *Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966, at *6–7 (S.D.N.Y. Mar. 21, 2019).[8] Unlike in these cases, it is undisputed that Plaintiffs each agreed to a class-action waiver, and MLBAM's motion raises an issue "separate and apart" from class certification because MLBAM's ability to enforce the waiver against each Plaintiff is unrelated to whether a different plaintiff could become a class representative. *See Reynolds*, 136 F. Supp. 3d at 512 (quotation omitted).

Plaintiffs waived their right to bring a class action, except for purposes of class-wide settlement. No legal or factual disputes warrant waiting to enforce the waiver, and failing to strike the class allegations now "would prejudice [MLBAM] by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal

---

[8] *Emilio* was similar but involved a twist: an arbitrator had ruled that the plaintiff could bring his class claim in court, so allowing the defendant to raise other class members' arbitration agreements as a defense "would render the Arbitrator's judgment a nullity." 68 F. Supp. 3d at 519.

Practice and Procedure § 1383 (3d ed.)). The Court should strike Plaintiffs' class allegations under Rule 12(f).

## II. The Court should dismiss Plaintiffs' complaint because they fail to state a claim and lack standing.

### a. Plaintiffs fail to allege disclosures of *their* information.

Plaintiffs' complaint falls short of Rule 12(b)(6) and Rule 12(b)(1) standards because it does not include factual allegations that their information in particular was disclosed. (*See* Mem. at 20–33.) The opposition does not point to a single factual allegation showing that any specific disclosure occurred. Instead, Plaintiffs fall back on the same conclusory allegations that fail to state a claim under Rule 12(b)(6), and they cite distinguishable case law that does not support standing under Rule 12(b)(1).

***First***, Plaintiffs attempt to cast their conclusory allegations as the factual ones required to satisfy pleading standards under Rule 12(b)(6). They begin by pointing to their allegations that "during the relevant period, ***they*** 'requested, obtained, and viewed Video Media' via the MLB Websites and Apps" while having Facebook accounts, and that MLBAM "knowingly caused Personal Viewing Information, including FIDs, concerning ***Plaintiffs*** and Class members to be disclosed to Facebook." (Opp'n at 22–23 (quoting Compl. ¶¶ 56, 61, 75).) But these allegations merely echo the statute. *Compare* (Compl. ¶¶ 56, 61), *with* 18 U.S.C. § 2710(a)(3) (referring to "a person as having requested or obtained specific video materials"); *and compare* (Compl. ¶ 75), *with* 18 U.S.C. § 2710(b)(1) (referring to disclosures of "information concerning any consumer"). Recitations of "the elements of a claim" like these do not suffice under Rule 12(b)(6). *See Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014). Plaintiffs otherwise rely on their general allegations about how the Facebook Pixel—the website tool they claim is responsible for the disclosure of users' data—supposedly functions. (Opp'n at 22–23 (citing Compl. ¶¶ 38–53, 56,

61).) But as MLBAM has explained, these allegations amount to a request for an advisory opinion based "upon a hypothetical state of facts" about the Facebook Pixel, which the Court cannot provide. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation marks and citations omitted); (*see also* Mem. at 25–26).

Plaintiffs cite no case to support the sufficiency of their pleading and fail to engage with MLBAM's on-point authority. (*See* Opp'n at 22–23 (citing no cases).) They ignore *Beagle v. Amazon.com, Inc.*, where the court adopted an argument just like MLBAM's that a VPPA complaint must contain factual allegations showing "that a disclosure has ***affirmatively*** taken place," not just allegations consistent with "the mere ***possibility*** that information could be disclosed." No. C24-03136JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (cleaned up). Like in *Beagle*, Plaintiffs lack factual allegations showing that MLBAM affirmatively disclosed ***their*** data. *See id.* Their allegations consistent with the "mere ***possibility***" of a disclosure are insufficient. *See id.*; (*see also* Mem. at 24–25).

***Second***, Plaintiffs cite several cases addressing standing requirements under Rule 12(b)(1), but none addresses the argument MLBAM raises here: that Plaintiffs fail to plausibly allege that any disclosures of their data occurred at all. In *Collins*, for example, the defendant argued that the plaintiff lacked standing because he failed to allege details like "the dates he requested or obtained" videos. 721 F. Supp. 3d at 281. The court found "these details" not necessary "to allege that [the plaintiff] suffered an injury in-fact." *Id.* at 281–82. By contrast, Plaintiffs' complaint lacks not just details but ***any*** factual allegations supporting a disclosure of their individual information. The court in *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023), likewise addressed arguments about failures to plead details and found the complaint insufficient under Rule 12(b)(6) even while upholding standing under Rule 12(b)(1). Plaintiffs also cite *Austin-Spearman v. AMC*

*Network Entertainment LLC*, but that case addressed whether a VPPA plaintiff had to plead "harm resulting from [the] disclosure rather than simply [the] disclosure itself." 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015). The issue here, by contrast, is whether Plaintiffs have adequately alleged the "disclosure itself." *See id.*; *see also id.* at 668, 671 (finding standing but dismissing claim under Rule 12(b)(6) for failure to plead key VPPA element).

Whether for lack of standing or failure to state a claim, the absence of any factual allegations showing that a disclosure occurred means Plaintiffs cannot sustain their VPPA claims.

**b. Plaintiffs fail to allege that their Facebook profiles are publicly visible.**

Plaintiffs' VPPA claims also fail under Rule 12(b)(6) because they have not alleged that their Facebook profiles are publicly visible. Without this allegation, Plaintiffs do not credibly plead that purported disclosures of their FIDs would reveal "personally identifiable information" ("PII") that an ordinary person could use to identify them as required to state a VPPA claim. (*See* Mem. at 26–30.)

Plaintiffs' opposition ignores MLBAM's point, (Opp'n at 23–24): that their failure to plead that their Facebook profiles are public warrants the dismissal of their VPPA claims. (*See* Mem. at 27–30.) Plaintiffs instead focus on a divide in the case law already acknowledged and addressed in MLBAM's opening brief. (*Compare* Mem. at 27–29, *with* Opp'n at 23–24.) As MLBAM explained, courts are split over whether an FID alone constitutes PII or whether VPPA plaintiffs also must plead factual allegations supporting that the Facebook profiles corresponding with those FIDs can be used to identify them. (*See* Mem. at 27–29.) MLBAM's opening brief showed why the Court should follow the better-reasoned decisions finding that a VPPA plaintiff must plead facts supporting that they, personally, would be identified by any supposed transmissions of their FIDs to state a claim. (*See id.* at 27–28 (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857

(C.D. Cal. 2024); *Smith v. Trinity Broad. of Tex., Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024)).)

Nor does Plaintiffs' allegation that their Facebook profiles contained their "real name[s] and other PII" suffice to meet this standard. (*See* Opp'n at 24 (cleaned up) (quoting Compl. ¶¶ 13, 15, 42).) As MLBAM's opening brief explained, in addition to pleading that their Facebook profiles contain identifying information, Plaintiffs also must plead that this identifying information is contained on ***public*** Facebook profiles accessible to an ordinary person. (Mem. at 26–30.) Because Plaintiffs undisputedly have not alleged that their Facebook profiles are public, their VPPA claims fail.

**c. Clifford fails to plausibly allege that he is a "consumer."**

Clifford's individual VPPA claim separately fails because he lacks factual allegations to show that he qualifies as a "consumer" for VPPA purposes under Rule 12(b)(6). 18 U.S.C. § 2710(a)(1); (*see also* Mem. at 32–33). Clifford does not dispute that he has alleged creating a free account on MLB.com rather than subscribing to an online newsletter, like the plaintiff recently found to be a VPPA "consumer" by the Second Circuit in *Salazar*, or to another good or service. (*See* Opp'n at 25 (citing *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024).) Clifford nevertheless argues that his alleged registration with MLB.com qualifies him as a consumer. (*See id.*) It does not.

Clifford's argument again fails to address MLBAM's core argument: that a signup with MLB.com is fundamentally different from a subscription to a newsletter or other good or service. MLB.com is a free website, and its entire contents are accessible to the public with or without a subscription. (*See* Mem. at 4, 11–12, 33.) Contrary to Clifford's contention, (*see* Opp'n at 25), the *Salazar* court expressly declined to hold that a "video-watcher who does not sign up for [an] online newsletter" qualifies a "consumer." *Salazar*, 118 F.4th at 552 n.14. As other courts have

held, a signup with MLB.com, which offers no "future and recurrent benefit," and instead offers only publicly available digital content, does not qualify Clifford as a "consumer." *See Austin-Spearman*, 98 F. Supp. 3d at 669 (dismissing VPPA claim on this basis under Rule 12(b)(6)).

Nor does Clifford's allegation that "he receive[d] emails and other digital content from MLB.com" save his VPPA claim. (Compl. ¶ 59.) For one thing, MLB.com offers no "digital content" other than what is available to the public, (*see* Mem. at 4, 11–12, 33), and "viewing . . . public content" on MLB.com "is not enough to qualify as a consumer under the VPPA." *Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023). For another, allegedly receiving "emails" also does not make Clifford a "consumer." Clifford has not alleged that these emails amount to a benefit that he sought to obtain in exchange for his information, rather than miscellaneous communications or advertisements, for example. (*See* Compl. ¶ 59 (mentioning "emails" with no further details).) And Clifford cites no case to show that the mere receipt of "emails" makes someone a "consumer." (*See* Opp'n at 25.)

Clifford alleges no future and recurrent benefit that would qualify him as a "consumer" under the VPPA. His VPPA claim should be dismissed on this basis as well.

## CONCLUSION

Based on a binding, unambiguous class-action waiver in the 2024 TOU that Plaintiffs concede applies to them, the Court should strike Plaintiffs' class allegations under Rule 12(f). The Court should also dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1).

Dated: February 28, 2025

Respectfully submitted,

By: *S/ Andrew Rima*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 28, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Andrew Rima*
Andrew Rima

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing document complies with this Court's word count requirements and contains 8,364 words. Pursuant to Local Rule 7.1(c), this is exclusive of the caption, table of contents, table of authorities, signature block, and required certificates.

*S/ Andrew Rima*
Andrew Rima