

Shamis & Gentile, P.A.
14 NE 1st Ave, Suite 1205 • Miami, FL 33132
Telephone 305-479-2299 • Fax 786-623-0915

May 21, 2025

**VIA CM/ECF**
Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *Henry v. Major League Baseball Advanced Media, L.P.*, No. 1:24-cv-01446-GHW-GWG**

Dear Judge Gorenstein,

Plaintiff Bryan Henry ("Plaintiff") submits this letter in accordance with your Order inviting the parties to provide their views of the effect on this case of the Second Circuit's recent opinion in *Solomon v. Flipps Media Inc.*, No. 23-7597, 2025 WL 1256641 (2d Cir. May 1, 2025).

"It has often wisely been said that every judicial opinion is to be read with regard to the facts of the case as understood by the court, and the question actually decided." *N.L.R.B. v. Cities Serv. Oil Co.*, 129 F.2d 933, 937 (2d Cir. 1942); *see also Banana Distribs., Inc. v. United Fruit Co.*, 27 F.R.D. 403, 411 (S.D.N.Y. 1961) ("It is of course elemental that 'the authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court.'"). *Solomon* does not require dismissal of the Complaint, ECF No. 40, because it applied the motion to dismiss standard to a dissimilar complaint with materially different allegations than those alleged by Plaintiff Henry. These pleading differences mandate a different result.

Defendant argues *Solomon* provides binding authority in support of MLBAM's pending motion to dismiss based on Plaintiffs' failure to allege the disclosure of PII." ECF No. 47 ("Notice") at 1. While Defendant is correct that *Solomon* "adopted the 'ordinary person' standard used in the Third and Ninth Circuits to assess whether disclosed information constitutes PII for VPPA purposes," *id.* at 2, Defendant is wrong to suggest that the Complaint does not meet that standard. *Solomon* is not "binding precedent" requiring dismissal of this action because the Second Circuit's decision only applies the ordinary person standard to the factual allegations of that complaint. By comparison, Plaintiff's Complaint sufficiently alleges that Defendant knowingly

shares with Facebook "the kind of information that would readily permit an ordinary person to identify a specific individual's video watching behavior." *Solomon*, 2025 WL 1256641, at *7.

The Second Circuit's analysis of the *Solomon* complaint focuses on "an 'exemplar screenshot' depicting the transmission that FITE sends Facebook via the Pixel's PageView." 2025 WL 1256641, at *3. The Second Circuit did not hold that a Facebook ID can never constitute PII, as Defendant implies. Notice at 1–2. Instead, the Second Circuit focused on (1) the way the Facebook ID was embedded within the exemplar screenshot which made it difficult for an ordinary person to understand "that the phrase was a person's FID," *Solomon*, 2025 WL 1256641, at *10–11; and (2) on the *Solomon* complaint's failure to include "any details about *how* an ordinary person would use an FID to identify Solomon." *Id.* at *11 (emphasis in original). Plaintiff's Complaint is materially different in both the way it describes the information that Defendant sent to Facebook and how an ordinary person could use that information to identify Plaintiff and his video watching history on Defendant's website.

***First***, unlike the *Solomon* complaint, Plaintiff's Complaint does not include any screenshots allegedly depicting the transmission that Defendant sends Facebook via the Pixel's PageView. Instead, the Complaint repeatedly alleges that Defendant "discloses to Facebook the digital subscribers' viewed Video Media, and most notably, *the digital subscribers' FID*." Compl. ¶ 4 (emphasis added); *see also id.* ¶ 43 ("When a Facebook user with one or more personally identifiable FID cookies on his or her browser views Video Media from MLB.com or MLB.tv on the website or app, MLB.com and MLB.tv, through their website code, causes the digital subscriber's identity and viewed Video Media to be transmitted to Facebook by the user's browser."). The Complaint defines "Personal Viewing Information" to include the data sent by Defendant to Facebook including Plaintiff's FID and the Video Media viewed, *id.* ¶ 1, and explains that Defendant shares that information with Facebook "*as one data point*" that grants Facebook "knowledge of the Video Media each of [Defendant's] subscribers view on the *MLB.com* and *MLB.tv* site." *Id.* ¶ 5. Thus, the Second Circuit's observations of how this information was allegedly disclosed in the *Solomon* complaint are irrelevant to Plaintiff's Complaint, which lacks any such "exemplar."

This reasoning applies equally to the Complaint's description of the information Defendant transmitted about the videos Plaintiff watched. The "exemplar screenshot" in the *Solomon* complaint depicts the transmission of "some twenty-nine lies of computer code, and the video title is indeed contained in Box A following the GET request[,]" but "[t]he words of the title" are "interspersed with many character, numbers, and letters. It is implausible that an ordinary person would like at the phrase" depicted in that complaint "and understand it to be a video title." 2025 WL 1256641, at *10. Plaintiff's Complaint, by contrast, clearly alleges that "*MLB.com* and *MLB.tv* sends to Facebook the video content name" and "its URL." Compl. ¶ 41; *see also id.* ¶ 79. Construing these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court should conclude they meet the ordinary person standard.

***Second***, the Second Circuit criticized the *Solomon* complaint because it "merely states that entering 'facebook.com/[Solom's FID]' into any web browser would result in Solomon's personal Facebook profile, and that '[t]his basic method of accessing a person's Facebook profile is generally and widely known among the public." 2025 WL 1256641, at *11. But Plaintiff's Complaint does more. Plaintiff alleges that the FID "uniquely identifies an individual's Facebook

2

user account (containing, among other things, their real name, photograph, and personally identifying information") and that "Facebook—or any ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile." Compl. ¶ 5; *see also id.* ¶ 42 n.2 ("Facebook's Real Name Policy requires users to use their authentic name— the name they go by in daily life—on their profiles. The policy is intended to ensure users know who they are connecting with, promote accountability, and reduce anonymous abuse."). And, in addition to alleging that the "FID is a unique and persistent identifier that Facebook assigns to each user" *id.* ¶ 42, the Complaint alleges:

> Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. *Facebook admits as much on its website*. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile. Simply put, with only an FID and the video content and name and URL— all of which Defendant knowingly and readily provides to Facebook without any consent from the digital subscribers—any ordinary person can learn the identity of the digital subscriber and the specific video or media content they requested on the *MLB.tv* website.

*Id.* ¶ 44 (emphasis added).

As shown above, Plaintiff's Complaint incorporates by reference the portion of the Facebook website which explains how an FID may be used by an ordinary person to identify an individual's identity. The Court may take judicial notice of the Facebook website, which explains exactly how an ordinary person can use an FID to quickly and easily identify a person's Facebook profile. *See* https://www.facebook.com/help/211813265517027/. Indeed, Defendant's motion to dismiss argues that "Courts in this district routinely take judicial notice of documents the complaint incorporates by reference." ECF No. 27 at 5 (citing *AT&T Corp. v. Atos Solutions & Servs., Inc.*, No. 23-Vo01395 (LJL), 2023 WL 8878935, -- F. Supp. 3d --, at *5 (S.D.N.Y. Dec. 22, 2023)). These detailed allegations explaining "*how* an ordinary person would use an FID to identify [Plaintiff]" distinguish Plaintiff's Complaint from the deficient *Solomon* complaint. 2025 WL 1256641, at *11.

In conclusion, the *Solomon* decision applied the pleading standard to the specific allegations in that complaint to conclude that plaintiff failed to allege transmission of PII under the ordinary person standard. When this Court applies that standard to the facts alleged in Plaintiff's Complaint, however, it should conclude that it adequately alleges Defendant's knowing transmission of Plaintiff's PII to Facebook.

Finally, Plaintiff respectfully notifies the Court that *Solomon* decision is not final. Solomon will soon file a petition for rehearing. *See Solomon* ECF No. 46.1 (granting appellant until June 14, 2025, to file a petition for rehearing or rehearing en banc). As such, the opinion is not yet precedential. Plaintiff respectfully requests that the Court refrain from relying on or applying that decision in this matter until the petition for rehearing is resolved and the appellate process is complete. This approach will ensure that the Court's ruling is based on settled law and avoids potential inconsistencies should the Second Circuit modify, vacate, or reverse the decision.

Respectfully submitted,

*/s/ Andrew J. Shamis*
Andrew J. Shamis
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com


Adam Schwartzbaum, Esq.*
Scott Edelsberg, Esq.*
**EDELSBERG LAW P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
adam@edelsberglaw.com

*\*Pro Hac to be filed*
*Attorneys for Plaintiff, Bryan Henry*