UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRYAN HENRY et al.,                                     :

                    Plaintiffs,           :

                                            REPORT & RECOMMENDATION
     v.                          :      24 Civ. 01446 (GHW) (GWG)

MAJOR LEAGUE BASEBALL                    :
ADVANCED MEDIA, L.P.,

                                :

                   Defendant.
------------------------------------------------------------X
AARON GOLLAND et al.,                                  :

                    Plaintiffs,           :

     v.                          :      24 Civ. 06270 (GHW) (GWG)

MAJOR LEAGUE BASEBALL                    :
ADVANCED MEDIA, L.P.,

                                :

                   Defendant.
------------------------------------------------------------X
ERIC WONG et al.,                                      :

                    Plaintiffs,           :

     v.                          :      25 Civ. 00777 (GHW) (GWG)

MLB ADVANCED MEDIA, L.P.                 :

                   Defendant.     :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Defendant Major League Baseball Advanced Media, L.P. ("MLB") has moved to dismiss

the three above-captioned putative class actions under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]  In

---

[1] See MLB's Notice of Motion and Motion to Strike and Dismiss, filed Dec. 19, 2024 (Docket # 41 in No. 24-cv-01446); MLB's Memorandum of Law in Support, filed Dec. 19, 2024 (Docket # 42 in No. 24-cv-01446); Henry's Response in Opposition, filed Feb. 7, 2025 (Docket # 44 in No. 24-cv-01446); MLB's Reply Memorandum of Law, filed Feb. 28, 2025 (Docket # 45 in No.

each case, the named plaintiff alleges that MLB violated the Video Privacy Protection Act

("VPPA"), 18 U.S.C. § 2710, by knowingly disclosing personally identifiable information

("PII") concerning their video-streaming habits to non-party Meta Platforms, Inc. — and in

plaintiff Aaron Golland's case, to non-party Snap Inc. as well.[2]  In light of the Second Circuit's

decisions in Solomon v. Flipps Media, Inc., 136 F.4th 41 (2d Cir. 2025), cert. denied, 2025 WL

3506993 (Dec. 8, 2025), and Hughes v. Nat'l Football League, 2025 WL 1720295 (2d Cir. June

20, 2025), defendants' motions to dismiss should be granted as to plaintiffs' VPPA claims.

---

24-cv-01446); Letter from Alan Littmann, dated May 8, 2025 (Docket # 47 in No. 24-cv-01446); Letter from Andrew Shamis et al., dated May 21, 2025 (Docket # 49 in No. 24-cv-01446) ("Henry Resp."); Letter from Alan Littmann, dated May 30, 2025 (Docket # 51 in No. 24-cv-01446); Letter from Alan Littmann, dated Aug. 5, 2025 (Docket # 53 in No. 24-cv-01446).

See MLB's Notice of Motion and Motion to Strike and Dismiss, filed Dec. 19, 2024 (Docket # 35 in No. 24-cv-06270); MLB's Memorandum of Law in Support, filed Dec. 19, 2024 (Docket # 36 in No. 24-cv-06270) ("Def.'s Mem. in Golland"); Golland's Memorandum of Law in Opposition, filed Feb. 7, 2025 (Docket # 38 in No. 24-cv-06270); MLB's Reply Memorandum of Law, filed Feb. 28, 2025 (Docket # 39 in No. 24-cv-06270); Letter from Alan Littmann, dated May 8, 2025 (Docket # 41 in No. 24-cv-06270); Letter from Elliot Jackson, dated May 21, 2025 (Docket # 43 in No. 24-cv-06270) ("Golland Resp."); Letter from Alan Littmann, dated May 30, 2025 (Docket # 45 in No. 24-cv-06270); Letter from Alan Littmann, dated Aug. 5, 2025 (Docket # 47 in No. 24-cv-06270).

See MLB's Notice of Motion and Motion to Transfer, to Dismiss, and to Strike, filed Aug. 28, 2024 (Docket # 29 in No. 25-cv-00777); MLB's Superseding Memorandum of Law in Support, filed Mar. 13, 2025 (Docket # 62 in No. 25-cv-00777) ("Def.'s Mem. in Wong"); Wong's Superseding Memorandum of Law in Opposition, filed Mar. 20, 2025 (Docket # 66 in No. 25-cv-00777) ("Wong Opp."); MLB's Superseding Reply Memorandum of Law, filed Mar. 27, 2025 (Docket # 69 in No. 25-cv-00777); Letter from Alan Littman, dated May 8, 2025 (Docket # 71 in No. 25-cv-00777); Letter from Molly Billion, dated May 21, 2025 (Docket # 73 in No. 25-cv-00777) ("Wong Resp."); Letter from Alan Littman, dated May 30, 2025 (Docket # 75 in No. 25-cv-00777) ("Def.'s Reply to Wong"); Letter from Alan Littman, dated Aug. 8, 2025 (Docket # 77 in No. 25-cv-00777).

[2] See Henry's Amended Class Action Complaint, filed Nov. 22, 2024 (Docket # 40 in No. 24-cv-01446) ("Henry Compl."); Golland's First Amended Class Action Complaint, filed Nov. 21, 2024 (Docket # 34 in No. 24-cv-06270) ("Golland Compl."); Wong's Amended Class Action Complaint, filed Apr. 18, 2024 (Docket # 12 in No. 25-cv-00777) ("Wong Compl.").

Additionally, plaintiff Eric Wong's claims under California law should be dismissed pursuant to the choice-of-law clause in the parties' Terms of Use Agreement.

MLB has also moved to strike the class allegations in each of the above-captioned actions under Fed. R. Civ. P. 12(f). These motions to strike should be denied as moot.

I.      BACKGROUND

A.  Allegations of the Complaints

In considering MLB's motions to dismiss, we assume the truth of the following allegations, which are drawn from plaintiffs' complaints.

MLB owns and operates the website MLB.com and the video-streaming service MLB.tv. See Henry Compl. ¶¶ 23, 31; Golland Compl. ¶ 40; Wong Compl. ¶¶ 14, 21. By subscribing to MLB.com or MLB.tv, consumers can watch videos on MLB.com or MLB.tv. See Henry Compl. ¶¶ 28, 36; Golland Compl. ¶ 40; Wong Compl. ¶¶ 21-22. Plaintiffs here subscribe to MLB.com or MLB.tv. See Henry Compl. ¶¶ 54, 59; Golland Compl. ¶¶ 11, 18, 25, 33; Wong Compl. ¶¶ 5-13.

Meta Platforms, Inc. ("Meta") owns and operates the social network Facebook, which plaintiffs use. See Henry Compl. ¶¶ 56, 61; Golland Compl. ¶¶ 13, 20, 26, 36; Wong Compl. ¶¶ 44, 54, 64, 74, 84, 94, 104, 114, 124. Meta assigns each Facebook user a unique Facebook ID ("FID"). See Henry Compl. ¶ 42; Golland Compl. ¶ 72; Wong Compl. ¶¶ 27-28. Each Facebook user's FID is linked to that user's Facebook profile, which may publicly identify the user by name. See Henry Compl. ¶ 42, Golland Compl. ¶ 4, Wong Compl. ¶¶ 26, 28. FIDs are "stored" in "cookies" — "small piece[s] of code" placed in Facebook users' "internet browsers." Golland Compl. ¶ 73; see also Henry Compl. ¶ 42 (alleging that "FID cookies" are stored on Facebook

users' internet browsers); Wong Compl. ¶ 32 n.5 (citing a webpage maintained by Meta which explains the company's use of "cookies").

Meta has created a tool called a "pixel," which is "a unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta." Golland Compl. ¶ 70; see also Henry Compl. ¶ 39 (describing the pixel as "an invisible tool that tracks consumers' actions on Facebook advertisers' websites and reports them to [Meta]"); Wong Compl. ¶ 31 (describing the pixel as "an advertising tool that allows website owners to track visitor information, traffic, and other actions on the owner's website"). Meta's pixel "automatically matches" a consumer's actions, such as a consumer's decision to watch a particular video, "with third-party cookie data from Meta" including "the c_user cookie that houses a [user's] FID." Golland Compl. ¶ 75; accord Henry Compl. ¶ 42; Wong Compl. ¶ 32. In other words, when embedded on a website, the pixel tracks what a consumer does on that website and, if the consumer is a Facebook user, ties this tracking data to the consumer's FID.

MLB has embedded Meta's pixel on MLB.com and/or MLB.tv. See Henry Compl. ¶ 40; Golland Compl. ¶ 93; Wong Compl. ¶ 35. Through the pixel, MLB discloses to Meta which videos MLB.com or MLB.tv subscribers watch and ties those subscribers' viewing histories to their FIDs. See Henry Compl. ¶ 5; Golland Compl. ¶ 4; Wong Compl. ¶ 36. Henry and Golland specifically allege that MLB shares the URLs of these videos with Meta, see Henry Compl. ¶ 41; Golland Compl. ¶ 95, while Wong alleges more generally that MLB shares "the specific prerecorded audio visual materials or services [that subscribers] request or obtain" with Meta, Wong Compl. ¶ 33.

MLB does not notify MLB.com or MLB.tv subscribers of this practice, nor does it obtain their consent to this practice. See Henry Compl. ¶ 22; Golland Compl. ¶ 49; Wong Compl. ¶ 2.

Golland additionally alleges that Snap Inc., the developer of the instant messaging application Snapchat, also produces a pixel.  See Golland Compl. ¶ 101.  MLB has embedded Snap's pixel on MLB.com and MLB.tv.  See id. ¶ 107.  Through the pixel, MLB shares MLB.com or MLB.tv "subscribers' email addresses and phone numbers" with Snap, plus "subscription purchase information or specific title[s] of prerecorded video content watched . . . along with all Snapchat account information stored in the 'sc_at' cookie," id. ¶ 109, "which stores a unique variable . . . that Snap[] assigns to each Snapchat user," id. ¶ 108.  MLB neither notifies subscribers of this practice nor obtains their consent.  See id. ¶ 114.

B.  Procedural History

Henry's complaint, originally filed on February 26, 2024, brings a claim against MLB for violating the VPPA.  See Complaint, filed Feb. 26, 2024 (Docket # 1 in No. 24-cv-01446).  Golland's complaint, first filed on August 20, 2024, brings substantially the same claim.  See Complaint, filed Aug. 20, 2024 (Docket # 1 in No. 24-cv-06270).  Wong's complaint, originally filed in federal court in California on February 8, 2024, brings claims against MLB under several California laws in addition to the VPPA.  See Complaint, filed Feb. 8, 2024 (Docket # 1 in No. 25-cv-00777).  Plaintiffs subsequently amended their respective complaints, which MLB moved has now to dismiss.

Solomon was decided after briefing on the motions was completed.  Accordingly, the parties provided supplemental briefing on Solomon.  After the Second Circuit denied a petition for rehearing in Solomon, this Court issued an order noting that plaintiffs' complaints "appear to be unique among recent cases relating to non-party Meta's pixel" in that they do not allege "the specific manner in which defendant disclosed personally identifiable information" and do not include "an exemplar of such a disclosure."  Order, dated Nov. 24, 2025 (Docket # 58 in No. 24-

cv-01446), at 1; Order, dated Nov. 24, 2025 (Docket # 53 in No. 24-cv-06270), at 1; Order, dated

Nov. 24, 2025 (Docket # 85 in No. 25-cv-00777), at 1.  The Court asked the parties to discuss

whether they would stipulate to a procedure by which exemplars of the alleged disclosures to

Meta or Snap would be placed before the Court.  See Order, dated Nov. 24, 2025 (Docket # 58 in

No. 24-cv-01446), at 2; Order, dated Nov. 24, 2025 (Docket # 53 in No. 24-cv-06270), at 2;

Order, dated Nov. 24, 2025 (Docket # 85 in No. 25-cv-00777), at 2.  At a conference held on

December 2, 2025, the parties could not agree on any such procedure.

The Supreme Court denied certiorari in Solomon on December 8, 2025.  Solomon v.

Flipps Media, Inc., 2025 WL 3506993 (Dec. 8, 2025).

II.    GOVERNING LAW

A party may move to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for "failure

to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on

such a motion, a court must accept as true all of the factual allegations contained in a complaint,

but this principle does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (A "plaintiff's obligation

to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do.") (cleaned up).  Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Iqbal, 556 U.S. at 678 (citation omitted).  A court's first task when

adjudicating a motion to dismiss is to disregard any conclusory statements in the complaint.  Id.

at 679.  Next, a court must determine if the complaint, shorn of legal conclusions, contains

"sufficient factual matter" to state a claim that is "plausible on its face."  Id. at 678 (citation

omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged" —
a standard that "is not akin to a 'probability requirement,' but . . . asks for more than a sheer
possibility that a defendant has acted unlawfully." Id. (citation omitted).

A party may also move to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(1) when
the court lacks subject-matter jurisdiction over the action. See Fed. R. Civ. P. 12(b)(1). A court
has no subject-matter jurisdiction when a plaintiff lacks standing. E.g., Cent. States Se. & Sw.
Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d
Cir. 2005). Consequently, "the plaintiff must clearly allege . . . facts demonstrating each
element" of standing. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citation and internal
quotation marks omitted). Courts adjudicate motions to dismiss for lack of standing much as
they do motions to dismiss for failure to state a claim. See Collins v. Ne. Grocery, Inc., 149 F.4th
163, 170 (2d Cir. 2025).

Separately, a party may move under Fed. R. Civ. P. 12(f)(2) to "strike from a pleading . . .
any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f)
may be used to "delete the complaint's class allegations" when "it is obvious from the pleadings
that the proceeding cannot possibly move forward on a classwide basis." Manning v. Bos. Med.
Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013); accord Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d
503, 511 (S.D.N.Y. 2015). A motion to strike under Rule 12(f)(2) is "generally looked upon with
disfavor," Chenensky v. New York Life Ins. Co., 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27,
2011) (quoting Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)), and
"[a] motion to strike class allegations . . . is even more disfavored," id. (quoting Ironforge.com,
747 F. Supp. 2d at 404). While "there is surprisingly little authority that describes the actual
standard courts should apply in deciding" a motion to strike, it is clear that "such motions are

7

decided on the basis of the pleadings and without the benefit of any factual record." Haymount
Urgent Care PC v. GoFund Advance, LLC, 635 F. Supp. 3d 238, 240 (S.D.N.Y. 2022).

III.    DISCUSSION

A.  Henry, Golland, and Wong's VPPA Claims Based on Meta's Pixel

The relevant portion of the VPPA states that "[a] video tape service provider who
knowingly discloses, to any person, [PII] concerning any consumer of such provider shall be
liable to the aggrieved person."  18 U.S.C. § 2710(b)(1).  As used in the VPPA, "the term
'personally identifiable information' includes information which identifies a person as having
requested or obtained specific video materials or services from a video tape service provider."
Id. § 2710(a)(3).  To state a claim under the VPPA, "a plaintiff must plausibly allege that (1) a
video tape service provider (2) knowingly disclosed to any person (3) [PII] concerning her use of
the service."  Solomon, 136 F.4th at 44.  Further, the plaintiff must allege that she is a
"consumer" — defined as a "renter, purchaser, or subscriber of goods or services from a video
tape service provider."  18 U.S.C. § 2710(a)(1); see Salazar v. Nat'l Basketball Ass'n, 118 F.4th
533, 536 (2d Cir. 2024).

The definition of "video tape service provider" is broad enough, see 18 U.S.C.
§ 2710(a)(4), that MLB does not contest that the complaints plead the first element of a VPPA
claim.  Nor does it contest the second element.  (It does challenge whether certain plaintiffs are
"consumers" within the meaning of the VPPA, see Def.'s Mem. in Golland at 32-33; Def.'s
Mem. in Wong at 27-29, but the Court need not reach this question.)

As to the third element of a VPPA claim, we begin by addressing the ruling in Solomon,
which involved a video-streaming provider's use of Meta's pixel.  See 136 F.4th at 45-46.
Solomon held that the definition of PII under the VPPA "encompasses information that would

8

allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." Id. at 52. Solomon further held that this definition did not cover the video-streaming provider's disclosure of "FID[s] and video titles" through Meta's pixel. Id. at 54. Solomon based this holding on an "exemplar screenshot" of pixel "transmission," comprising lines of code, attached to the plaintiff's complaint. Id. at 46. It reasoned that an ordinary person would not understand a line in the transmission like "title% 22% 3A% 22-% E2% 96% B7% 20The% 20Roast% 20of% - 20Ric% 20Flair" to be the title of a video. Id. at 54. Further, in the Second Circuit's estimation, an ordinary person could not pick out an FID "embedded in many other lines of code." Id. Even if an ordinary person could do so, the Second Circuit found that the underlying complaint in Solomon was "devoid of any details about how an ordinary person would use an FID to identify [the plaintiff]." Id. (emphasis in original). The Second Circuit was not satisfied with the plaintiff's assertion that anyone with her FID could simply follow https://facebook.com/[FID] to reach her Facebook profile. See id. It likened an FID to an IP address, a serial number, or a unique device identifier — information which "would likely be of little help" to an ordinary person "trying to identify an actual person." Id. at 55 (quoting In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 283 (3d Cir. 2016)).

In Hughes, a non-precedential summary order, the Second Circuit noted that "Solomon effectively shut the door for Pixel-based VPPA claims." 2025 WL 1720295, at *2. It also rejected the contention that an ordinary person could use an FID to identify a Facebook user via "ubiquitous internet-based tools like ChatGPT." Id. at *3.

In Solomon's wake, courts in this district have "uniformly" dismissed VPPA claims premised on a defendant's use of Meta's pixel. Simon v. Scripps Networks, LLC, 2025 WL 3167915, at *7 (S.D.N.Y. Nov. 13, 2025); see Nixon v. Pond5, Inc., 2025 WL 2030303 (S.D.N.Y.

9

July 21, 2025); Joiner v. NHL Enters., Inc., 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025), adopted in part by, 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025), appeal docketed, No. 25-2789 (2d Cir. Nov. 3, 2025); Golden v. NBCUniversal Media, LLC, 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025), appeal docketed, No. 25-2226 (2d Cir. Sept. 16, 2025); Taino v. Bow Tie Cinemas, LLC, 2025 WL 2652730 (S.D.N.Y. Sept. 16, 2025); Salazar v. Nat'l Basketball Ass'n, 2025 WL 2830939 (S.D.N.Y. Oct. 6, 2025), appeal docketed, No. 25-2478 (2d Cir. Oct. 9, 2025).

In one notable respect, however, plaintiffs' complaints differ from those dismissed after Solomon: they do not attach or incorporate exemplar screenshots of MLB's disclosures of alleged PII through Meta's pixel. Seizing on this difference, Henry argues that Solomon does not require dismissal, citing to N.L.R.B. v. Cities Serv. Oil Co., 129 F.2d 933, 937 (2d Cir. 1942), for the proposition that "every judicial opinion is to be read with regard to the facts of the case as understood by the court, and the question actually decided." Henry Resp. at 1. This argument is unpersuasive for two reasons.

First, plaintiffs' complaints are not stronger but weaker for being less detailed than the complaints in Solomon and the post-Solomon cases cited above. Under Solomon, the Court must "consider whether the [c]omplaint[s] plausibly allege[] that [defendant's] disclosure of [plaintiffs'] FID and video titles 'would, with little or no extra effort, permit an ordinary recipient to identify [plaintiffs'] video-watching habits.'" Solomon, 136 F.4th at 54 (quoting In re Nickelodeon, 827 F.3d at 284). The complaints before us contain no nonconclusory allegations on this front.

Henry's complaint alleges that "with only an FID and the video content name and URL — all of which Defendant knowingly and readily provides to [Meta] . . . — any ordinary person can learn the identity of the digital subscriber and the specific video or media content they

10

requested." Henry Compl. ¶ 44. Similarly, Golland alleges that MLB's disclosure of "a person's FID and the subscription or video content name or URL that the person requested on Defendant's website" permits "any ordinary person [to] learn the person to whom the FID corresponds and the specific video products or services that this person requested." Golland Compl. ¶ 94. However, far from being plausible, these allegations are "legal conclusion[s] couched as . . . factual allegation[s]." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). While they allege that certain information was disclosed to Facebook, they never describe the manner of MLB's disclosure. Accordingly, they do not show that it is plausible that the third element of a VPPA violation has been met. See Simon, 2025 WL 3167915, at *7 ("But outside of conclusory statements, Simon's Complaint does not contain any allegations describing how an ordinary person 'with little or no extra effort' would be able to discern that the Pixel transmission contained Simon's Facebook ID, browser identifier or the titles of the videos viewed by her.") (quoting Solomon, 136 F.4th at 54).

Wong's complaint lacks any allegation that the manner of MLB's disclosure of his FID and "the specific video materials or services he requested or obtained" would permit an ordinary recipient to identify his video-watching habits. Wong Compl. ¶ 46. In fact, Wong's complaint does not even squarely allege that MLB disclosed URLs or other video identifiers to Meta. It alleges only that MLB disclosed "specific video materials or services." Id. This language tracks the VPPA's definition of PII. See 18 U.S.C. § 2710(a)(3) ("information which identifies a person as having requested or obtained specific video materials or services"). Thus, it amounts to a "[t]hreadbare recital[]" of an "element[] of a cause of action" — precisely what "do[es] not suffice" to state a claim under Fed. R. Civ. P. 8(a). Iqbal, 556 U.S. at 678 (citation omitted).

For this reason alone, the complaints must be dismissed.

11

Additionally, the complaints must be dismissed because, regardless of the absence of exemplar screenshots or specific allegations regarding how PII was disclosed, they are "devoid of any details about how an ordinary person would use an FID to identify [plaintiffs]." Solomon, 136 F.4th at 54 (emphasis in original).

Henry argues that his complaint "does more" than the complaint in Solomon to show how an ordinary person could use an FID to identify a Facebook user. Henry Resp. at 2. Specifically, he argues that his complaint "incorporates by reference the portion of the Facebook website which explains how an FID may be used by an ordinary person to identify an individual's identity," which Henry invites us to take judicial notice of. Id. at 3. But his complaint does not in fact cite or otherwise link to any particular "portion of the Facebook website." What is more, his complaint nowhere explains how an ordinary person could use an FID to identify a Facebook user. It only alleges in a conclusory manner that "[w]ith [an FID], anyone [sic] ordinary person can look up the user's Facebook profile and name." Henry ¶ 44. This is insufficient under Solomon.

Golland's complaint states, "Entering "facebook.com/[FID]" into a web browser returns the Meta profile of the person to whom the FID corresponds." Golland Compl. ¶ 4; see id. ¶ 94. The Second Circuit dismissed a more or less identical allegation in Solomon as inadequate. See Solomon, 136 F.4th at 54-55.

Wong asserts that Solomon "did not hold that a Facebook ID . . . could not constitute PII in any situation." Wong Resp. at 1. Even if this were an accurate characterization of Solomon, Wong does not explain why an FID could constitute PII in the context of his own complaint. Instead, he cites to numerous cases that either were decided before Solomon or were decided by courts not within this Circuit and thus not controlled by Solomon. See id. at 1-2. Wong's

complaint merely alleges that "an FID can be used to identify and view the associated Facebook profile." Wong Compl. ¶ 28. Solomon rejected an allegation that an FID was PII because an ordinary person could find someone's Facebook profile by following https://facebook.com/[FID], see Solomon, 136 F.4th at 54-55, and allegations that an FID was PII because an ordinary person could "use a simple online search to identify a specific Facebook user using an FID or use ChatGPT to do so," Salazar, 2025 WL 2830929, at *5, are insufficient. Wong's complaint makes no effort to identify another way that an FID could constitute PII.

In sum, all the VPPA claims as to Meta should be dismissed. That is, Henry's complaint should be dismissed in its entirety, Golland's complaint should be dismissed insofar as it is premised on MLB's disclosure of information to Meta, and Count I of Wong's complaint should be dismissed.

### B. Golland's VPPA Claim Based on Snap's Pixel

Golland argues that because Solomon did not concern Snap's pixel, Solomon "cannot possibly have any bearing on the sufficiency of Plaintiffs' allegations concerning Defendant's disclosures of their information to Snap[]."[3] Golland Resp. at 2. We disagree.

Golland's complaint alleges Snap's pixel "discloses" certain items covered by the statute such as "email addresses," "phone numbers," and "subscription purchase information or specific title[s] of prerecorded video content watched . . . along with all Snapchat account information stored in the 'sc_at' cookie," Golland Compl. ¶ 109. We will assume arguendo that at least some of this information would "allow an ordinary person to identify a consumer's video-watching habits," Solomon, 136 F.4th at 52. See, e.g., Eichenberger v. ESPN, Inc., 876 F.3d 979, 986 (9th

---

[3] The Golland complaint has two plaintiffs: Golland and Jose Santiago. While only Santiago brings a VPPA claim based on MLB's use of Snap's pixel, see Golland Compl. ¶¶ 23-30, we refer to the plaintiff as "Golland" in this section for the sake of simplicity.

Cir. 2017) ("email address" may come within PII).  But the manner in which this information is "disclos[ed]" is never revealed.  Solomon, 136 F.4th at 54.  For all we know, it may be that the information — as is true for the information disclosed through Meta's pixel — is "interspersed with many characters, numbers, and letters" such that it is illegible to an ordinary person.  Id. Solomon implicitly requires non-conclusory allegations with respect to the "actual underlying . . . communication" from the video tape service provider, be it a "code communication" or some other medium of disclosure.  Hughes, 2025 WL 1720295, at *3; see Simon, 2025 WL 3167915, at *7.  Golland's complaint is devoid of non-conclusory allegations as to the nature of the "actual underlying . . . communication" from MLB to Snap.

Because of this failing it is not necessary to reach Golland's contention that "any ordinary person could learn the identity of the person to whom the . . . phone number or email address corresponds by simply, among other ways, doing a free online reverse lookup."  Golland Compl. ¶ 110.

### C.  Wong's California-Law Claims

Wong's California-law claims should be dismissed pursuant to the choice-of-law clause in the parties' Terms of Use Agreement.  See Def.'s Mem. in Wong at 5, 29-31.  Wong's complaint acknowledges that the Terms of Use Agreement is "applicable."  Wong Compl. ¶¶ 17 n.1, 20 n.2.; see also Wong Opp. at 5 ("Plaintiffs here do not dispute that they made the 'electronic click' sufficient to acknowledge the TOU.")

The Terms of Use Agreement "contains a choice-of-law provision selecting New York law to govern disputes between Defendant and its subscribers."  Wong Opp. at 6; see Def.'s Mem. in Wong at 7.  However, Wong argues that "'applying New York law in accordance with that provision would violate a fundamental public policy of California' . . . by enforcing a

14

predispute jury trial waiver, by effectuating a waiver of Plaintiffs' rights under the [California Consumer Legal Remedies Act], and by enforcing an unconscionable class action waiver." Wong Opp. at 20-21 (quoting Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 379 (S.D.N.Y. 2006)).

Because Wong's VPPA claim must be dismissed under Solomon, the only basis for subject matter jurisdiction over Wong's California claims is diversity jurisdiction. "When a federal district court sits in diversity, it generally applies the law of the state in which it[] sits, including that state's choice of law rules." In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Wong's argument that New York would consider "fundamental public policy of California," Opp. at 21, is "based on an incorrect understanding" of New York's choice of law rules, Willis Re Inc. v. Herriott, 550 F. Supp. 3d 68, 91 (S.D.N.Y. 2021). "New York courts used to look to . . . the public policy of the foreign jurisdiction . . . even when faced with a contract with a New York choice-of-law provision." Id. (citations omitted). Beatie & Osborn LLP, the case Wong's argument relies on, exemplifies this bygone approach. See id. Since that case was decided, however, the New York Court of Appeals held that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract." Ministers & Missionaries Benefit Bd. v. Snow, 26 N.Y.3d 466, 474 (2015). New York courts now "refuse[] to consider the public policy of foreign states — including California — to overturn an otherwise valid contractual choice of law provision." Pilon v. Discovery Commc'ns, LLC, 769 F. Supp. 3d 273, 294 (S.D.N.Y. 2025) (alteration in original) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, 2018 WL 6786338, at *22 (S.D.N.Y. 2018)); see also Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A., 41 N.Y.3d 462, 474 (2024) (holding

15

that "a New York choice-of-law clause in a contract demonstrates the parties' intent that courts not conduct a conflict-of-laws analysis" except where the parties clearly express a contrary intent) (citations and internal quotation marks omitted).  Accordingly, New York law dictates that we must apply New York law to Wong's dispute with MLB pursuant to the parties' choice in the Terms of Use Agreement.

In a case decided several years after Ministers & Missionaries Benefit Bd., however, the Second Circuit repeated the formerly prevailing rule that "[a]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction."  United States v. Moseley, 980 F.3d 9, 20 (2d Cir. 2020) (citing Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996)). Although "it is hard to avoid the conclusion that the Moseley Court simply . . . applied the wrong analysis under New York law," Willis Re Inc., 550 F. Supp. 3d at 94, we will follow Mosely, as it is binding on us, and consider whether the parties' choice of New York law in the Terms of Use Agreement is determinative.  See Stevens & Co. LLC v. Espat, 2025 WL 950989, at *5 (S.D.N.Y. Mar. 28, 2025) (questioning whether "this test properly incorporates recent New York jurisprudence" but noting that the district court is "bound to follow the Second Circuit's interpretation of New York law") (citation and internal quotation marks omitted), reconsideration denied, 2025 WL 1425324 (S.D.N.Y. May 16, 2025).

Here, the choice-of-law clause in this contract satisfies the Moseley standard: that is, New York has "sufficient contacts with the transaction" and New York's law does not "violate[] some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."  980 F.3d at 20 (citations omitted).

16

First, as Wong concedes, "the State selected" — New York — has sufficient contacts with the parties' transaction because "Defendant is headquartered in New York." Wong Opp. at 6; see Stevens & Co., 2025 WL 950989, at *8 (finding that a contract with a New York choice-of-law clause had "reasonable relationship to New York" in part because one party to the contract was "based in New York").

Second, "California policy does not provide grounds for a New York court to hold a contract unenforceable." Id. at *9. Rather, "New York Courts have consistently framed the public policy exception as concerning whether 'application of [the chosen] law would be offensive to a fundamental public policy of this State'" — i.e., New York State. Id. (quoting Brown & Brown, Inc. v. Johnson, 25 N.Y.3d 364, 369 (2015)); see also Moseley, 980 F.3d at 20 (noting that it is "a fundamental New York public policy such as might overcome the parties' stated choice of law") (emphasis added); Willis Re Inc., 550 F. Supp. 3d at 95 (observing that "[u]nder Moseley and New York Court of Appeals decisions before Ministers & Missionaries . . . the only public policy relevant to the analysis is the public policy 'of this State' — that is, New York") (quoting Welsbach Elec. Corp. v MasTec N. Am., Inc., 7 N.Y.3d 624, 632 (2006)). Wong "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." Mindspirit, LLC v. Evalueserve Ltd., 346 F. Supp. 3d 552, 583-84 (S.D.N.Y. 2018) (quoting Integra Optics, Inc. v. Messina, 2016 WL 3917764, at *4 (Sup. Ct. 2016)).

Because New York law governs this dispute, Wong's California-law claims, constituting the remainder of his complaint, must be dismissed.

17

Conclusion

For the foregoing reasons, MLB's motions to dismiss the complaints in Henry, Golland, and Wong should be granted. Because the claims in these complaints fail, it is not necessary to consider MLB's motions to strike the class allegations.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure 72(b), the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Woods. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72; Thomas v. Arn, 474 U.S. 140, 155 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Date:   December 23, 2025
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

18